# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| EDWARD GALMON, SR., CIARA HART, NORRIS H NDERSON, and TRAMELLE HOWARD, | Civil Action No. 3:22-cv-00214 |
| *Plaintiffs,* | Chief Judge Brian A. Jackson |
| v. | Magistrate Judge Richard L. Bourgeois, Jr. |
| KYLE ARDOIN, in his official capacity as Secretary of State for Louisiana, | |
| *Defendant.* | |

## MOTION OF THE PRESIDING OFFICERS OF
## THE LOUISIANA LEGISLATURE TO INTERVENE

Pursuant to Fed. R. Civ. P. 24, Clay Schexnayder, Speaker of the Louisiana House of Representatives, and Patrick Page Cortez, President of the Louisiana Senate, in their respective official capacities (collectively, the "Proposed Intervenors"), respectfully move this Court to grant them leave to intervene in this action. This lawsuit challenges the congressional redistricting plan that was recently enacted by the Louisiana Legislature. Plaintiffs allege that "[t]he Louisiana State Legislature was well aware of the need to draw a second majority-Black congressional district" and criticize the Legislature's purported "failure to create a second congressional district in which Black voters have an opportunity to elect their preferred candidates," which they contend "perpetuates" an "imbalance" in voting opportunity in Louisiana. (Doc. 1, ¶¶ 3, 4, 6.) Plaintiffs ask the Court to declare the plan unlawful, enjoin its use in future elections, and fashion a redistricting plan to govern Louisiana elections to the U.S. House of Representatives. (Doc. 1, p.26 (Prayer for Relief).) And they ask the Court to do all of this without affording the Legislature an opportunity (in the event of a liability ruling) to enact another redistricting plan. (*See id.*)

Plaintiffs named the Louisiana Secretary of State as the sole defendant, but the Louisiana Legislature enacted the challenged plans pursuant to a mandate of the U.S. Constitution, would be subject to any remedy this Court issues, and would lose its redistricting authority if Plaintiffs prevail. As the Legislature's presiding officers, Proposed Intervenors are real parties in interest and should be permitted to intervene. The Court should not entertain allegations of discrimination without affording those most concerned in the allegations, and the requested remedy, to appear and respond. Proposed Intervenors are entitled to intervene as of right: this motion is timely, their numerous interests in the challenged plan are directly implicated in this case, and no current litigant adequately represents those interests. Alternatively, Proposed Intervenors ask the Court to grant permissive intervention. Proposed Intervenors clearly raise issues in common with Plaintiffs' Complaint, their participation would enhance the Court's ability to resolve issues raised in this litigation, and Plaintiffs will not be prejudiced by their participation to respond to allegations regarding the actions of the Legislature. Because all elements of intervention are satisfied, the motion should be granted.

## **THE LEGAL STANDARD**

Rule 24(a) requires a federal court to permit intervention of a non-party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest," and Rule 24(b) permits a federal court to allow intervention of non-parties that tender "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(a)(2) and (b)(1)(B). "Rule 24 is to be liberally construed" in favor of intervention. *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)*; see also Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (same). "The inquiry is a flexible one, and a practical analysis

of the facts and circumstances of each case is appropriate." *Brumfield*, 749 F.3d at 341 (quotation marks omitted). "Intervention should generally be allowed where no one would be hurt and greater justice could be attained." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005).

## ARGUMENT

I. **Proposed Intervenors Are Entitled To Intervene as of Right**

Proposed Intervenors satisfy the elements of intervention of right. "A party seeking to intervene as of right must satisfy four requirements:

> (1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit."

*Brumfield*, 749 F.3d at 341 (citation omitted). Proposed Intervenors satisfy each of these elements.

A. Timeliness

This intervention motion is timely. The complaint was filed on March 30, 2022, the deadline for responsive pleadings has not yet passed, and no meaningful case events have occurred. As a result, "timeliness is not at issue." *Brumfield*, 749 F.3d at 342; *see Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (finding that delays of "only 37 and 47 days . . . are not unreasonable"); *Ross*, 426 F.3d at 755 (permitting post-judgment intervention); *United States v. Commonwealth of Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely."); *Mullins v. De Soto Securities Co.*, 3 F.R.D. 432, 433 (W.D. La. 1944) (finding motion to intervene timely during the initial pleading stage).

