IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| EDWARD GALMON, SR, CIARA HART, NORRIS HENDERSON, and TRAMELLE HOWARD<br><br>Plaintiffs,<br><br>v.<br><br>R. KYLE ARDOIN, in his official capacity as Secretary of State of the State of Louisiana,<br><br>Defendant. | Case No. 3:22-0214-BAJ-RLB |

## ANSWER AND DEFENSES BY DEFENDANT/INTERVENOR STATE OF LOUISIANA, THROUGH JEFF LANDRY IN HIS OFFICIAL CAPACITY AS LOUISIANA ATTORNEY GENERAL

NOW INTO COURT, through undersigned counsel, comes Defendant/Intervenor, the State of Louisiana ("State"), through Jeff Landry, in his official capacity as Louisiana Attorney General ("Attorney General"), who responds to the Complaint for Declaratory and Injunctive Relief by denying each and every paragraph thereof except as expressly admitted herein and further answers and pleads defenses as follows:

## AFFIRMATIVE DEFENSES

### First Defense - Lack of Subject Matter Jurisdiction

A.

The case raises a political question reserved to the Congress of the United States pursuant to the Elections Clause (Article I, Section 4, Cl. 1) of the U.S. Constitution so that this Court lacks jurisdiction over the subject matter of the claim to the extent the case seeks to alter an act of the

1

Louisiana Legislature relating to the time, place and manner of holding elections for U.S. Representatives.

B.

These claims are not justiciable claims capable of resolution by the federal courts to the extent they assert or involve partisan gerrymandering that is traditionally and historically beyond the reach of the courts as political questions.

C.

Some or all of the plaintiffs fail to show a sufficient interest and/or injury arising from the challenged Louisiana law establishing U.S. Congressional Districts and so lack standing to assert the claims set out in the Complaint, including but not limited to plaintiffs, Tramelle Howard and Norris Henderson.

**Second Defense - Failure to State a Claim Upon Which
Relief Can Be Granted**

Some or all of the plaintiffs fail to state a claim upon which relief can be granted, including by not limited to plaintiffs, Tramelle Howard and Norris Henderson, who, if their allegations are true, do not assert a cognizable claim and would not be entitled to relief under existing law.

**Third Defense – Failure to Join a Required Party**

Plaintiffs failed to join parties required under Fed. R. Civ. P. 19(a) who have an interest relating to the subject of the action and are so situated that disposing of the action in their absence may as a practical matter impair or impede their ability to protect their interests.

AND NOW FURTHERING ANSWERING the particular allegations and averments of the Complaint, the State pleads as follows:

1.

The State is without sufficient information to confirm or deny the Plaintiffs' reason for bringing this action; therefore, the allegations in Paragraph 1 are denied. However, from the allegations set out by some or all of the Plaintiffs, the Complaint seeks to challenge the act of the Louisiana Legislature reapportioning and redistricting U.S. House of Representative Districts on Fourteenth and Fifteenth Equal Protection grounds wherein the Plaintiffs set out a general claim of inequitable composition and make-up of congressional election districts.

2.

The allegations of Paragraph 2 are conclusory and require no response but are denied out of an abundance of caution.

3.

The allegations of Paragraph 3 are conclusory and require no response but are denied out of an abundance of caution.

4.

The allegations of Paragraph 4 are conclusory and require no response but are denied out of an abundance of caution.

5.

The allegations of Paragraph 5 are conclusory and require no response but are denied out of an abundance of caution.

6.

The allegations of Paragraph 6 are conclusory and require no response but are denied out of an abundance of caution.

7.

Paragraph 7 requires no response from the State but the allegations are denied out of an abundance of caution.

## JURISDICTION AND VENUE

8.

Reserving the jurisdictional objections raised in its Affirmative Defenses, the State admits that the jurisdictional statutes cited in Paragraph 8 are the correct jurisdictional statutes for this claim, but the State avers that the claims asserted in the Complaint arise, in whole or in part, under the United States Constitution.

9.

To the extent the court has jurisdiction, the State admits that the venue statute cited in Paragraph 9 is the correct venue provision for this case.

10.

Paragraph 10 contains a conclusion of law that requires no response from the State.

## PARTIES

11.

The allegations of Paragraph 11 are denied for lack of sufficient information to justify a belief therein to the extent facts are alleged. With respect to the numerous conclusions contained in Paragraph 11, which require no response, the State nonetheless denies the conclusions out of an abundance of caution as erroneously drawn.

12.

The allegations of Paragraph 12 are denied for lack of sufficient information to justify a belief therein to the extent facts are alleged. With respect to the numerous conclusions contained

in Paragraph 12, which require no response, the State nonetheless denies the conclusions out of an abundance of caution as erroneously drawn.