B. Direct Interest

Proposed Intervenors also "have a 'direct, substantial, legally protectable interest in the proceedings.'" *Edwards*, 78 F.3d at 1004 (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)). "A 'legally protectable' right" for intervention purposes "is not identical to a 'legally enforceable' right, such that 'an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor . . . would not have standing to pursue her own claim.'" *DeOtte v. State*, 20 F.4th 1055, 1068 (5th Cir. 2021) (citations omitted); *see also Wal-Mart Stores,* 834 F.3d at 566 (same). Rather, "[a] movant found to be a 'real party in interest' generally establishes sufficient interest." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 187 (5th Cir. 1989) ("*LULAC, Council No. 4434*"). "[A] 'real party in interest' may be ascertained by determining whether that party caused the injury and, if so, whether it has the power to comply with a remedial order of the court." *Id.* at 187. Proposed Intervenors have multiple interests implicated in this case.

1. *Legislative Role in Redistricting*. Proposed Intervenors are the presiding officers of the legislative chambers that enacted the challenged congressional redistricting plan and, as such, have legally protectable interests in the defense of those plans. *See Karcher v. May*, 484 U.S. 72, 77 (1987) (recognizing that "presiding officers" of state legislature had authority to intervene in lawsuit challenging state legislation). These include an interest in seeking to prevent their votes in favor of the challenged plans from being nullified by an order deeming the plans violative of the Voting Rights Act. *See Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 803–04 (2015) (finding Arizona Legislature's interest in enacting congressional redistricting plan sufficient to create Article III standing)[1]; *I.N.S. v. Chadha*, 462 U.S. 919, 930 & n.5, 931 n.6 (1983)

---

[1] Because the interest showing for intervention purposes is lower than the injury showing for Article III standing purposes, cases on standing establish what interests are sufficient to establish

(similar holding as to Houses of Congress). Proposed Intervenors also have an interest in defending the injury to the legislative department of Louisiana, and the State itself, that would result from an injunction against the challenged plans. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997) ("We have recognized that state legislators have standing to contest a decision holding a state statute unconstitutional if state law authorizes legislators to represent the State's interests."); *cf. Swenson v. Bostelmann*, No. 20-cv-459, 2020 WL 8872099, at *1 (W.D. Wis. June 23, 2020) (granting state legislature intervention as of right in election law-related case reasoning that "the Legislature has an interest in the continued enforceability of its laws").[2]

These legislative interests are of paramount importance because the United States Constitution affords the Legislature of each state the power to establish "[t]he Times, Places and Manner of holding Elections for Senators and Representatives." U.S. Const., art. I, § 4. By consequence, the Supreme Court's "precedent teaches that redistricting is a legislative function, to be performed in accordance with the State's prescriptions for lawmaking," *Ariz. State Legislature*, 576 U.S. at 808. Plaintiffs acknowledge that the Legislature is responsible for enacting congressional district boundaries. (Doc. 1, ¶¶ 32, 39.) But their suit seeks to override the Legislature's redistricting choices and transfer redistricting authority from the Legislature to the Court. Indeed, they fail to acknowledge that, in the event of a liability ruling, the Legislature must be afforded "an adequate opportunity" to enact a new plan compliant with the Court's ruling. *White*

---

intervention but do not establish what is necessary. *See Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1955 (2019) (distinguishing standing from intervention).

[2] Notably, the Nineteenth Judicial District Court recently permitted Proposed Intervenors to intervene in litigation concerning Louisiana's congressional redistricting plan. *See* Exhibit A (order granting intervention); *cf. Karcher*, 484 U.S. at 82 (affording weight to the fact that the "New Jersey Supreme Court has granted applications of the Speaker of the General Assembly and the President of the Senate to intervene as parties-respondent on behalf of the legislature in defense of a legislative enactment").

5

*v. Weiser*, 412 U.S. 783, 795 (1973) (citation omitted); (*see* Doc. 1, p.26 (asking the Court to adopt a new plan with no such opportunity).). Plaintiffs, in short, make no effort to disguise their goal of displacing the Legislature from redistricting. And that injury to their interests would be especially stark, given that support for those policies was sufficient within the Legislature to override the Governor's veto. (Doc. 1, ¶¶ 4, 39.)

2. *Diversion of Resources*. Proposed Intervenors also have an interest in avoiding a second redistricting process at all. For that reason, even if the Court were (in the event of a liability ruling) to follow the law and afford the Legislature an opportunity to enact a plan compliant with a liability ruling, Proposed Intervenors' interests still will be impaired.