13.

The allegations of Paragraph 13 are denied for lack of sufficient information to justify a belief therein to the extent facts are alleged. With respect to the numerous conclusions contained in Paragraph 13, which require no response, the State nonetheless denies the conclusions out of an abundance of caution as erroneously drawn. By the terms of Norris Henderson's allegations, he has not and will not suffer harm or injury as a result of the Congressional Districts contested in the case.

14.

The allegations of Paragraph 14 are denied for lack of sufficient information to justify a belief therein to the extent facts are alleged. With respect to the numerous conclusions contained in Paragraph 11, which require no response, the State nonetheless denies the conclusions out of an abundance of caution as erroneously drawn. By the terms of Tramelle Howard's allegations, he has not and will not suffer harm or injury as a result of the Congressional Districts contested in the case.

15.

R. Kyle Ardoin is admitted to be the Louisiana Secretary of State designated as chief election officer of the state by Louisiana constitution and statute. Otherwise, Paragraph 15 contains conclusions that require no response but are denied out of an abundance of caution.

## LEGAL BACKGROUND

16.

The requirements of the Voting Rights Act are set out in statute and constitute the best evidence of its terms, and the excerpts set out in Paragraph 16 do not constitute a complete statement of the terms and meaning of the statute and are thus denied. Additionally, the conclusory statement as to its application require no response but is denied out of an abundance of caution.

17.

The allegations of Paragraph 17 are denied to the extent a response to the conclusory statement of law and its application contained therein requires a response.

18.

The allegations of Paragraph 18 are denied to the extent a response to the conclusory statement of law and its application contained therein requires a response.

19.

The allegations of Paragraph 19 are denied to the extent a response to the conclusory statement of law and its application contained therein requires a response.

20.

The allegations of Paragraph 20 are denied to the extent a response to the conclusory statement of law and its application contained therein requires a response.

21.

The allegations of Paragraph 21 are denied to the extent a response to the conclusory statement of law, the partial history thereof and the law's application contained therein requires a response.

22.

The allegations of Paragraph 22 are denied to the extent a response to the conclusory statement of law, the partial history thereof and the law's application contained therein requires a response.

## FACTUAL ALLEGATIONS

I. Louisiana's 2011 Congressional Redistricting

23.

The allegations of Paragraph 23 are admitted as substantially correct, except that the State is unaware and cannot verify or deny the race of the legislators voting on each proposed plan. Additionally, the State would show that the districts enacted by the legislature in 2011 required preclearance by the U.S. Department of Justice pursuant to Section 5 of the Voting Rights Act of 1965 and were precleared without objection.

24.

In response to the allegations of Paragraph 24, the State admits that a number of legislators proposed redistricting plans during the 2011 legislative session the best evidence of which are the plans themselves. The characterization of the plans in Paragraph 24 is denied.

25.

In response to the allegations of Paragraph 25, the best evidence of the proceedings of the Louisiana Legislature are the official records of the proceedings. The characterization of those proceedings in Paragraph 25 is denied.

26.

In response to the allegations of Paragraph 26, the best evidence of the proceedings of the Louisiana Legislature are the official records of the proceedings. The characterization of those proceedings in Paragraph 25 is denied.

27.

In response to the allegations of Paragraph 27, the best evidence of 2011 Congressional Districts is the statute. The characterization of those proceedings in Paragraph 25 is denied.

II. <u>The 2020 Census</u>

28.

In response to the allegations of Paragraph 28, the best evidence of census data is the official results of the census by the United States Census Bureau. The characterization of those proceedings in Paragraph 28 is denied.

29.

In response to the allegations of Paragraph 29, the best evidence of census data is the official results of the census by the United States Census Bureau. The characterization of those proceedings in Paragraph 29 is denied.

III. <u>Louisiana's 2022 Congressional Redistricting</u>

30.

The State is without sufficient knowledge to verify or deny allegations as to what "Black Louisianians and civil rights groups" did following the 2020 census. Nor can the State confirm or deny what "residents" did at a public meeting on November 16, 2021. Nor can the State confirm or deny statements made by Ted James as reported in Paragraph 30. To the extent a response is required the allegations are denied.

31.

Paragraph 31 does not conform to the pleading requirement of Fed. R. Civ. P. 8 and should be stricken from the pleading. Reporting the opinion of a random third party is immaterial to any claim or cause of action. To the extent a response is required the allegations are denied.

32.

The allegations in Paragraph 32 are denied with respect to U.S. Congressional Districts.

33.

Except to admit that the Louisiana House of Representatives passed HB 1, the best evidence of the proceedings of the Louisiana Legislature are the official records thereof. The characterization and summary of the proceedings contained in Paragraph 33 are denied.