"Redistricting is never easy," *Abbott v. Perez*, 138 S. Ct. 2305, 2314 (2018), but it would be required if this Court finds the redistricting plans unlawful, *see, e.g.*, *Chapman v. Meier*, 420 U.S. 1, 27 (1975). The Louisiana Legislature spent months crafting, deliberating over, seeking public input regarding, and enacting the challenged plans, and the Legislature was required to call a veto override session to enact the plan over the Governor's veto. (*See* Doc. 1, ¶¶ 30–39.) An injunction in Plaintiffs' favor would compel Proposed Intervenors and their colleagues to divert time and resources from other pressing legislative items. This is an independent interest supporting intervention.

3. *Legislative Policies and Legal Choices*. Proposed Intervenors have a compelling and justiciable interest in defending and advancing legitimate legislative policies. The Complaint alleges that alternative proposals were offered to the Legislature during redistricting and criticizes the Legislature for choosing differently. (*See, e.g.*, Doc. 1, ¶¶ 4, 31, 34–38.) The Legislature is directly concerned in responding to those and related assertions and defending its policy choices.

Moreover, if this Court ultimately issues a remedy in this case, Proposed Intervenors have an interest in ensuring that such a remedy implements legitimate legislative policies. "[A] court, as a general rule, should be guided by the legislative policies underlying the existing plan." *Abrams v. Johnson*, 521 U.S. 74, 79 (1997); *see also Perry v. Perez*, 565 U.S. 388, 393 (2012). The Legislative Intervenors have an interest in ensuring that its policy choices guide redistricting overseen by a court and in ensuring this suit does not "defeat the policies behind a State's redistricting legislation." *Perry*, 565 U.S. at 394. Likewise, Proposed Intervenors have an interest in advocating their understanding of the legal requirements applicable to redistricting plans, including Voting Rights Act ("VRA") requirements. *See id.* ("A district court making such use of a State's plan must, of course, take care not to incorporate into the interim plan any legal defects in the state plan."). The question in this case is how many majority-minority districts, if any, are required by VRA Section 2 in the congressional plan. That choice is, in the first instance, directed to the Legislature. *See Shaw v. Hunt*, 517 U.S. 899, 917 n.9 (1996) ("States retain broad discretion in drawing districts to comply with the mandate of § 2.").

Proposed Intervenors have a distinct but related interest in the ultimate adoption of redistricting plans that do not, "without sufficient justification," "separate[e] . . . citizens into different voting districts on the basis of race." *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 797 (2017) (citation omitted). The purposeful creation of an additional majority-minority district would likely trigger strict scrutiny under the U.S. Constitution's Equal Protection Clause. *See Cooper v. Harris*, 137 S. Ct. 1455, 1468–69 (2017). The U.S. Supreme Court recently summarily reversed a Wisconsin Supreme Court order adopting legislative redistricting plans creating "one more [majority-minority district] than the current map"—"by reducing the black voting-age population in the other six majority-black districts"—because the plans were obvious

racial gerrymanders. *Wis. Leg. v. Wis. Elections Comm'n*, No. 21A471, 2022 WL 851720, at *1 & n.1, *2–4 (U.S. Mar. 23, 2022). The appeal of the Wisconsin Legislature upheld the right of equal protection of Wisconsin citizens against such race-based discrimination. Plaintiffs appear to be asking this Court to make the error the Wisconsin Supreme Court made. Proposed Intervenors, like the Wisconsin Legislature in *Wisconsin Legislature*, have a compelling interest in ensuring that Louisiana citizens' equal protection rights are honored in any future redistricting plan.