34.

The best evidence of the proceedings of the Louisiana Legislature are the official records thereof. The characterization and summary of the proceedings contained in Paragraph 34 are denied.

35.

The best evidence of the proceedings of the Louisiana Legislature are the official records thereof. The characterization and summary of the proceedings contained in Paragraph 35 are denied.

36.

The best evidence of the proceedings of the Louisiana Legislature are the official records thereof. The characterization and summary of the proceedings contained in Paragraph 36 are denied.

37.

The best evidence of the proceedings of the Louisiana Legislature are the official records thereof. The characterization and summary of the proceedings contained in Paragraph 37 are denied.

38.

Except to admit that the Governor vetoed HB1 on or about March 9, 2022, the allegations of Paragraph 38 are denied as characterized, excepted and stated in Paragraph 38.

39.

Except to admit that the legislature overrode the Governor's veto on March 30, 2022, the allegations of Paragraph 39 are denied.

IV. Louisiana's New Congressional Plan

40.

The allegations of Paragraph 40 are denied.

41.

The Congressional redistricting plan for Louisiana following the 2020 census is the best evidence of the composition of the districts, and the characterization thereof in Paragraph 41 is denied.

42.

The Congressional redistricting plan for Louisiana following the 2020 census is the best evidence of the composition of the districts, and the characterization thereof in Paragraph 41 is denied.

43.

The allegations of Paragraph 43 are denied.

V. Racial Polarization in Louisiana

44.

Paragraph 44 is made up of legal conclusions and case citations that require no response from the State but is denied out of an abundance of caution to the extent a response is required.

45.

Paragraph 45 is a mere conclusory statement of the pleader that requires no response from the State but is denied out of an abundance of caution to the extent a response is required.

46.

Paragraph 46 is a mere conclusory statement of the pleader that requires no response from the State but is denied out of an abundance of caution to the extent a response is required.

47.

Paragraph 47 is a mere conclusory statement of the pleader that requires no response from the State but is denied out of an abundance of caution to the extent a response is required.

48.

Paragraph 47 is a mere conclusory statement of the pleader based upon a hearsay statement from a news outlet that requires no response from the State but is denied out of an abundance of caution to the extent a response is required.

VI. <u>Voting-Related Racial Discrimination in Louisiana</u>

50.

The allegations of Paragraph 50 are conclusory requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs.

51.

The allegations of Paragraph 51 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs. As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

52.

Paragraph 52 is immaterial and does not relate to Congressional redistricting and should be stricken from the pleading as non-conforming to Fed. R. Civ. P. 8. To the extent a response is required, the allegations are denied as characterized by the Plaintiffs.

53.

The allegations of Paragraph 53 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs. As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

54.

The allegations of Paragraph 54 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs. As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

55.

The allegations of Paragraph 55 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs. As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

56.

The allegations of Paragraph 56 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs. As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

57.

The allegations of Paragraph 57 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs. As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

58.

The allegations of Paragraph 58 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs. As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

59.

The allegations of Paragraph 59 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs. As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

60.

The allegations of Paragraph 60 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs. As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

61.

The allegations of Paragraph 61 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs.

As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

62.

Paragraph 62 contains conclusory statements that require no response from the State but are denied as characterized in Paragraph 62.

63.

Paragraph 63 contains conclusory statements of the pleader that require no response from the State but are denied as characterized in Paragraph 63.

64.

Paragraph 64 contains conclusory statements of the pleader that require no response from the State but are denied as characterized in Paragraph 64.

65.

Paragraph 65 contains conclusory statements of the pleader that require no response from the State but are denied as characterized in Paragraph 65.

66.

Paragraph 66 contains conclusory statements of the pleader that require no response from the State but are denied as characterized in Paragraph 66.

67.

The allegations of Paragraph 67 are denied except to admit that the Department of Justice objected to a Louisiana state redistricting plan in or around 1981 when submitted for preclearance.

68.

Except to admit that the Department of Justice questioned points on state redistricting plans, which were resolved and the referenced plans put into effect, the State denies the characterization of events in Paragraph 68.

69.

The allegations of Paragraph 69 are denied as characterized.

70.

The allegations of Paragraph 70 are denied as characterized, and the State of Louisiana utilizes driver's licenses and state identification for registration and voting for all voters.

71.

The allegations of Paragraph 71 are conclusory and are denied as characterized by Paragraph 71.

72.

The allegations of Paragraph 72 are denied.

73.

Except to admit the reported decision at the cite alleged in Paragraph 73, the allegations of Paragraph 73 are denied as characterized.

74.

The allegations of Paragraph 74 are denied as they relate to questions raised by the Department of Justice with respect to voting changes and the reasons for such objections.

75.