For all these reasons, Proposed Intervenors are real parties in interest in this case. Plaintiffs allege that the Legislature "caused the injury" and the Legislature "has the power to comply with a remedial order of the court." *LULAC, Council No. 4434*, 884 F.2d at 187. The Fifth Circuit has recognized that the legislative body that played a "part in creating" challenged districts is a real party in interest. *See id.* (denying intervention of a county in redistricting suit because other state bodies, not the county, had authority to redistrict); *see also Miss. State Conf. of N.A.A.C.P. v. Barbour*, No. 3:11-cv-00159, 2011 WL 1327248, at *3 (S.D. Miss. Apr. 1, 2011) (finding that the Mississippi House of Representatives Apportionment and Elections Committee had the right to intervene in redistricting case); *Theriot v. Parish of Jefferson*, CIV. A. No. 95-2453, 1996 WL 383130, at *4 (E.D. La. July 8, 1996), *on reconsideration,* No. 95-2453, 1996 WL 517695 (E.D. La. Sept. 11, 1996) (denying intervention by neighboring city council because the neighboring city council did not have the power to redraw the councilmanic district lines in question). Plaintiffs' Complaint repeatedly references the Louisiana Legislature and challenges its legislative choices. (*See, e.g.*, Doc. 1, ¶¶ 30–43.) The Court should not entertain such allegations without affording those most directly concerned the opportunity to respond. And, if the Court ultimately issues an injunction, only the Legislature "has the power to comply with a remedial

order of the court," *LULAC, Council No. 4434*, 884 F.2d at 187, since no other body is empowered to redistrict Louisiana's congressional districts.

C.      Impairment

The disposition of this action may "impair or impede" Proposed Intervenors' "ability to protect" the above-described interests. *Wal-Mart Stores*, 834 F.3d at 566. A ruling in Plaintiffs' favor would effectively bind the Legislature even as a non-party because Plaintiffs ask the Court to enjoin the plan, direct the Legislature to enact a new one, and craft its own plan if the Legislature fails to do so. *See, e.g.*, *Perry*, 565 U.S. at 394; *Upham v. Seamon*, 456 U.S. 37, 41–42 (1982); *Swenson*, 2020 WL 8872099, at *1 (granting state legislature intervention as of right in part because "plaintiffs seek to enjoin certain state election laws, any disposition in their favor would impair the Legislature's interest."). The Fifth Circuit has found the impairment element met where proposed intervenors "in essence will be bound by" an adverse ruling, at the expense of their interests. *Edwards*, 78 F.3d at 1005; *see also Stallworth v. Monsanto Co.*, 558 F.2d 257, 268 (5th Cir. 1977). Here, an adverse ruling would: (1) nullify the votes of Proposed Intervenors and a majority of the Legislature's members on the challenged plan, (2) compel the Legislature to divert time and resources to the already completed task of redistricting, (3) override the Legislature's discretion and policy choices, (4) potentially impose a judicial plan, and (5) potentially strip the Legislature of its constitutional redistricting role.

D.      Adequacy of Representation

Proposed Intervenors' interests are not adequately represented by existing parties to this action. "The Supreme Court has decided '[this] requirement . . . is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Edwards*, 78 F.3d at 1005 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Here, the sole Defendant is Louisiana's Secretary

9

of State, who has no legal duty or authority to enact redistricting legislation and does not share or represent Proposed Intervenors' interests. No presumption of adequacy arises, and any such presumption is, in any event, overcome.

1. *Government Representation*. This is not a case where "the putative representative is a governmental body or officer charged by law with representing the interests of the absentee." *Entergy Gulf States La., L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 n.2 (5th Cir. 2016) (citation omitted). In such a case, "a much stronger showing of inadequacy is required." *Id.* (citation omitted). But, here, the presumption does not apply for at least two reasons.

First, the above-described interests are those of the chambers and members of the Louisiana Legislature as the bodies and persons whose votes are at issue, whose constitutional redistricting authority is concerned, whose policies are challenged, and whose resources (or authority) will be diverted in the event of an adverse ruling. Plaintiffs have not called into question the actions of the Secretary of State, and the Secretary does not share Proposed Intervenors' interests and is not charged by law with representing them. *See* La. R.S. §§ 18:18 and 36:742 (defining Secretary of State's powers and duties).

Second, the presumption of adequacy of representation attaching to government representatives "*is restricted . . . to those suits involving matters of sovereign interest.*" *Entergy Gulf States*, 817 F.3d at 203 n.2. (citation omitted). The Fifth Circuit "has not required a stronger showing of inadequacy in other cases where a governmental agency is a party." *Id.*; *see also John Doe No. 1 v. Glickman*, 256 F.3d 371, 380–81 (5th Cir. 2001). Moreover, the above-described institutional and legislative interests extend well beyond any sovereign interest shared by an executive officer or branch. The Secretary did not enact the challenged plans, lacks constitutional authority to do so, has no knowledge of the policy considerations underpinning them, has no