The allegations in Paragraph 75 are denied.

76.

The allegations of Paragraph 76 are denied as characterized.

77.

Paragraph 77 is not material or relevant to Congressional redistricting and should be stricken for failure to conform to the pleading requirement of Fed. R. Civ. P. 8. To the extent a response is required, the allegations are denied.

VII. Ongoing Effects of Louisiana's History of Discrimination

78.

The allegations of Paragraph 78 are recycled and inflammatory conclusory statements requiring no response from the State but are nonetheless denied as characterized by the Plaintiffs. As the Supreme Court recently noted remote history is no longer germane to voting rights questions, and burdens imposed by the Voting Rights Act must be justified by current needs.

79.

Paragraph 79 contains mere conclusory statements of the pleader that require no response from the State but are denied out of an abundance of caution as characterized.

80.

Paragraph 80 contains mere conclusory statements of the pleader that require no response from the State but are denied out of an abundance of caution as characterized.

81.

Paragraph 80 contains mere conclusory statements of the pleader that require no response from the State but are denied out of an abundance of caution as characterized.

82.

Paragraph 82 contains mere conclusory statements of the pleader that require no response from the State but are denied out of an abundance of caution as characterized.

VIII. Racial Appeals in Louisiana Politics

83.

The allegations of Paragraph 83 are denied to the extent the allegations mischaracterized Louisiana practices as general conditions and practices in Louisiana elections.

84.

Except to admit that David Duke was once elected to the Louisiana House of Representatives, the allegations of Paragraph of Paragraph 84 are denied for lack of sufficient information to justify a belief therein.

85.

The allegations of Paragraph 85 are not material or relevant to Congressional election districts and are denied or denied for lack of sufficient information to justify a belief therein.

86.

The allegations of Paragraph 86 are denied or denied for lack of information to justify a belief therein.

87.

The allegations of Paragraph 87 are denied or denied for lack of information to justify a belief therein.

88.

The allegations of Paragraph 88 represent the opinions, views and characterization of events by the Plaintiffs that are denied by the State as written in Paragraph 88.

IX. Black Officeholders in Louisiana

89.

The allegations in Paragraph 89 are denied, except the State admits that Louisiana has not had an African American serve as Governor since P.B.S. Pinchback nor an African American serve

as a United States Senator. However, African American voters have elected candidates of choice as both Governor and United States Senator. In fact, upon information and belief, the current Governor of the State was the candidate of choice for African Americans in both of his elections as Governor.

90.

The allegations in Paragraph 90 are denied, except to admit that African Americans are elected principally from predominately minority districts where candidates are more likely to be African American, African Americans have had success in districts that are predominately white, and African Americans have elected candidates of choice in predominately white districts.

91.

The allegations of Paragraph 91 are denied as characterized, and African American candidates of choice have been election to both trial and appellate courts.

92.

The allegations of Paragraph 92 are admitted.

CLAIMS FOR RELIEF

COUNT I

Violation of Section 2 of the Voting Rights Act
52 U.S.C. § 10301

93.

Paragraph 93 requires no response from the State but is denied out of an abundance of caution to the extent a response is deemed required.

94.

Paragraph 94 contains an excerpt of Section 2 of the Voting Rights Act, which requires no response but is denied out of an abundance of caution as a partial quotation of a statute or law.

95.

The allegations of Paragraph 95 are denied.

96.

The allegations of Paragraph 96 are denied.

97.

The allegations of Paragraph 97 are denied.

98.

The allegations of Paragraph 98 are denied.

99.

The allegations of Paragraph 99 are denied.

100.

The allegations of Paragraph 100 are denied.

WHEREFORE, having fully answered the Complaint, the State of Louisiana prays as follows:

1) That this Answer be deemed good and sufficient;
2) That, after all proceedings are had, there be judgment rendered in his favor, dismissing Plaintiffs' claims with prejudice and at their costs;
3) For all general and equitable relief that justice requires.

Dated: April 12, 2022

Respectfully Submitted,

Jeff Landry
Louisiana Attorney General

*/s/ Angelique Duhon Freel*
Elizabeth B. Murrill (LSBA No. 20685)
Solicitor General
Shae McPhee's (LSBA No. 38565)
Angelique Duhon Freel (LSBA No. 28561)
Carey Tom Jones (LSBA No. 07474)
Jeffery M. Wale (LSBA No. 36070)
OFFICE OF THE ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6000 phone
(225) 326-6098 fax
murrille@ag.louisiana.gov
freela@ag.louisiana.gov
walej@ag.louisiana.gov
jonescar@ag.louisiana.gov
mcphees@ag.louisiana.gov

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 12th day of April 2022, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Angelique Duhon Freel*
*Angelique Duhon Freel*