particular interest in defending those policy choices, and will not be tasked with enacting new plans if they are enjoined. *Cf. League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018) (explaining that district maps do not affect the State Secretary of State, who "just ensures the maps are administered fairly and accurately," whereas "the contours of the maps affect the Congressmen directly and substantially by determining which constituents the Congressmen must court for votes and represent[.]"). For these reasons, it is common for legislative intervenors in redistricting cases to "intervene[] and assume[] responsibility for defending the plan." *Bethune-Hill*, 137 S. Ct. at 796; *see also Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 858, 867 (E.D. Wis. 2001) (permitting intervention as of right by Wisconsin Assembly Speaker and Senate Minority Leader).

Any presumption of adequacy related to the Secretary State's participation that may arguably apply is overcome, because Proposed Intervenors' "interest is in fact different from that of" the Secretary and "the interest will not be represented by" the Secretary. *Edwards*, 78 F.3d at 1005 (citation omitted). The Secretary of State's interest is in administering whatever election rules may apply by law, not in administering the specific plans challenged in this case. La. R.S. § 18:18. And, as noted, none of the distinctly legislative interests implicated in this legislative redistricting case are shared between Proposed Intervenors and the Secretary. *Cf., e.g.*, *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 764 (E.D. Mich. 2020) ("Although the Executive Branch . . . is tasked with enforcing the law and providing the primary defense against lawsuits directed at the State, the Legislature has an interest in the preservation and constitutionality of the laws governing the State."). There is no reason to believe Proposed Intervenors' interests will be represented by the Secretary.

2. *Ultimate Objective*. For similar reasons, this is not a case where "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Entergy Gulf States*, 817 F.3d at 203 (citation omitted). As explained, the Secretary of State's objective is in orderly implementation of whatever election rules are in force. Proposed Intervenors, however, intend to defend the challenged plans as well as the policies undergirding them. *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (finding no alignment of ultimate objectives because "[t]he government must represent the broad public interest, not just the economic concerns of the timber industry.").

Regardless, any presumption of adequacy is surmounted here, because Proposed Intervenors' "interests diverge from the putative representative's interests in a manner germane to the case." *Entergy Gulf States*, 817 F.3d at 204 (quoting *Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015)). A proposed intervenor can overcome the presumption of adequacy by "specify[ing] the particular ways in which their interests diverge from the" putative representative's. *Texas*, 805 F.3d at 663.

In this case, Proposed Intervenors have interests in preserving the effectiveness of their votes, avoiding another costly redistricting process that would divert resources from other important legislative matters, defending the challenged plans, and preserving the policies underpinning those plans, including the policies pertinent to VRA compliance. *Cf. Priorities USA*, 448 F. Supp. 3d at 764–65 (explaining that, because "the laws that the Legislature enacted, that the Legislature is tasked with designing, and that impact the manner in which members the Legislature are chosen will be essentially declared void" by an adverse ruling, this is not "a situation where the interest of the Legislature is only peripherally relevant and where the main contests in the case have no effect on that interest."). The Secretary of State's principal interest is in election administration. These are specific differences akin to those that have been found

sufficient to overcome the presumption of adequacy in governing precedent. *See, e.g., Trbovich*, 404 U.S. at 539 ("[T]he Secretary has an obligation to protect the vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." (quotation marks omitted)); *Brumfield*, 749 F.3d at 346 ("The state has many interests in this case—maintaining not only the Scholarship Program but also its relationship with the federal government and with the courts that have continuing desegregation jurisdiction. The parents do not have the latter two interests; their only concern is keeping their vouchers."); *Texas*, 805 F.3d at 663 (finding sufficient divergence, despite shared interests in upholding law, where the United States had an interest in an expansive legal interpretation and the proposed intervenors sought to obtain the benefits on the law); *see also Northeast Ohio Coal. for Homeless and Serv. Emp. Int'l Union, Local 1199 v. Blackwell,* 467 F.3d 999, 1008 (6th Cir. 2006) (recognizing that "the Secretary [of State of Ohio]'s primary interest is in ensuring the smooth administration of the election, while the State [proposed intervenor] and General Assembly have an independent interest in defending the validity of Ohio laws . . . .").

These differences are germane to this case. Because the Secretary's principal concern is orderly elections, Proposed Intervenors' interests are unlikely to be given priority over election-administrative considerations. "Even if the Secretary is performing his duties, broadly conceived, as well as can be expected, [Proposed Intervenors] may have a valid complaint about the performance of '[their] lawyer.'" *Trbovich*, 404 U.S. at 539. The Secretary of State's interests in election administration would not be impaired by an injunction forbidding the use of the challenged plan, an order requiring a new redistricting, a remedial plan departing from the Legislature's VRA-compliance goals or other policies, or a court-conducted redistricting—so long as all of that were to occur in time to administer the next scheduled legislative elections. The

divergence of interests is therefore directly implicated in the defense of this action, any presumption of adequacy is overcome, and Proposed Intervenors—because all intervention elements are satisfied—should be afforded intervention as a matter of right.

## II. Proposed Intervenors Should Be Permitted To Intervene

In the alternative, Proposed Intervenors request that the Court permit them to intervene in its discretion under Rule 24(b), which authorizes the Court to allow intervention of a non-party who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Even if not warranted as a matter of right, the Court has broad discretion to allow permissive intervention where, as here, the parties seeking to intervene assert claims with a common question of fact or law in connection with the main action." *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 179 F. Supp. 3d 656, 667 (E.D. La. 2016) (footnote omitted). "Intervention is appropriate when: '(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.'" *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 934 (N.D. Tex. 2019). "Federal courts should allow intervention when no one would be hurt and the greater justice could be attained." *Wal-Mart Stores*, 834 F.3d at 565 (citation omitted).

The elements of permissive intervention are clearly satisfied here. The motion is timely, for reasons set forth above. *Martinez v. United States*, No. 05-cv-055, 2005 WL 8155760, at *5 (W.D. Tex. Dec. 12, 2005) ("The timeliness standards for permissive intervention are the same as those for intervention of right."). And there is no question that Proposed Intervenors intend to assert defenses with a common question of fact or law in connection with the main action. Indeed, every assertion Proposed Intervenors intend to proffer relates to the same questions of fact or law raised in the complaint. Plaintiffs contend that the congressional plan contravenes Section 2, and

Proposed Intervenors contend the plan complies with the law. *See League of Women Voters of Mich.*, 902 F.3d at 577 (finding intervenors in redistricting case satisfied this element where they intended to defend the challenged plan); *Hunter v. Bostelmann*, No. 21-cv-512, 2021 WL 3856081, at *1 (W.D. Wis. Aug. 27, 2021) (granting permissive intervention by Wisconsin Legislature in redistricting case); *Baldus v. Members of Wis. Govt. Accountability Bd.*, No. 11-cv-562, 2011 WL 5834275, at *1 (E.D. Wis. Nov. 21, 2011) (granting permissive intervention by congress members because "[w]hile, in the eyes of the law, the intervenors may have no greater interest than the average citizen-of-age in the outcome of this case, as a matter of logic, the intervenors are much more likely to run for congressional election and thus have a substantial interest in establishing the boundaries of their congressional districts."); *Carter v. Degraffenreid,* 266 A.3d 1208, 2021 WL 4735059, at *1 n.2 (Pa. Commnw. Ct. Oct. 8, 2021) (permitting legislative leaders to intervene in redistricting litigation). Nor will intervention prejudice existing parties. Plaintiffs have squarely placed the Legislature's work at issue and cannot claim injury from Proposed Intervenors' defense of that work.

Additionally, various factors that typically guide courts' discretion favor intervention. First, "[i]n determining whether to allow a permissive intervention, a factor to be considered is whether the intervenor is likely to contribute significantly to the development of the underlying factual issues." *Grumpy, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, No. 93-cv-2621, 1995 WL 41711, at *2 (E.D. La. Jan. 30, 1995). In this case, the Secretary of State did not participate in the adoption of the challenged plan and has no personal knowledge of the policies it effectuates. Proposed Intervenors, by contrast, were directly involved in the redistricting and know the analyses that informed choices relevant to this case. Second, for reasons explained, intervention "would not prejudice the existing parties by confusing the issue properly before the Court."

*Aderholt v. Bureau of Land Mgmt.*, No. 7:15-cv-00162, 2016 WL 3365252, at *6 (N.D. Tex. Mar. 24, 2016); *see Hunter v. Bostelmann*, No. 21-cv-512, 2021 WL 4206654, at *2 (W.D. Wis. Sept. 16, 2021) ("Now that the court has granted these motions to intervene [to the state legislature, individual congressmen, state governor, and state residents with malapportionment claims before the state supreme court], the existing parties represent the spectrum of legitimate interests in [the State's] decennial redistricting."). Third, Proposed Intervenors have, for reasons set forth above, met their "minimal burden of showing current representation is inadequate" for purposes of the permissive intervention test. *Det. Equip. Installation, LLC v. C.A. Owens & Assocs., Inc.*, No. 20-cv-2342, 2021 WL 6496785, at *6 (E.D. La. Mar. 24, 2021).

Finally, intervention will not "unduly delay or prejudice" the rights of existing parties. *Franciscan All.*, 414 F. Supp. 3d at 934. The participation of legislative leaders is common in redistricting litigation; North Carolina, Ohio, Pennsylvania, and Alabama present recent examples of this. *See, e.g., League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, __ N.E.2d__, 2022 WL 110261, at *11 & n.8 (Ohio 2022) (explaining that, although state statute made the redistricting commission the only necessary respondent, the "better practice" is to name the commission's members, which included legislative members); *Carter v. Chapman,* __ A.3d __, 2022 WL 702894, at *3 (Pa. Feb. 23, 2022) (recognizing intervention of presiding officers of Pennsylvania General Assembly); *Harper v. Hall*, 868 S.E.3d 499, 513 (N.C. 2022) (legislative leaders as principal defendants); *Caster v. Merrill,* No. 2:21-cv-1536, 2022 WL 264819, at *7 (N.D. Ala. Jan. 24, 2022) (recognizing intervention of legislative leaders). Proposed Intervenors' participation in this case will provide greater assurance to the Court and the public that a fulsome set of arguments is marshalled in defense of the plans—an essential component of our adversarial system of justice. In those cases, participation of members of the legislature did not lead to delay

or prejudice, and there is no reason to believe it would do so here. *See, e.g.*, *Carter,* 2002 WL 702894, at *5 ("We would like to extend our gratitude to the parties and their counsel who participated in that hearing. Their submissions and advocacy have greatly aided this Court . . . ."); *Caster*, 2002 WL 264819, at *2 (recognizing that parties and counsel "developed an extremely extensive record on an extremely expedited basis" and provided "able argument").

All relevant facts and considerations therefore favor permissive intervention.

## **CONCLUSION**

The Court should grant the Motion of the Presiding Officers of the Louisiana Legislature to Intervene to participate in this suit.

Respectfully submitted,

E. Mark Braden*
Katherine L. McKnight*
Richard B. Raile*
**BAKERHOSTETLER LLP**
1050 Connecticut Ave., N.W., Ste. 1100
Washington, D.C. 20036
(202) 861-1500
mbraden@bakerlaw.com
kmcknight@bakerlaw.com
rraile@bakerlaw.com

Patrick T. Lewis*
**BAKERHOSTETLER LLP**
127 Public Square, Ste. 2000
Cleveland, Ohio 44114
(216) 621-0200
plewis@bakerlaw.com

Erika Dackin Prouty*
**BAKERHOSTETLER LLP**
200 Civic Center Dr., Ste. 1200
Columbus, Ohio 43215
(614) 228-1541
eprouty@bakerlaw.com
* *Pro hac vice motions to be filed*

 */s/ Michael W. Mengis*
Michael W. Mengis, LA Bar No. 17994
**BAKERHOSTETLER LLP**
811 Main Street, Suite 1100
Houston, Texas 77002
Phone: (713) 751-1600
Fax: (713) 751-1717
Email: mmengis@bakerlaw.com

*Counsel for Proposed Legislative Intervenors, Clay Schexnayder, in his Official Capacity as Speaker of the Louisiana House of Representatives, and of Patrick Page Cortez, in his Official Capacity as President of the Louisiana Senate*

## **CERTIFICATE OF SERVICE**

I certify that on April 6, 2022, this document was filed electronically on the Court's electronic case filing system. Notice of the filing will be served on all counsel of record through the Court's system. Copies of the filing are available on the Court's system.

    */s/ Michael W. Mengis*
Michael W. Mengis, LA Bar No. 17994

*Counsel for Proposed Legislative Intervenors, Clay Schexnayder, in his Official Capacity as Speaker of the Louisiana House of Representatives, and of Patrick Page Cortez, in his Official Capacity as President of the Louisiana Senate*