UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


PRESS ROBINSON, ET AL      : CIVIL ACTION

VERSUS                     : NO. 22-211-SDD

KYLE ARDOIN, ET AL         : CONSOLIDATED WITH


EDWARD GALMON SR., ET AL : NO. 22-214-SDD

VERSUS                     :

KYLE ARDOIN, ET AL,        : JUNE 16, 2022

=========================================================
        CONTINUED MOTION FOR PRELIMINARY INJUNCTION
            BEFORE THE HONORABLE SHELLY D. DICK
              UNITED STATES CHIEF DISTRICT JUDGE


                  A P P E A R A N C E S


FOR THE ROBINSON PLAINTIFFS:

     ADCOCK LAW, LLC
     BY: JOHN ADCOCK, ESQUIRE
     3110 CANAL STREET
     NEW ORLEANS, LOUISIANA 70119

     BY: TRACIE L. WASHINGTON, ESQUIRE
     1631 ELYSIAN FIELDS AVENUE
     NEW ORLEANS, LOUISIANA 70117


FOR THE GALMON PLAINTIFFS:

     WALTERS, PAPILLION, THOMAS, CULLENS, LLC
     BY: DARREL J. PAPILLION, ESQUIRE
     BY: JENNIFER WISE MOROUX, ESQUIRE
     12345 PERKINS ROAD, BUILDING ONE
     BATON ROUGE, LOUISIANA 70810

```
 1  FOR KYLE ARDOIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF
    STATE:
 2
        SHOWS, CALI & WALSH, LLP
 3      BY: JOHN C. WALSH, ESQUIRE
        628 ST. LOUIS STREET
 4      BATON ROUGE, LOUISIANA 70821

 5      NELSON MULLINS RILEY AND SCARBOROUGH, LLC
        BY: PHILLIP STRACH, ESQUIRE
 6      4140 PARKLANE AVENUE, SUITE 200
        RALEIGH, NORTH CAROLINA 27612
 7

 8  FOR THE LOUISIANA LEGISLATIVE BLACK CAUCUS:

 9      STEPHEN M. IRVING, LLC
        BY: STEPHEN IRVING, ESQUIRE
10      111 FLOUNDERS DRIVE, SUITE 700
        BATON ROUGE, LOUISIANA 70810
11
        JOHNSON LAW FIRM
12      BY: ERNEST L. JOHNSON, ESQUIRE
        3313 GOVERNMENT STREET
13      BATON ROUGE, LOUISIANA 70806

14
    FOR THE LEGISLATIVE INTERVENORS CLAY SCHEXNAYDER AND
15  PATRICK CORTEZ:

16      BAKERHOSTETLER, LLP
        BY: E. MARK BRADEN, ESQUIRE
17      BY: KATHERINE L. MCKNIGHT, ESQUIRE
        1050 CONNECTICUT AVENUE, N.W.
18      SUITE 1100
        WASHINGTON, D.C. 20036
19
        BAKERHOSTETLER, LLP
20      BY: MICHAEL W. MENGIS, ESQUIRE
        811 MAIN STREET, SUITE 1100
21      HOUSTON, TEXAS 77002

22
    FOR INTERVENOR DEFENDANT STATE OF LOUISIANA:
23
        LOUISIANA'S OFFICE OF THE ATTORNEY GENERAL
24      BY: ANGELIQUE D. FREEL, ESQUIRE
        BY: CAREY TOM JONES, ESQUIRE
25      1885 NORTH THIRD STREET
        BATON ROUGE, LOUISIANA 70802
```

1

        REPORTED BY:  NATALIE W. BREAUX, RPR, CRR

2
           UNITED STATES COURTHOUSE
             777 FLORIDA STREET

3
         BATON ROUGE, LOUISIANA 70801
        NATALIE_BREAUX@LAMD.USCOURTS.GOV

4
            (225) 389-3565

5
PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING
       COMPUTER-AIDED TRANSCRIPTION SOFTWARE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I N D E X

DEFENSE WITNESS:

 PRESIDENT PATRICK PAGE CORTEZ                    PAGE

      DIRECT EXAMINATION BY MS. MCKNIGHT ............16

      CROSS-EXAMINATION BY MR. ADCOCK ...............20

      CROSS-EXAMINATION BY MR. PAPILLION ............48

      REDIRECT EXAMINATION BY MS. MCKNIGHT ..........55

DEFENSE WITNESS:

 CLAY SCHEXNAYDER

      DIRECT EXAMINATION BY MS. MCKNIGHT ............64

      CROSS-EXAMINATION BY MR. ADCOCK ...............65

      REDIRECT EXAMINATION BY MS. MCKNIGHT ..........78

      RECROSS-EXAMINATION BY MR. ADCOCK .............80

**PROCEEDINGS**

**(CALL TO THE ORDER OF COURT.)**

1      **THE COURT:**  GOOD MORNING.  BE SEATED.

2      CALL THE CASE, PLEASE.

3      **THE COURTROOM DEPUTY:**  THIS IS CIVIL ACTION

4  NO. 22-11 PRESS ROBINSON AND OTHERS VERSUS KYLE

5  ARDOIN AND OTHERS; AND 22-214, EDWARD GALMON, SR.,

6  AND OTHERS VERSUS KYLE ARDOIN, ET AL.

7      **THE COURT:**  OKAY.  GOOD MORNING, EVERYONE.

8  BEFORE I ASK FOR APPEARANCES, LET ME JUST ASSURE YOU

9  THAT WE WILL NOT BE LONG THIS MORNING.  THE COURT IS

10 MINDFUL OF THE IMPORTANT WORK OF THE LEGISLATURE, SO

11 THE COURT INTENDS TO KEEP THIS AS SHORT AND AS DIRECT

12 AS POSSIBLE.  BUT THE COURT IS INTERESTED IN HEARING

13 FROM HOUSE SPEAKER SCHEXNAYDER AND SENATE PRESIDENT

14 CORTEZ REGARDING THE MOTION FOR EXTENSION AND ANY

15 ARGUMENT OF THE PARTIES.

16     SO WITH THAT, THE PARTIES CAN MAKE

17 THEIR APPEARANCES, PLEASE.

18     **MR. PAPILLION:**  GOOD MORNING, YOUR HONOR.

19 DARREL PAPILLION ON BEHALF OF THE GALMON PLAINTIFFS,

20 ALONG WITH JENNIFER MOROUX.

21     **THE COURT:**  GOOD MORNING.

22     **MR. ADCOCK:**  GOOD MORNING, YOUR HONOR.  JOHN

23 ADCOCK ON BEHALF OF THE ROBINSON PLAINTIFFS.

1    **THE COURT:**  GOOD MORNING.

2    **MS. WASHINGTON:**  GOOD MORNING, YOUR HONOR.

3  TRACIE WASHINGTON ON BEHALF OF THE ROBINSON

4  PLAINTIFFS.

5    **THE COURT:**  GOOD MORNING.

6    **MR. IRVING:**  GOOD MORNING, YOUR HONOR.

7  STEVE IRVING ON BEHALF OF THE LEGISLATIVE BLACK

8  CAUCUS INTERVENOR.

9    **THE COURT:**  GOOD MORNING.

10    **MR. JOHNSON:**  GOOD MORNING, YOUR HONOR.

11  ERNEST JOHNSON ALONG WITH STEVE IRVING REPRESENTING

12  THE LOUISIANA LEGISLATIVE BLACK CAUCUS.

13    **THE COURT:**  GOOD MORNING, SIR.

14      COUNSEL?

15    **MS. MCKNIGHT:**  GOOD MORNING, YOUR HONOR.

16  KATE MCKNIGHT FOR LEGISLATIVE INTERVENORS.  ALONG

17  WITH ME ARE MARK BRADEN AND MICHAEL MENGIS.

18    **THE COURT:**  GOOD MORNING.

19    **MR. FREEL:**  GOOD MORNING, YOUR HONOR.

20  ANGELIQUE FREEL AND CAREY TOM JONES HERE FOR

21  INTERVENOR STATE OF LOUISIANA THROUGH ATTORNEY

22  GENERAL JEFF LANDRY.

23    **THE COURT:**  THERE IS NO MOTION FROM THE

24  INTERVENORS.  I APPRECIATE YOU BEING HERE, BUT THE

25  COURT WILL NOT REQUIRE ANYTHING FROM YOU SINCE WE

1  DON'T -- YOU DON'T REALLY NECESSARILY HAVE A -- WELL,

2  YOU DON'T HAVE A MOTION BEFORE THE COURT.  BUT I

3  APPRECIATE YOU BEING HERE ON BEHALF OF THE ATTORNEY

4  GENERAL.

5          OKAY.  THE PLAINTIFF MAY CALL THEIR

6  FIRST WITNESS.  I'M SORRY.  THE MOVANT.  MY

7  APOLOGIES, MS. MCKNIGHT.

8          MS. MCKNIGHT:  YOUR HONOR, THANK YOU.

9          WE INTEND TO REST PRIMARILY ON THE

10  ARGUMENTS IN OUR MOTION.  WE MAY HAVE A FEW RESPONSES

11  TO WHAT PLAINTIFFS HAVE FILED LAST NIGHT WITH THE

12  COURT.

13          I NEED TO RAISE A PROCEDURAL ISSUE THAT

14  HAS COME TO OUR ATTENTION SINCE MONDAY WHEN WE FILED

15  OUR MOTION FOR EXTENSION.  THAT PROCEDURAL ISSUE IS

16  THAT IF THIS COURT ALLOWS EXTRA TIME, A NEW

17  EXTRAORDINARY SESSION WILL NEED TO BE CALLED.  THAT

18  NEW SESSION REQUIRES SEVEN-DAY NOTICE.  AND PARDON

19  ME, YOUR HONOR, YOU MAY ALREADY BE AWARE OF THIS.

20  BUT I WANTED TO MAKE SURE IT WAS CLEAR --

21          THE COURT:  I READ THE BRIEFS, BUT GO AHEAD.

22  I'D LIKE TO HEAR ABOUT IT.  BUT I READ THE BRIEFS.

23  I'M AWARE OF IT.

24          MS. MCKNIGHT:  OKAY.  SO JUST WHAT WOULD

25  HAPPEN IF THIS COURT, LET'S SAY, ALLOWS MORE TIME,

1 THE LEGISLATURE WOULD NEED TO HAVE EITHER THE
2 GOVERNOR ISSUE A NEW EXTRAORDINARY SESSION NOTICE --
3       **THE COURT:** OR THEY CAN DO IT THEMSELVES
4 WITH MAJORITY RULE. CORRECT?
5       **MS. MCKNIGHT:** THAT IS CORRECT, YOUR HONOR.
6 THE ONLY REASON I DIDN'T RAISE THAT FIRST, YOUR
7 HONOR, IS THAT TAKES MORE TIME, AND WE UNDERSTAND
8 THIS COURT IS INTERESTED IN AN EXPEDITED PROCESS.
9       **THE COURT:** WHY DOES IT TAKE MORE TIME?
10       **MS. MCKNIGHT:** TO GATHER SIGNATURES. IT
11 TAKES MORE TIME TO GATHER SIGNATURES THAN IT DOES FOR
12 THE GOVERNOR.
13       **THE COURT:** IT'S SIGNATURES, OR YOU CAN'T
14 JUST DO IT ON THE FLOOR?
15       **MS. MCKNIGHT:** WELL, YOUR HONOR, THAT'S
16 BEYOND MY KEN AT THIS POINT. I UNDERSTOOD --
17       **THE COURT:** I'D LIKE TO HEAR FROM YOUR
18 CLIENTS REGARDING THAT.
19       **MS. MCKNIGHT:** OKAY. I'LL MAKE SURE --
20       **THE COURT:** GO AHEAD.
21       **MS. MCKNIGHT:** SO I JUST WANTED TO MAKE SURE
22 IT WAS CLEAR FOR THE COURT HOW THIS WOULD -- HOW IT
23 WOULD PLAY OUT SO THE COURT ISN'T SURPRISED BY THE
24 FACT THAT IF ADDITIONAL TIME IS ALLOWED, THERE IS NO
25 WAY TO AMEND THE EXISTING NOTICE FROM THE GOVERNOR

FOR THE CURRENT EXTRAORDINARY SESSION.  THAT MEANS
THAT EVEN IF THIS COURT ALLOWS MORE TIME, THE
GOVERNOR COULD NOT SAY *I'M GOING TO AMEND MY NOTICE*
*TO EXTEND THE DATE TO CONFORM WITH WHAT THE JUDGE HAS*
*ALLOWED*.

     INSTEAD WE UNDERSTAND WHAT MUST HAPPEN
IS THE CURRENT EXTRAORDINARY SESSION WILL END ON JUNE
20TH, THEN ANY ADDITIONAL TIME WOULD NEED TO BE IN
ANOTHER EXTRAORDINARY SESSION, AND IT WOULD NEED
SEVEN DAYS' ADVANCE NOTICE.  SO I JUST WANT TO GIVE
YOU A GAME ABOUT -- IF, LET'S SAY, THE GOVERNOR
TOMORROW ISSUES A NOTICE FOR AN EXTRAORDINARY
SESSION, THE EARLIEST THAT EXTRAORDINARY SESSION
COULD BEGIN WOULD BE NEXT FRIDAY, JUNE 24.

     **THE COURT:**  WHY CAN THIS COURT NOT UNDER ITS
INHERENT POWER WAIVE THAT SEVEN-DAY NOTICE OR ORDER
THAT SEVEN-DAY NOTICE BE SUSPENDED?

     **MS. MCKNIGHT:**  YOUR HONOR, I HAVE NOT LOOKED
AT THAT QUESTION.  AND THERE ARE LAWYERS WHO ARE MORE
KNOWLEDGEABLE ABOUT THAT THAN I AM.

     **THE COURT:**  WHAT IS THE PURPOSE OF THE
SEVEN-DAY NOTICE?

     **MS. MCKNIGHT:**  I BELIEVE IT'S TO ENSURE THAT
THERE IS SUFFICIENT TIME FOR MEMBERS FROM ALL OVER --

     **THE COURT:**  TO GET HERE.

1      **MS. MCKNIGHT:**  -- THE STATE TO TRAVEL.

2         **THE COURT:**  AND THEY'RE HERE.

3      **MS. MCKNIGHT:**  THERE MAY BE OTHER ISSUES,

4  BUT THAT'S THE ONE IN MY MIND.

5         **THE COURT:**  I'VE THOUGHT ABOUT THIS AND I'VE

6  WONDERED ABOUT WHAT THE WORK-AROUND, IF THERE IS ANY,

7  AND WHAT IS THE PURPOSE OF THE SEVEN-DAY NOTICE.  AND

8  IT WOULD SEEM TO THE COURT THAT THE PURPOSE OF THE

9  SEVEN-DAY NOTICE IS TO ALLOW MEMBERS OF THE

10 LEGISLATURE TO TRAVEL FROM THEIR RESPECTIVE

11 DISTRICTS, THEIR RESPECTIVE HOME SITES TO ATTEND A

12 SPECIAL SESSION OR A REGULAR SESSION.  THAT MAKES

13 SENSE TO ME.  AND I DON'T KNOW HOW LONG AGO THOSE

14 RULES WERE PASSED.  THEY MAY HAVE BEEN PASSED BACK IN

15 THE DAY WHEN THERE WAS HORSE AND BUGGY, FOR ALL I

16 KNOW.  BUT BE THAT AS IT MAY, IT IS THE RULES THAT WE

17 OPERATE UNDER, BUT THEY ARE HERE.

18         AND SO THE QUESTION IN TERMS OF IS

19 THERE SOME IMPAIRMENT OF FAIRNESS OR SOME -- YEAH,

20 THAT'S THE BEST I CAN COME UP WITH.  THAT IF THE

21 COURT ORDERS THAT THE SEVEN-DAY NOTICE PERIOD BE

22 SUSPENDED AND THAT THERE BE A CONTINUATION OF THE

23 LEGISLATIVE PROCESS IMMEDIATELY FOLLOWING THIS

24 DETERMINATION OF THIS PARTICULAR EXTRAORDINARY

25 SESSION.

1   MS. MCKNIGHT:  I BELIEVE I HEAR -- I HEAR
2   WHAT YOUR HONOR IS SAYING.  I THINK IN ADDITION TO
3   TRAVEL IT WOULD JUST SIMPLY BE SCHEDULES, YOU KNOW,
4   ALLOWING MEMBERS TIME TO -- THIS IS A PART-TIME
5   LEGISLATURE WHERE MANY OF THESE MEMBERS HAVE
6   PROFESSIONS OUTSIDE OF THE LEGISLATURE AND MAKE PLANS
7   BASED ON EXTRAORDINARY SESSION NOTICES.  THERE MAY BE
8   OTHER ISSUES.  BUT I WANTED TO MAKE SURE YOU KNEW
9   THAT I DON'T THINK IT'S LIMITED TO TRAVEL.  WE CAN --
10   THE COURT:  LET'S HEAR FROM -- I'M ASSUMING
11   YOUR CLIENTS ARE INTIMATELY FAMILIAR WITH THE RULES
12   MORE SO THAN AM I, AND I'M SURE YOU'RE PROBABLY A
13   LITTLE MORE APPRISED OF THE NUANCES OF THE PROCEDURAL
14   RULES.
15           WHILE YOU'RE HERE, THOUGH, CAN YOU
16   ADDRESS THE INVITATION THAT THE PLAINTIFFS HAVE
17   PROVIDED, FRANKLY, TO ADDRESS THE DELAY AND YOUR
18   *PURCELL* ARGUMENTS?
19           MS. MCKNIGHT:  I SEE.  IS THAT -- ARE YOU
20   ASKING ABOUT WHETHER LEGISLATIVE INTERVENORS ARE
21   WILLING TO WAIVE THEIR *PURCELL* ARGUMENT?
22           THE COURT:  I'M ASKING IF YOU'RE GOING TO
23   ADVANCE THESE DELAYS AS ADDITIONAL *PURCELL* ARGUMENTS.
24   I'M NOT ASKING YOU TO WAIVE ANYTHING.  I'M ASKING YOU
25   IF YOU'RE GOING TO USE THIS IN CONTRAVENTION OF

1  FEDERAL RULE OF CIVIL PROCEDURE 16 TO ADVANCE *PURCELL*
2  ARGUMENTS THAT THERE ARE -- THAT THESE DELAYS HAVE
3  NOW BROUGHT US TOO CLOSE TO THE ELECTION.
4          **MS. MCKNIGHT:**  YOUR HONOR, TO BE CLEAR, OUR
5  POSITION HAS BEEN CONSISTENT THAT *PURCELL* ALREADY
6  APPLIES, IT'S ALREADY TOO LATE.  ONE OF THE REASONS
7  WHY IT IS ALREADY --
8          **THE COURT:**  THEN WHY ARE YOU ASKING FOR MORE
9  TIME?
10          **MS. MCKNIGHT:**  TO COMPLY WITH YOUR ORDER.
11  YOUR ORDER ALLOWS AND RECOGNIZES THE LEGISLATURE'S
12  RIGHT TO HAVE A FIRST BITE AT THE REMEDIAL APPLE.
13          **THE COURT:**  AND I'M TRYING TO GIVE THEM
14  THAT.  AND YESTERDAY THEY MET FOR 90 MINUTES.
15          **MS. MCKNIGHT:**  PARDON ME?
16          **THE COURT:**  YESTERDAY THEY MET FOR 90
17  MINUTES.
18          **MS. MCKNIGHT:**  YOU'RE RIGHT, YOUR HONOR.
19  THEY BEGAN THE LEGISLATIVE PROCESS.  AND I BELIEVE
20  YOU'LL HEAR TESTIMONY THAT THEY HAVE SUSPENDED RULES,
21  WHERE IT WAS POSSIBLE TO SUSPEND RULES, TO ADVANCE
22  BILLS.
23          **THE COURT:**  I'M AWARE, AND THAT SHOWS GOOD
24  FAITH.
25          **MS. MCKNIGHT:**  THANK YOU, YOUR HONOR.

1    THE *PURCELL* ARGUMENT IS THAT IT'S --

2  AND BEAR WITH ME, YOUR HONOR.  WE APPRECIATE,

3  RESPECTFULLY, THAT THIS DOES NOT -- THIS IS NOT

4  CONSISTENT WITH WHAT YOUR COURT HAS ORDERED.

5    THE *PURCELL* ARGUMENT APPLIES PRIMARILY

6  BECAUSE THERE IS NOT ENOUGH TIME TO ALLOW THIS PIECE

7  OF LITIGATION TO MAKE ITS WAY THROUGH THE ENTIRE

8  PROCESS OF LITIGATION.  THAT INCLUDES REMEDIAL PLAN;

9  IT INCLUDES ALLOWING THE LEGISLATURE TIME TO HAVE A

10  MEANINGFUL LEGISLATIVE DELIBERATIVE PROCESS TO

11  PROVIDE A REMEDY.  AND ALSO, *PURCELL* ALLOWS TIME FOR

12  AN APPEAL.

13    WE DO NOT BELIEVE THIS COURT HAS TIME

14  TO DO THAT.  THAT'S WHAT -- THAT IS OUR CONSISTENT

15  POSITION.  IF THIS COURT ALLOWS ADDITIONAL TIME NOW,

16  THE REASON WE'RE ASKING FOR IT IS WE'VE MADE IT CLEAR

17  THAT IT'S NOT ENOUGH TIME TO HAVE A MEANINGFUL

18  DELIBERATIVE PROCESS TO PREPARE A REMEDIAL PLAN,

19  PERIOD.  SIX DAYS IS NOT, AND I THINK YOU'LL HEAR

20  TESTIMONY FROM THE LEGISLATORS ON THAT POINT.  YOU'VE

21  ALREADY SEEN IT IN THEIR DECLARATION.

22    THESE REDISTRICTING BILLS, AS YOU KNOW,

23  ARE VERY COMPLEX.  THEY INVOLVE A NUMBER OF

24  PRECINCTS.  THE DETAIL IN THESE LAWS ARE

25  EXTRAORDINARY COMPARED TO OTHER BILLS.  IT TAKES TIME

1   TO MOVE THEM THROUGH THE PROCESS. THAT'S WHY WE'RE

2   MOVING FOR ADDITIONAL TIME. WE'VE MADE NOTE THAT

3   IT'S NOT ENOUGH TIME TO DO IT, AND THAT'S WHY WE MADE

4   THE MOTION BASED ON YOUR COURT -- YOUR INVITATION AND

5   A REFERENCE BY THE FIFTH CIRCUIT AS WELL: THAT IF

6   THERE WAS NOT ENOUGH TIME, WE SHOULD ASK FOR MORE.

7   **THE COURT:** OKAY. THANK YOU. I DON'T WANT

8   TO CUT YOU OFF. IS THERE ANYTHING ELSE THAT YOU WANT

9   TO ADD BEFORE YOU CALL YOUR WITNESSES?

10   **MS. MCKNIGHT:** THE ONLY OTHER THING I'D LIKE

11   TO ADD, YOUR HONOR, THERE WAS SOME -- THERE WAS A

12   POINT RAISED BY PLAINTIFFS ABOUT THE REMEDIAL PROCESS

13   AND THE TIMING OF IT. AND I DON'T KNOW IF YOUR HONOR

14   WOULD LIKE ME TO TALK ABOUT THAT NOW OR LATER. WE

15   BELIEVE THE COURT NEEDS MORE INFORMATION ABOUT WHAT

16   OTHER COURTS HAVE SAID THAT REMEDIAL PROCESS SHOULD

17   LOOK LIKE, INCLUDING GOVERNING LAW THAT REQUIRES THIS

18   COURT ALLOW TIME FOR THINGS LIKE DISCOVERY.

19   **THE COURT:** WELL, IN THE INTEREST OF GETTING

20   THESE NICE PEOPLE BACK TO THEIR JOBS -- AND FRANKLY,

21   I'M IN THE MIDDLE OF A TWO-WEEK TRIAL MYSELF. SO IN

22   ORDER TO GET THE COURT BACK ON TO ITS SCHEDULE, LET'S

23   STICK WITH THE MOTION AT HAND, WHICH IS THE MOTION

24   FOR EXTENSION OF TIME.

25   THE COURT IS PREPARED TO ADDRESS THE

REMEDIAL PHASE.  AND PERHAPS WE CAN DO THAT AT THE

CLOSE OF THE TESTIMONY IN A FACTUAL MATTER THAT'S AT

HAND AND DEAL WITH THAT.  THAT'S MORE OF A LEGAL

ISSUE THAT WE CAN CERTAINLY HAMMER OUT AS LAWYERS.

SO LET'S DO IT THAT WAY.

        **MS. MCKNIGHT:**  THANK YOU, YOUR HONOR.

        **THE COURT:**  YOU'RE WELCOME.

1      MS. MCKNIGHT:  WE WOULD LIKE TO CALL

2  PRESIDENT PATRICK PAGE CORTEZ TO THE STAND.

3      **(WHEREUPON, PRESIDENT PATRICK PAGE CORTEZ,**

4  **BEING DULY SWORN, TESTIFIED AS FOLLOWS.)**

5      **THE COURT:**  GOOD MORNING, SIR.

6      **THE COURTROOM DEPUTY:**  IF YOU WOULD, PLEASE

7  STATE YOUR NAME AND SPELL IT FOR THE RECORD.

8      **THE WITNESS:**  MY FULL NAME IS PATRICK PAGE

9  CORTEZ.  P-A-T-R-I-C-K P-A-G-E C-O-R-T-E-Z.

10      **THE COURT:**  GO AHEAD, MS. MCKNIGHT.

11      **MS. MCKNIGHT:**  THANK YOU.

12                    **DIRECT EXAMINATION**

13  BY MS. MCKNIGHT:

14    **Q**    MR. PRESIDENT, COULD YOU EXPLAIN YOUR ROLE

15  IN THE LEGISLATURE.

16    **A**    I SERVE SENATE DISTRICT 23 AS THE STATE

17  SENATOR.  I WAS ELECTED BY THE BODY OF THE SENATE TO

18  BE THE PRESIDING OFFICER.  I SERVE AS THE PRESIDENT.

19    **Q**    AND NOW WE ARE HERE TODAY TO DISCUSS A

20  MOTION FOR EXTENSION OF TIME TO ENACT A PLAN.

21        YOU SUBMITTED A DECLARATION RELATED TO THAT

22  MOTION.  IS THAT RIGHT?

23    **A**    THAT'S CORRECT.

24    **Q**    I DON'T WANT TO GO THROUGH AND REPEAT WHAT'S

25  IN THAT DECLARATION.  YOUR HONOR ALREADY HAS THAT IN

1   THE RECORD.  I WOULD LIKE TO ASK YOU TO EXPLAIN IN

2   GENERAL WHAT THAT DECLARATION PROVIDES THE COURT.

3       A    SO THE DECLARATION BASICALLY LAYS OUT THE

4   PROCESS -- THE LEGISLATIVE PROCESS THAT IS REQUIRED

5   BY THE CONSTITUTION; AND THAT IS THAT ALL BILLS

6   SUBMITTED FOR DISCUSSION SHALL GET THREE READINGS IN

7   EACH CHAMBER AND BE -- REQUIRE A HEARING IN A

8   COMMITTEE ROOM IN EACH CHAMBER.  THOSE -- SOME OF

9   THAT PROCESS CAN BE SUSPENDED BY RULE.

10          BUT THE PROCESS IN GENERAL IS ABOUT A

11  TEN-DAY PROCESS WITHOUT SUSPENSIONS OF RULES.

12      Q    AND I KNOW --

13      A    MINIMUM.

14      Q    PARDON ME?

15      A    MINIMUM, WITHOUT A CONFERENCE.  IT COULD BE

16  LONGER.

17      Q    NOW, I UNDERSTOOD YOU TO JUST DESCRIBE THE

18  MINIMUM OF THE PROCESS IN GENERAL.  COULD I ASK YOU

19  SPECIFICALLY ABOUT PASSING A REDISTRICTING PLAN IN

20  THE LEGISLATURE.

21          WHAT WOULD BE A REASONABLE AMOUNT OF TIME TO

22  PASS A REDISTRICTING PLAN IN THE LEGISLATURE?

23      A    THERE ARE SOME -- ALMOST 4,000 PRECINCTS.

24  AND EACH REDISTRICTING BILL IS WRITTEN WITH EACH OF

25  THOSE PRECINCTS BEING REQUIRED TO BE PLACED INTO A

1    CONGRESSIONAL DISTRICT.  THE LAW REQUIRES THAT EACH

2    CONGRESSIONAL DISTRICT BE AS CLOSE TO EQUAL IN

3    POPULATION WITH THE OTHERS.

4           ANY BILL THAT IS FILED AND ANY BILL THAT IS

5    AMENDED IS SUBJECT TO MUCH LOCAL INPUT AS WELL AS

6    MEMBER INPUT OF THE LEGISLATURE.  AMENDMENTS CAN BE

7    OFFERED IN COMMITTEE -- AND OFTEN ARE -- TO CHANGE

8    THE MAKEUP OF DISTRICTS.  BECAUSE OF CONCERNS FROM

9    THEIR DISTRICT BACK HOME, THEIR LOCALS, THEIR

10   CONSTITUENTS, WE HAVE MADE IT OUR PROCESS TO BE

11   TRANSPARENT.  AND WHEN A CHANGE OCCURS, THERE IS A

12   RIPPLE EFFECT AMONGST ALL PRECINCTS, AND SO WE ALLOW

13   THE BILLS IN COMMITTEE TO LIE OVER IF AN AMENDMENT

14   HAS BEEN ADDED SUCH THAT THE PUBLIC COULD UNDERSTAND

15   AND THE MEMBERS COULD UNDERSTAND WHAT THE CHANGE

16   EFFECTIVELY DID TO THE BILL.

17      Q    IN YOUR VIEW, ARE REDISTRICTING BILLS SIMPLE

18   BILLS TO GET THROUGH THE LEGISLATURE?

19      A    PROBABLY THE MOST DIFFICULT BILL OF THE

20   TENURE -- AS A TENURED LEGISLATOR I'VE BEEN -- 15

21   YEARS IN THE LEGISLATURE, I'VE BEEN THROUGH TWO

22   REDISTRICTING SESSIONS.  AND THEY ARE THE MOST

23   DIFFICULT BILLS, INCLUDING THE BUDGET BILLS.  THEY'RE

24   MORE DIFFICULT BECAUSE THEY'RE MORE EMOTIONAL,

25   THEY'RE VERY PERSONAL, AND YOUR DISTRICTS WILL FIGHT

1   VERY HARD -- YOUR CONSTITUENTS WILL FIGHT VERY HARD

2   TO HAVE YOU COMPLY WITH WHAT THEY WANT.  AND SO IT'S

3   VERY PAROCHIAL.

4       Q    NOW, YOU SUBMITTED THIS DECLARATION ON

5   MONDAY.  SINCE THAT DATE, HAS THE LEGISLATURE GONE

6   INTO EXTRAORDINARY SESSION?

7       A    YES.

8       Q    AND HAS THE LEGISLATURE MADE ANY EFFORT --

9   AND LET ME FOCUS SPECIFICALLY ON THE SENATE -- MADE

10  ANY EFFORT TO EXPEDITE ITS PROCEEDINGS?

11      A    YES.

12      Q    IN WHAT WAY?

13      A    THE FIRST READING REQUIRED BY THE

14  CONSTITUTION IS AN INTRODUCTORY READING.  THE BILL

15  THEN LIES OVER FOR THE SECOND DAY TO GET A SECOND

16  READING AND A REFERRAL TO COMMITTEE.

17          QUITE OFTEN WHAT WE DO IS WE SUSPEND THE

18  RULE TO ALLOW THE FIRST AND SECOND READINGS TO BE

19  HELD ON THE FIRST DAY AND THE REFERRAL TO COMMITTEE

20  TO OCCUR ON THE FIRST DAY.  YESTERDAY WE DID DO THAT.

21      Q    NOW, AS YOU SIT HERE TODAY, CAN YOU SPEAK

22  FOR ANY OTHER MEMBERS OF THE LEGISLATURE?

23      A    NO.

24      Q    AS YOU SIT HERE TODAY, CAN YOU PROMISE THE

25  COURT A CERTAIN OUTCOME OF THIS DELIBERATIVE PROCESS?

1      A    NO.  NO, NOT ON ANY BILL, EVER.

2      Q    AND DO YOU SIT HERE TODAY TO SPEAK FOR THE

3   SECRETARY OF STATE?

4      A    NO.

5           **MS. MCKNIGHT:**  THANK YOU, YOUR HONOR.  THOSE

6   ARE THE ONLY QUESTIONS I HAVE.

7           **THE COURT:**  DO THE PLAINTIFFS HAVE ANY

8   CROSS?

9           **MR. ADCOCK:**  THANK YOU, JUDGE.

10                     **CROSS-EXAMINATION**

11  BY MR. ADCOCK:

12     Q    HOW WOULD YOU LIKE ME TO REFER TO YOU?  AS

13  MR. PRESIDENT?

14     A    YOU CAN CALL ME PAGE.

15     Q    PAGE.  OKAY, PAGE.

16          **THE COURT:**  MR. ADCOCK, WHY DON'T YOU

17  INTRODUCE YOURSELF.

18          **MR. ADCOCK:**  JOHN ADCOCK ON BEHALF OF THE

19  ROBINSON PLAINTIFFS.  THANK YOU, JUDGE.

20          **THE COURT:**  THANK YOU, SIR.

21  BY MR. ADCOCK:

22     Q    NOW, YOU MENTIONED SUSPENDING THE RULES TO

23  SEND A BILL TO COMMITTEE.  CORRECT?

24     A    YES.

25     Q    AND THAT'S FOR THE COMMITTEE TO CONSIDER A

1   REDISTRICTING BILL IN THIS CASE.  CORRECT?

2       A    TO CONSIDER ANY BILLS REFERRED TO THAT

3   COMMITTEE.

4       Q    RIGHT.  BUT IN THIS CASE THESE ARE

5   REDISTRICTING BILLS?

6       A    THIS IS -- THE CALL IS LIMITED TO THE

7   REDISTRICTING.

8       Q    RIGHT.  SO THEY'RE ONLY GOING TO BE

9   CONSIDERING REDISTRICTING BILLS, THIS SPECIAL

10  SESSION?

11      A    CORRECT.

12      Q    NOW, YOU -- NOW, COMMITTEES CAN HOLD

13  HEARINGS BEFORE THE SESSION.  CORRECT?

14      A    THEY CAN HOLD INTERIM MEETINGS.  BUT NONE OF

15  THE INTERIM MEETINGS HAVE THE ABILITY TO DO ANYTHING

16  WITH REGARDS TO TAKING ACTION.

17      Q    BUT COMMITTEES CAN HOLD HEARINGS OUTSIDE THE

18  SESSION.  CORRECT?

19      A    TRADITIONALLY COMMITTEE HEARINGS HAVE BEEN

20  HELD IN THE INTERIM, WHICH WOULD BE OUTSIDE OF

21  SESSION, YES.

22      Q    RIGHT.  AND THEY CAN DO THAT ANY TIME THEY

23  WANT.  CORRECT?

24      A    WITH THE REQUEST OF THE PRESIDING OFFICER

25  AND APPROVAL OF THE PRESIDING OFFICER.  THE CHAIRMAN

1  OF THE COMMITTEE CAN REQUEST TO HAVE AN INTERIM

2  MEETING, BECAUSE THAT DOES REQUIRE PER DIEMS AND

3  TRAVEL EXPENSES FOR THE -- I'M GOING TO SPEAK ON

4  BEHALF OF THE SENATE -- FOR THE SENATE TO AFFORD.

5        AND SO THE TOPIC OF THE INTERIM MEETING

6  WOULD BE SUBMITTED TO THE PRESIDING OFFICER FOR

7  APPROVAL.

8     Q    AND THEY CAN TAKE EVIDENCE, HEAR WITNESSES

9  AT THOSE HEARINGS OUTSIDE OF SESSION.  CORRECT?

10    A    THEY CAN DO WHATEVER THE PRESIDING OFFICER

11 ALLOWS THEM TO DO UNDER THE REQUEST.

12    Q    AND THIS MOTION WAS FILED ON JUNE 14.

13 CORRECT?

14    A    THIS COURT ORDER?  THIS --

15    Q    NO.  NO.  THE MOTION YOU FILED THAT WE'RE

16 HERE ON WAS ON -- TWO DAYS AGO FILED.  CORRECT?

17    A    THANK YOU FOR CLARIFYING.  YES.

18    Q    AND THE LAST SESSION ENDED ON JUNE 6.

19 CORRECT?

20    A    YES.

21    Q    OKAY.  BETWEEN JUNE 6 AND JUNE 14, NO

22 COMMITTEES HELD A HEARING ON THESE CONGRESSIONAL

23 MAPS.  CORRECT?

24    A    NOT THAT I'M AWARE OF, NO.

25    Q    BETWEEN JUNE 6 AND JUNE 14, NO COMMITTEES

1  SCHEDULED A HEARING ON THESE CONGRESSIONAL MAPS.

2  CORRECT?

3      A    THAT'S CORRECT.

4      Q    NOW, WHETHER IT'S A REGULAR SESSION OR A

5  SPECIAL SESSION, YOU NORMALLY ALLOW MEMBERS TO

6  PREFILE BILLS.  CORRECT?

7      A    CORRECT.

8      Q    AND THAT CAN BE DONE FOR A SPECIAL SESSION

9  SEVERAL DAYS OR A WEEK IN ADVANCE.  CORRECT?

10     A    WELL, THE SPECIAL SESSION, THE CONSTITUTION

11 REQUIRES THAT A SEVEN-DAY PRIOR NOTICE BE GIVEN TO

12 THE CALL OF THE LEGISLATURE.  THAT'S -- SO NO ONE CAN

13 FILE A BILL UNTIL SUCH TIME THAT THE CALL HAS BEEN

14 GIVEN.  OTHERWISE THEY WOULDN'T KNOW WHAT'S WITHIN

15 THE CALL AND WHAT CAN BE LEGISLATED TO.

16          SO UPON THE CALL OF THE SESSION, THE ANSWER

17 WOULD BE YES.  AT THAT POINT THE PRESIDING OFFICERS

18 GENERALLY DETERMINE WHETHER PREFILING WILL BE ALLOWED

19 OR NOT.

20     Q    RIGHT.  AND SO IT CAN BE ALLOWED RIGHT AFTER

21 THE CALL IS MADE.  CORRECT?

22     A    CORRECT.

23     Q    AND THE CALL FOR THIS SPECIAL SESSION WAS

24 DONE SEVEN DAYS PRIOR TO THE SESSION BEGINNING.

25 CORRECT?

1    **A**    CORRECT.

2    **Q**    AND SO THE BILLS WEREN'T ALLOWED TO BE

3    PREFILED UNTIL THE DAY BEFORE THIS SESSION BEGAN.

4    CORRECT?

5    **A**    I BELIEVE THAT'S CORRECT.

6    **Q**    SO THAT COULD HAVE BEEN --

7    **A**    IN THE SENATE.  I CAN'T SPEAK FOR THE HOUSE.

8    **Q**    SURE.  BUT THAT COULD HAVE BEEN DONE A WEEK

9    PRIOR.  CORRECT?

10    **A**    THERE WAS NO REQUEST MADE OF ME PRIOR TO

11    THAT.  THE FIRST REQUEST WAS MADE THE DAY BEFORE BY

12    THE SECRETARY OF THE SENATE:  *WOULD YOU ALLOW FOR*

13    *PREFILING?*  AND I SAID, *YES*.

14    **Q**    SO NO ONE ASKED YOU TO DO -- TO PREFILE ANY

15    BILLS BEFORE --

16    **A**    NO, SIR.

17    **Q**    -- THE DAY BEFORE THE SESSION STARTED --

18    **A**    NO, SIR.

19    **Q**    -- JUNE 14?

20        NO ONE WAS CALLING SENATE STAFF OR YOUR

21    OFFICE ASKING TO PREFILE BILLS.  IS THAT CORRECT?

22    **A**    I CAN'T SPEAK TO WHAT OTHER MEMBERS WERE

23    DOING.  EACH MEMBER IS AN INDEPENDENT ELECTED

24    OFFICIAL, AND THE STAFF IS -- THEY HAVE ACCESS TO THE

25    STAFF.  EVERY MEMBER HAS ACCESS TO THE STAFF.  AND

1   THAT'S LEGISLATIVE PRIVILEGE WHAT THEY DISCUSS WITH

2   THE STAFF, SO I WOULDN'T KNOW WHO WAS CALLING OR NOT

3   CALLING, OTHER THAN ME.

4       Q    SO YOU DON'T KNOW IF LEGISLATORS WERE

5   CONTACTING YOUR STAFF TO -- LET ME FINISH --

6   CONTACTING YOUR STAFF INQUIRING ABOUT THE ABILITY TO

7   PREFILE BILLS BEFORE JUNE 14?  THAT'S YOUR TESTIMONY?

8       A    I WOULD NOT BE AWARE OF THAT, NO.

9       Q    EVEN IF THEY WERE CALLING YOUR STAFF?

10      A    WHEN YOU SAY *YOUR STAFF,* YOU'RE ASSUMING

11  THAT THE STAFF ALL WORKS FOR ME.  THEY WORK FOR THE

12  MEMBERS.  THEY DON'T WORK JUST FOR ME.  SO THE SENATE

13  STAFF WOULD BE PROBABLY A BETTER TERM.

14           BUT QUITE FRANKLY, IT HAS BEEN SOMEWHAT THE

15  PRACTICE THAT SOMETIMES HOUSE MEMBERS CALL SENATE

16  STAFF AND SOMETIMES SENATE MEMBERS CALL HOUSE STAFF.

17  BUT IN THIS CONTEXT -- I BELIEVE WHAT YOU'RE ASKING

18  IS WOULD I BE AWARE OF A SENATOR FROM A DIFFERENT

19  DISTRICT CONTACTING A STAFF ATTORNEY ABOUT A

20  REDISTRICTING BILL PRIOR TO THIS SESSION.  I WOULD

21  NEVER BE AWARE OF THAT.  NOR WOULD THEY BE AWARE IF I

22  HAD CONTACTED THE STAFF IN A REQUEST -- WHAT THEY

23  CALL A BILL REQUEST -- TO GET A BILL REQUEST PUT IN

24  PLACE.

25      Q    YOU AGREE THAT ASKING TO PREFILE BILLS FROM

1  ANOTHER MEMBER IS AN IMPORTANT REQUEST.  CORRECT?

2      **A**    DO I THINK THAT'S IMPORTANT?

3      **Q**    YES.

4      **A**    SURE.

5      **Q**    OKAY.  AND WHEN PEOPLE CAN PREFILE BILLS

6  BEFORE THE LEGISLATIVE SESSION STARTS, THAT ALLOWS

7  FOR MEMBERS AND CONSTITUENTS TO COME AND TALK TO THAT

8  MEMBER ABOUT THE BILL THEY PREFILE.  CORRECT?

9      **A**    I GUESS IT WOULD BE, YEAH.

10     **Q**    TO RAISE CONCERNS ABOUT THAT BILL AND ALLOW

11  THEM TO OFFER AMENDMENTS ABOUT THAT BILL BEFORE THE

12  SESSION STARTS.  CORRECT?

13          **MS. MCKNIGHT:**  OBJECTION, YOUR HONOR.  HE'S

14  PUTTING WORDS IN HIS MOUTH.  THE PRESIDENT IS ABLE TO

15  EXPLAIN THE VALUE OF THESE BILLS.  WE'D LIKE TO GIVE

16  HIM A CHANCE TO RESPOND, BUT I THINK IT'S

17  OBJECTIONABLE TO PUT WORDS IN HIS MOUTH.

18          **THE COURT:**  OKAY.  MAKE AN OBJECTION UNDER

19  THE RULES OF EVIDENCE AND STAND WHEN YOU ADDRESS THE

20  COURT AND DON'T GIVE SPEAKING OBJECTIONS.

21          YOUR OBJECTION SHOULD SAY WHATEVER IT

22  SAYS, BUT IT SHOULD BE A RULE-OF-EVIDENCE OBJECTION.

23          MR. ADCOCK, DO YOU WISH TO RESPOND TO

24  THE OBJECTION?

25          **MR. ADCOCK:**  I'LL MOVE ON, JUDGE.  THANK

1   YOU.

2   BY MR. ADCOCK:

3       Q    NOW, YESTERDAY THERE WERE NO BILLS ENTERED

4   ON THE SENATE SIDE OF THE LEGISLATURE.  CORRECT?

5       A    THERE WERE TWO BILLS.

6       Q    THERE WERE TWO BILLS ENTERED ON THE SENATE

7   SIDE.  AND WHEN WILL THEY BE CONSIDERED IN COMMITTEE?

8       A    MY UNDERSTANDING IS THEY'RE BEING CONSIDERED

9   THIS MORNING.

10      Q    AND THEY PROPOSE CERTAIN MAPS FOR

11  CONGRESSIONAL DISTRICTS.  CORRECT?

12      A    CORRECT.

13      Q    OKAY.  AND IT'S POSSIBLE FOR BILLS TO BE

14  SUBMITTED IN EACH HOUSE SIMULTANEOUSLY.  CORRECT?

15      A    CORRECT.

16      Q    OKAY.  AND FOR EACH HOUSE TO CONSIDER THEM

17  SIMULTANEOUSLY.  CORRECT?

18      A    EACH CHAMBER IS A SEPARATE ENTITY.  I LIKE

19  TO SAY A DIFFERENT CORPORATION.  AND SO THE SENATE

20  BUSINESS IS TAKEN UP IN THE SENATE.  AND ONLY WHEN

21  THEY CONCLUDE THE BUSINESS DO THEY SEND IT OVER TO

22  THE HOUSE FOR THE HOUSE TO TAKE UP THE SENATE BILLS;

23  AND CONVERSELY, ONLY WHEN THE HOUSE FORWARDS A BILL

24  TO THE SENATE DOES THE SENATE TAKE UP A HOUSE BILL.

25      Q    BUT BOTH HOUSES CAN CONSIDER ESSENTIALLY THE

1    SAME IDENTICAL BILL AT THE SAME TIME?

2        A    OH, SURE.  YEAH.

3        Q    AND THAT'S NOT BEING DONE IN THIS CASE?

4        A    WELL, I CAN'T SPEAK TO THAT.

5        Q    YOU'RE THE PRESIDENT OF THE SENATE, SIR.

6        A    I APPRECIATE THAT.  I'M AWARE OF THAT.

7        Q    YOU CAN'T SPEAK TO WHAT'S BEEN PENDING IN

8    EACH HOUSE?

9        A    SO --

10           **MS. MCKNIGHT:**  OBJECTION, YOUR HONOR.

11   PARDON ME, MR. PRESIDENT.

12               HE'S TALKING -- MR. ADCOCK IS SPEAKING

13   OVER THE PRESIDENT.  I'D ASK THAT HE'S ALLOWED TO

14   FINISH HIS ANSWER.

15           **THE COURT:**  I'M GOING TO GIVE HIM SOME

16   LATITUDE.  HE HAS HIM ON CROSS.  JUST PAUSE AND LET

17   HIM ANSWER.

18               AND, SIR, YOU DO THE SAME, AND WE'LL --

19   THAT WAY WE'LL ALL BE ABLE TO HEAR EACH OTHER.

20           **MR. ADCOCK:**  I'M SORRY, JUDGE.

21   BY THE WITNESS:

22      A    YES, SIR.  THANK YOU FOR THE QUESTION.  I

23   WOULD LIKE TO ANSWER IT.

24               EACH OF THESE BILLS THAT HAVE BEEN FILED --

25   I DON'T KNOW THE NUMBER OF PAGES, BUT I'M GOING TO

1    SUGGEST THEY'RE 50 OR SO PAGES -- PRIMARILY ARE

2    FILLED WITH A BUNCH OF PRECINCTS.  AND THE PRECINCTS

3    ARE DEDICATED TO PARTICULAR CONGRESSIONAL DISTRICTS.

4    THEY DO HAVE MAPS IN THEM AS ILLUSTRATION OF WHAT THE

5    INTENDED PRECINCTS WOULD APPLY TO ON A MAP.  THEY

6    ALSO HAVE REGIONAL MAPS, BECAUSE IN A REGULAR LEGAL

7    PAPER YOU CAN'T DRILL DOWN TO THE CITY PRECINCT LEVEL

8    ON A MAP.  GENERALLY IT'S MUCH BETTER TO DO IT ON A

9    BIG SCREEN WHERE YOU CAN ACTUALLY BACK OUT OF IT OR,

10   I SHOULD SAY, MAGNIFY IT SUCH THAT YOU CAN SEE IF A

11   PRECINCT ON THE NORTH SIDE OF THE STREET IS INCLUDED

12   IN THE DISTRICT VERSUS THE ONE ON THE SOUTH SIDE.

13   YOU WOULD NOT KNOW THAT FROM JUST THE REGULAR LEGAL

14   SHEET OF PAPER THAT IT'S ON.

15           SO TO ANSWER YOUR QUESTION, I HAVE NOT READ

16   THE BILLS IN THE HOUSE BECAUSE THEY'RE OF NO

17   IMPORTANCE TO ME AT THIS POINT BECAUSE I SERVE IN THE

18   SENATE.  I WOULD PROBABLY THINK THAT IF I'M ON --

19   THIS IS A PERSONAL NOTE, YOUR HONOR, IF I COULD.  AS

20   A LEGISLATOR, I GENERALLY BRIEFED MOST OF THE BILLS,

21   BUT I READ THE BILLS THAT WERE COMING BEFORE THE

22   COMMITTEES I SERVED ON BECAUSE THOSE ARE THE ONES I

23   NEEDED TO HAVE THE MOST INTIMATE KNOWLEDGE OF BECAUSE

24   THOSE ARE THE ONES I WAS GOING TO BE ASKED TO TAKE

25   ACTION ON FIRST.

1        IF I WASN'T ON THE PARTICULAR COMMITTEE, I

2   WOULD WAIT TILL THE COMMITTEE DID ITS JOB TO SEE WHAT

3   THE FINAL PRODUCT WOULD BE OUT OF COMMITTEE AFTER

4   AMENDMENTS WERE ADOPTED, AND IT WOULD -- COULD HAVE

5   CHANGED DRAMATICALLY BEFORE IT GETS TO THE FULL

6   CHAMBER FOR A VOTE.

7        SO I WANT TO ANSWER YOUR QUESTION, AND

8   I'M -- I DON'T THINK I SHOULD -- I COULD KNOW EXACTLY

9   WHAT'S GOING ON IN THE HOUSE WHEN I WAS PRESIDING

10  OVER THE SENATE YESTERDAY AND TRYING TO GET TWO BILLS

11  IN THE SENATE REFERRED TO THE SENATE & GOVERNMENTAL

12  AFFAIRS COMMITTEE.  AND I HOPE THAT ANSWERS YOUR

13  QUESTION.

14    Q    NOW, YOU SAID YOU NEED TO HEAR FROM -- THESE

15  TWO BILLS YOU SAID IN THE SENATE, HAVE THEY BEEN

16  READ?

17    A    WELL, THE READING IS THE READING OF THE

18  TITLE.

19    Q    HAS IT BEEN READ?

20    A    IT WAS READ ON ITS FIRST AND SECOND READING

21  YESTERDAY AND REFERRED TO THE SENATE & GOVERNMENTAL

22  AFFAIRS COMMITTEE FOR SCHEDULING.

23    Q    NOW, YOU WENT THROUGH IN YOUR AFFIDAVIT,

24  YOUR DECLARATION TO THIS COURT, THAT IT'S IMPORTANT

25  FOR LEGISLATORS TO HEAR FROM CONSTITUENTS ABOUT

1   WHAT'S IN THESE REDISTRICTING BILLS AND GET INPUT

2   FROM CONSTITUENTS.  CORRECT?

3       A    THAT'S CORRECT.

4       Q    BUT YOU HAD THREE MONTHS OF ROADSHOWS TO

5   HEAR FROM LOUISIANA CITIZENS ABOUT WHAT KIND OF

6   CONGRESSIONAL MAP THEY WOULD LIKE TO HAVE.  CORRECT?

7       A    THAT'S CORRECT.

8       Q    AND THAT WAS ALL OVER THE STATE?

9       A    THAT'S CORRECT.  BUT JUST TO BE CLEAR, THAT

10  WAS THE ROADSHOW THAT WAS PUT ON BY BOTH THE HOUSE &

11  GOVERNMENTAL AFFAIRS AND THE SENATE & GOVERNMENTAL

12  AFFAIRS COMMITTEES JOINTLY.  MEMBERS OF EACH REGIONAL

13  DELEGATION DID SHOW UP WHILE THEY WERE IN THAT AREA

14  OF THE STATE.

15       SO I WOULD NOT CATEGORIZE IT AS EVERY MEMBER

16  OF THE LEGISLATURE WAS AT EVERY ROADSHOW MEETING.

17  AND THERE WERE DIFFERENT COMMENTS MADE RELATIVE TO

18  THE DIFFERENT REGIONS AT THE DIFFERENT SHOWS.

19       Q    RIGHT.  BUT THEY WERE OPEN TO THE PUBLIC?

20       A    OH, ABSOLUTELY.

21       Q    AND YOU COULD ACCESS WHAT WAS SAID AND --

22       A    ABSOLUTELY.

23       Q    -- TESTIFIED TO AT THOSE HEARINGS?

24       A    YEAH.  THERE WAS PUBLIC TESTIMONY, YES.

25       Q    IF A MEMBER WANTED TO, ABOUT THE MAPS THAT

1   ARE UNDER CONSIDERATION?

2       A    COULD YOU RESTATE YOUR QUESTION?

3       Q    YOU COULD REFERENCE THE TESTIMONY GIVEN AT

4   THESE HEARINGS ABOUT THE MAPS UNDER CONSIDERATION IF

5   ONE WANTED TO.  CORRECT?

6       A    I DON'T THINK SO, BECAUSE THE MAPS -- AT

7   LEAST IN THE SENATE, ONE OF THE MAPS WAS A PREVIOUSLY

8   FILED MAP, ONE OF THEM IS NOT.  SO THERE WOULD BE NO

9   WAY TO KNOW IF THE -- WITHIN THE CONTEXT OF THE

10  STATEMENT MADE AT A REGIONAL MEETING WHERE NO MAPS

11  WERE BEING PRESENTED, IF THAT STATEMENT WOULD HOLD

12  TRUE AFTER THIS MAP HAS BEEN PRESENTED.

13      Q    AT THESE MEETINGS PEOPLE WERE TALKING ABOUT

14  WHAT KIND OF CONGRESSIONAL MAP THEY WANT.  CORRECT?

15      A    GENERALITIES.

16      Q    YES.  AND SPECIFICALLY PEOPLE WERE SAYING

17  THAT THEY WANT A CONGRESSIONAL MAP WITH TWO DISTRICTS

18  THAT COULD ELECT AN AFRICAN-AMERICAN REPRESENTATIVE

19  TO CONGRESS.  CORRECT?

20          MS. MCKNIGHT:  YOUR HONOR, OBJECTION TO THE

21  EXTENT IT MISSTATES THE RECORD.

22          MR. ADCOCK:  WELL, HE CAN TELL ME WHETHER

23  THAT'S HIS UNDERSTANDING.

24          THE COURT:  OVERRULED.

25  BY THE WITNESS:

1    **A**    YEAH, I THINK THERE WERE MANY STATEMENTS

2    MADE ABOUT ALL KINDS OF DIFFERENT DISTRICTS.  I WOULD

3    SAY THAT YOU'RE ASKING ABOUT ONE PARTICULAR STATEMENT

4    THAT WAS MADE.  I'M SURE IT WAS MADE, BUT THERE WERE

5    OTHER STATEMENTS MADE RELATIVE TO OTHER DISTRICTS.

6    SO I DON'T THINK THAT IT'S A "ONE SIZE FITS ALL" THAT

7    THAT'S THE ONLY STATEMENT THAT WAS EVER MADE AT A

8    REGIONAL MEETING.

9    **Q**    AND DURING THE FIRST EXTRAORDINARY SESSION

10   THIS YEAR WHERE YOU DEALT WITH REDISTRICTING, THERE

11   WERE COMMITTEE HEARINGS DURING THAT SESSION, TOO?

12   **A**    PLENTY, YES.  WE REDISTRICTED A MULTITUDE OF

13   MAPS, EVERYTHING FROM THE LOUISIANA STATE SENATE, THE

14   HOUSE OF REPRESENTATIVES, THE BOARD OF ELEMENTARY AND

15   SECONDARY EDUCATION, THE PUBLIC SERVICE COMMISSION.

16   SO WE DEALT WITH MULTIPLE MAPS, WITH MULTIPLE

17   PRECINCTS BEING MOVED AROUND, AND MULTIPLE AMENDMENTS

18   ON BOTH THE HOUSE AND THE SENATE SIDE.

19   **Q**    AND THERE WAS TESTIMONY ABOUT THE BILL THAT

20   WAS PASSED INTO LAW AT THAT SESSION, TOO.  CORRECT?

21   **A**    YOU'RE TALKING ABOUT THE CONGRESSIONAL MAP?

22   **Q**    YES, SIR.

23   **A**    THERE WAS PLENTY OF TESTIMONY ON ALL THE

24   MAPS IN COMMITTEE.

25   **Q**    INCLUDING THAT MAP THAT WAS PASSED?

1    **A**   THAT'S CORRECT.

2    **Q**   AND SO THIS LEGISLATURE DURING THIS SPECIAL

3    SESSION COULD REFERENCE THE ROADSHOWS AND THE

4    COMMITTEE HEARINGS FROM THAT PREVIOUS SESSION.

5    CORRECT?

6    **A**   I GUESS SOME COULD CHOOSE TO.  I CAN'T SPEAK

7    TO WHAT LEGISLATORS WOULD DO.

8    **Q**   I'M SAYING THEY COULD DO THAT IF THEY WANTED

9    TO.

10   **A**   IS IT POSSIBLE?  YES, IT'S POSSIBLE.  IS IT

11   LIKELY?  I WOULD SAY, IN MY OPINION, YOUR HONOR, IT'S

12   NOT LIKELY BECAUSE EVERY MAP IS A NEW BILL AND YOU

13   WOULDN'T REFERENCE AN OLD BILL WHEN YOU'RE SPEAKING

14   ABOUT A NEW BILL.

15   **Q**   IN FACT, THE LEGISLATURE OFTEN REFERS TO

16   TESTIMONY OR EVIDENCE PRESENTED AT COMMITTEES FROM

17   PREVIOUS SESSIONS.  CORRECT?

18   **A**   I'M SORRY?

19       **MS. MCKNIGHT:**  OBJECT.  PARDON ME.  GO

20   AHEAD.

21   **A**   I WANTED TO SEE IF YOU COULD RESTATE IT.  I

22   DIDN'T QUITE HEAR WHAT --

23   **Q**   SURE.  IN FACT, THE LEGISLATURE OFTEN REFERS

24   TO TESTIMONY OR EVIDENCE PRESENTED AT COMMITTEES FROM

25   PREVIOUS SESSIONS?

1    **A**    I DON'T KNOW THAT *OFTEN* WOULD BE A GOOD

2    CHARACTERIZATION.  BUT I WOULD SAY THAT CERTAINLY IN

3    COMMITTEES YOU REFER TO BILLS THAT WERE PASSED

4    DECADES AGO; YOU REFER TO DEBATES THAT WERE HEARD.

5    SOMETIMES MEMBERS WILL SAY *I WASN'T HERE WHEN THAT*

6    *DEBATE WAS HAD.  I'M NEW NEWLY ELECTED.*  I'M SURE YOU

7    CAN REFERENCE THINGS IN COMMITTEE.  WE PROBABLY HAVE

8    DONE THAT.

9    **Q**    NOW, BEAR WITH ME ON THIS.  SO THE CURRENT

10   SESSION RUNS TO JUNE 20.  YOU'RE AWARE YOUR MOTION

11   REQUESTS THAT THIS COURT EXTEND THE TIMELINE FOR YOU

12   TO PASS A BILL FROM JUNE 20 TO JUNE 30.  CORRECT?

13   **A**    THAT'S CORRECT.

14   **Q**    OKAY.  NOW, THAT WOULD MEAN HAVING A SPECIAL

15   SESSION FROM JUNE 21 TO JUNE 30.  CORRECT?

16   **A**    I'M NOT SURE THAT THAT WOULD BE POSSIBLE.

17   **Q**    I'M NOT ASKING IF IT'S POSSIBLE.  I'M JUST

18   SAYING THAT WOULD MEAN YOU WOULD HAVE TO EXTEND THE

19   SESSION TO JUNE 30 OR CALL AN ADDITIONAL SESSION.

20   THAT'S ALL I'M ASKING.

21        **MS. MCKNIGHT:**  OBJECTION; IT'S A COMPLEX

22   QUESTION.  I'D ASK HIM TO BREAK IT UP.

23        **MR. ADCOCK:**  I THINK HE CAN HANDLE HIMSELF,

24   JUDGE.  IT'S A PRETTY SIMPLE QUESTION.

25        **THE COURT:**  OVERRULED.

1  BY THE WITNESS:

2     A    I'M GOING TO START WITH A LITTLE BIT OF

3  BACKGROUND.  THE CONSTITUTION REQUIRES A SEVEN-DAY

4  PRIOR NOTICE TO THE CALL OF A SESSION.  THE

5  CONSTITUTION ALSO SAYS THAT YOU CANNOT AMEND THE

6  TERMINUS DATE, THE ENDING DATE OF A SESSION.  THE

7  CONSTITUTION ALSO SAYS THAT YOU CANNOT CALL AN

8  EXTRAORDINARY SESSION ON TOP OF AN EXTRAORDINARY

9  SESSION.

10        SO THE ONLY SOLUTION POSSIBLE IS THE

11  GOVERNOR CANNOT CALL ANOTHER SPECIAL SESSION BECAUSE

12  HIS CALL IS IN PLACE.  THE LEGISLATURE COULD CALL

13  THEMSELVES INTO A SPECIAL SESSION AT A FUTURE DATE

14  WITH A SEVEN-DAY PRIOR NOTICE.  SO TODAY IS THE 16TH.

15  AND I DON'T KNOW -- I DON'T WANT TO BE MISQUOTED, BUT

16  IF I COUNTED SEVEN DAYS FROM TODAY, IT WOULD BE THE

17  23RD.

18        SO TO SUGGEST THAT WE COULD GO INTO SESSION

19  ON THE 21ST, WHICH WAS YOUR QUESTION, WOULD BE AN

20  ERRONEOUS QUESTION.  IT WOULD -- WE CANNOT UNDER THE

21  CONSTITUTION, SO LONG AS WE FOLLOW THE CONSTITUTION.

22  I DON'T KNOW ANYBODY IN THE LEGISLATURE WHO SWORE TO

23  UPHOLD THE CONSTITUTION THAT WOULD BE WILLING TO

24  VIOLATE IT.

25        SO WITH THAT, I'M GOING TO TELL YOU THAT IN

1  MY -- AND I DON'T WANT TO BE QUOTED AS THE PARTICULAR

2  DATE.  BUT IT WOULD BE A SEVEN-DAY -- FROM THE

3  TIMELINE OF GETTING 20 SENATORS AND 53 HOUSE MEMBERS

4  TO AGREE TO A CALL, IT WOULD BE SEVEN DAYS PRIOR,

5  WHICH I THINK IS THE 23RD OF JUNE.  AND THEN YOU

6  COULD CALL IT FOR -- YOU COULD PUT AN END DATE

7  WHENEVER YOU WANT.  THAT'S PART OF -- AND THEN YOU

8  WOULD LIST WHAT IS INCLUDED IN THE CALL.

9     Q    NOW, WHEN THE SESSION ENDED ON JUNE 6, YOU

10 WERE AWARE THAT THIS JUDGE WAS CONSIDERING WHETHER

11 THE MAP PASSED BY THE LEGISLATURE VIOLATED THE VOTING

12 RIGHTS ACT.  CORRECT?

13    A    I KNEW THAT THERE WAS A COURT CASE THAT WAS

14 BEING DELIBERATED.  AND I WAS NOTIFIED ACTUALLY BY

15 THE GOVERNOR.  HE ASKED ME TO COME UP TO HIS OFFICE

16 WHEN WE CONCLUDED THE SESSION.

17       MR. ADCOCK:  YOUR HONOR, CAN I OBJECT?  THIS

18 IS NON-RESPONSIVE.  I'M TRYING TO GET THROUGH HERE.

19 I THINK YOU WANTED TO FINISH BY 10:30.

20       THE COURT:  LET HIM FINISH HIS RESPONSE, AND

21 THEN LET'S TRY TO MOVE ON AFTER THAT.

22 BY THE WITNESS:

23    A    SO THE ANSWER IS I FOUND OUT FROM THE

24 GOVERNOR HIMSELF WHEN I WENT UP TO HIS OFFICE THAT

25 THE ORDER HAD BEEN -- AND HE WAS --

1    THE COURT:  ON JUNE 6TH.

2    MR. ADCOCK:  YEAH.

3  BY THE WITNESS:

4    A    AT THE VERY END OF SESSION IT GETS VERY

5  BUSY.  WE HAVE A LOT OF CONFERENCE COMMITTEE REPORTS.

6  I WAS BEHIND THE DAIS AND I DID NOT GET NOTIFICATION

7  UNTIL THE GOVERNOR CALLED ME AND SAID, *CAN YOU COME*

8  *UP AS SOON AS IT'S OVER WITH?  I'D LIKE TO TALK TO*

9  *YOU.*

10    Q    THAT'S NOT MY QUESTION.

11         SO YOU WERE AWARE ON JUNE 6 THAT THE COURT

12  WAS CONSIDERING --

13    A    THE COURT WAS -- YES.  YES, I WAS AWARE THAT

14  THE COURT WAS DELIBERATING THIS, YES.

15    Q    YOU'RE A PARTY TO THIS CASE.  CORRECT?

16    A    YES.

17    Q    SO YOU COULD HAVE -- THE LEGISLATURE COULD

18  HAVE CALLED A SPECIAL SESSION ON JUNE 6.  CORRECT?

19    A    NO.  YOU MEAN ENTERED A CALL?

20    Q    YOU COULD HAVE CALLED --

21    A    SUBMITTED A CALL?

22    Q    -- SPECIAL SESSION ON JUNE 6.  YOU COULD

23  HAVE CALLED IT FOR JUNE 14 TO JULY 12 OR JULY 13, 30

24  DAYS.  THE CONSTITUTION ALLOWS YOU TO DO THAT.

25  CORRECT?

1    **A**    WE -- YES, THE CONSTITUTION DID ALLOW --

2   WOULD HAVE ALLOWED US TO DO THAT.

3    **Q**    SO YOU COULD HAVE DONE THAT ON JUNE 6.

4   RIGHT?  AND WE COULD HAVE STARTED, YOU KNOW, JUNE 14

5   OR SOMETHING.

6    **A**    ROUGHLY, YES.

7    **Q**    INSTEAD OF JUNE 23RD?

8    **A**    YES.  BUT --

9    **Q**    NOW, IF ANYONE --

10    **A**    BUT IF YOU'LL ALLOW ME TO ANSWER THAT

11   COMPLETELY.  YES, I COULD HAVE, BUT WHEN I LEFT THE

12   DAIS AND WENT UP TO THE GOVERNOR'S OFFICE, HE

13   NOTIFIED ME THAT HE WAS CALLING A SPECIAL SESSION AND

14   SAID *YOU'LL BE RECEIVING IT SHORTLY.*

15         SO FROM A PURE TIMING PERSPECTIVE, FOR ME TO

16   HAVE SAID *GOVERNOR, DON'T DO THAT.  I'M GOING TO GO*

17   *DOWN AND GET 20 SIGNATURES*, I WOULD HAVE HAD TO THEN

18   WALK ACROSS TO THE SPEAKER AND SAY *YOU HAVE TO GO GET*

19   *53 SIGNATURES.*  AND EVERYBODY WAS PACKING UP TO GO

20   HOME.

21         I THINK FROM A PRACTICAL PERSPECTIVE IT WAS

22   MUCH EASIER FOR THE GOVERNOR TO CALL IT, BECAUSE IT

23   TAKES ONE SIGNATURE VERSUS THE 73 SIGNATURES THAT WE

24   WOULD HAVE HAD TO ACQUIRE WHILE EVERYBODY WAS LEAVING

25   UPON WHAT WE CALL FINAL ADJOURNMENT OR *SINE DIE.*

1    **Q**   YOU'RE TELLING THE COURT HERE TODAY THAT

2  FIVE DAYS IS NOT ENOUGH TIME TO PASS A CONGRESSIONAL

3  BILL.  CORRECT?

4    **A**   I'M NOT SAYING IT'S NOT ENOUGH TIME.  I'M

5  SAYING IT'S UNLIKELY.  IT'S VERY, VERY, VERY

6  UNLIKELY.

7    **Q**   DID YOU TELL THE GOVERNOR THAT WHEN HE TOLD

8  YOU HE WAS GOING TO CALL A SPECIAL SESSION FROM JUNE

9  15 TO JUNE 20?

10   **A**   WE HAD A SHORT CONVERSATION.  I WILL TELL

11 YOU PART OF THE CONVERSATION WAS THAT --

12       **MR. ADCOCK:**  YOUR HONOR, I'M TRYING TO GET

13 THE COURT OUT OF HERE.  THIS IS NON-RESPONSIVE

14 ANSWERS.

15       **THE COURT:**  RESTATE YOUR QUESTION AGAIN,

16 SIR.  TRY TO ANSWER HIS QUESTIONS, PLEASE.

17       **MR. ADCOCK:**  YES.  THANK YOU, JUDGE.

18 **BY MR. ADCOCK:**

19   **Q**   DID YOU TELL THE -- DID YOU TELL THE

20 GOVERNOR THAT FIVE DAYS WAS NOT ENOUGH TO PASS A

21 REDISTRICTING BILL?

22   **A**   I CAN'T RECALL EXACTLY.  BUT I WOULD SAY I

23 SUGGESTED THAT THAT WAS A VERY SHORT PERIOD OF TIME

24 TO DO SOMETHING AS BIG AS PASS IT.  SO DID I TELL HIM

25 EXACTLY THOSE WORDS?  I CAN'T RECALL.  BUT IN THE

1  CONTEXT OF OUR MEETING, WHICH WAS VERY SHORT, I SAID,

2  *I DON'T KNOW HOW WE'RE GOING TO GET THAT DONE.*

3      **Q**    IN THE LEGISLATIVE SESSION YOU KNEW THE

4  JUDGE WAS CONSIDERING THESE MAPS AND MAY -- MAY

5  REQUEST THE LEGISLATURE TO DRAW ANOTHER MAP.

6  CORRECT?  AS A POSSIBILITY?

7      **A**    YES.  YES.

8      **Q**    FROM MAY 15 TO MAY -- OR JUNE 1ST TO JUNE

9  6TH, YOU COULD HAVE CORRALLED VOTES AND SIGNATURES TO

10 CALL A SPECIAL SESSION IN THE EVENT THE COURT WANTED

11 TO DO THAT.  CORRECT?  IF YOU WANTED TO?

12     **A**    I THINK THAT THERE IS PROBABLY A LACK OF

13 UNDERSTANDING OF WHAT GOES ON IN THE LEGISLATURE AT

14 THE LAST WEEK OF THE LEGISLATURE.  AND SO TO SUGGEST

15 THAT I WOULD HAVE BEEN SPENDING TIME TRYING TO GET

16 VOTES ON A PROCLAMATION WHEN I WAS TRYING TO GET

17 CONFERENCE COMMITTEE REPORTS FINALIZED SO WE COULD

18 TAKE THEM UP ON FINAL ADOPTION AND TRYING TO GET

19 BILLS PASSED IN THE OTHER HOUSE -- AND I WILL SAY

20 THIS JUST AS A BACKDROP:  THERE WERE A LARGE NUMBER

21 OF BILLS THAT WERE HUNG UP ON THE HOUSE CALENDAR THAT

22 WERE SENATE BILLS AND HOUSE BILLS THAT WERE TRYING TO

23 GET FINAL PASSAGE IN THE LAST HOUR THAT DIDN'T EVEN

24 GET A VOTE BECAUSE OF THE AMOUNT OF RUSH OVER THE

25 LAST THREE TO FOUR DAYS OF THE SESSION.

1      THE COURT:  PRESIDENT CORTEZ, I'M GOING TO

2  ASK THAT YOU PLEASE ANSWER THE QUESTIONS.  I

3  UNDERSTAND THAT IT'S -- THAT THERE ARE SOME NUANCES

4  TO THE LEGISLATIVE PROCESS AND IT'S IMPORTANT THAT WE

5  UNDERSTAND IT.  HOWEVER, I'D LIKE TO GET YOU BACK TO

6  YOUR JOBS, AND SO I'M GOING TO ASK THAT YOU ANSWER

7  THE QUESTIONS THAT ARE POSED TO YOU.  AND I'M CERTAIN

8  THAT, QUITE FRANKLY, YOU PROBABLY DON'T WANT TO LOOK

9  DEFENSIVE, SO MAYBE JUST ANSWER THE QUESTIONS.

10      THE WITNESS:  THANK YOU, YOUR HONOR.

11      MR. ADCOCK:  THANK YOU, JUDGE.

12  BY MR. ADCOCK:

13     Q    BUT YOU CHOSE NOT TO TRY TO DO THAT.

14  CORRECT?

15     A    I DIDN'T MAKE A CHOICE ONE WAY OR THE OTHER.

16  IT JUST WASN'T ON MY RADAR.

17     Q    YOU DIDN'T TRY TO DO THAT?

18     A    I DIDN'T DO IT.  BUT I DIDN'T TRY NOT TO DO

19  IT.  I JUST DIDN'T DO IT.

20     Q    NOW, THE LEGISLATURE PASSED A BILL OUT OF

21  THE FIRST SESSION EARLIER THIS YEAR; A REDISTRICTING

22  BILL.  CORRECT?

23     A    CORRECT.

24     Q    AND THAT WAS THE BILL THAT WAS STRUCK DOWN

25  BY THIS COURT?

1    **A**    CORRECT.

2    **Q**    AND TWO-THIRDS OF THE LEGISLATURE VOTED IN

3 FAVOR OF THAT BILL.  CORRECT?

4    **A**    CORRECT.

5    **Q**    NOW -- AND THEN WHEN THE LEGISLATURE

6 OVERRODE THE VETO, THE LEGISLATIVE VETO OF THAT MAP,

7 THERE WAS ALSO REQUIRED TWO-THIRDS OF THE VOTES.

8 CORRECT?

9    **A**    THAT'S CORRECT.

10    **Q**    NOW, DO YOU AGREE THAT MEMBERS WILL NOT VOTE

11 IN FAVOR OF ANOTHER MAP THAT COMPLIES WITH SECTION 2

12 OF THE VOTING RIGHTS ACT?

13    **A**    I CAN'T CONTROL WHAT OTHER MEMBERS ARE GOING

14 TO DO.  NOR CAN I SPEAK TO WHAT THEY MIGHT DO.

15    **Q**    WELL, YOU'RE AWARE OF --

16        **MS. MCKNIGHT:**  PARDON ME, YOUR HONOR.  AND,

17 MR. ADCOCK, EXCUSE ME.  THIS NEEDS TO BE ON THE

18 RECORD.

19        WE NEED TO LODGE A CLEAR OBJECTION THAT

20 ANY INQUIRIES INTO THE MINDSET OF OTHER LEGISLATORS

21 WOULD VIOLATE LEGISLATIVE PRIVILEGE.  WE'D LIKE TO

22 MAKE THAT CLEAR.

23        **MR. ADCOCK:**  THAT'S FINE, JUDGE.

24 **BY MR. ADCOCK:**

25    **Q**    SO LET ME JUST ASK YOU ABOUT THIS.  SO --

1    NOW, ARE YOU AWARE THAT ON TUESDAY REPRESENTATIVE

2    MCFARLAND TOLD THE LAFAYETTE NEWSPAPER *MY MEMBERS ARE*

3    *TELLING ME THEY AREN'T GOING TO VOTE ON ANOTHER MAP*?

4    ARE YOU AWARE HE MADE THAT STATEMENT?

5        **A**    I'M NOT.

6        **Q**    NOW, HE'S THE CHAIR OF THE HOUSE

7    CONSERVATIVE CAUCUS.  CORRECT?

8        **A**    I DON'T SERVE IN THE HOUSE.  I'M NOT SURE

9    THAT -- WHEN I DID SERVE IN THE HOUSE, THERE WAS NO

10   SUCH THING AS A HOUSE CONSERVATIVE CAUCUS, SO I DON'T

11   KNOW.

12       **Q**    AND THEN THE HOUSE G.O.P. CAUCUS WHO RUNS

13   THE REPUBLICAN CAUCUS IN THE HOUSE, BLAKE MIGUEZ,

14   SAID IN THE SAME ARTICLE *I DON'T SEE REPUBLICANS*

15   *SURRENDERING THIS EARLY IN THE PROCESS BEFORE THE*

16   *LITIGATION IS FULLY ADJUDICATED*.  DO YOU KNOW ABOUT

17   THAT STATEMENT?

18       **A**    I DON'T KNOW WHAT HE --

19       **Q**    ARE YOU AWARE OF THAT STATEMENT?

20       **A**    I THINK SOMEONE MAY HAVE SAID THAT HE SAID

21   THAT.  BUT I DIDN'T SEE THAT STATEMENT ANYWHERE.  I

22   DON'T -- I RARELY READ MUCH AND TRY TO FOCUS ON DOING

23   WHAT I'M DOING.

24       **Q**    YOU DON'T READ THE NEWSPAPERS?

25       **A**    I READ THE ACADIAN ADVOCATE OCCASIONALLY.

1    Q    AND BLAKE MIGUEZ IS THE HOUSE MAJORITY

2  LEADER.  RIGHT?

3    A    HE'S THE HEAD OF THE -- I THINK IT'S CALLED

4  THE HEAD OF THE REPUBLICAN DELEGATION.

5    Q    AND HE ALSO SAID --

6    A    OR THE CHAIRMAN.  I SHOULD SAY CHAIRMAN.

7    Q    -- IN THE NEWSPAPER *IT'S PREMATURE TO JUST*

8  *GIVE UP AND START DRAWING NEW MAPS.*  CORRECT?

9    A    I'M NOT AWARE OF THAT.

10    Q    YOU'RE NOT AWARE OF THAT.  DO YOU THINK

11  THAT'S AN IMPORTANT STATEMENT THAT THE HOUSE MAJORITY

12  LEADER SAID THAT IN REGARDS TO THE BILLS UNDER

13  CONSIDERATION IN THIS SPECIAL SESSION?

14    A    I CAN'T SPEAK TO THAT.  I'M DOING EVERYTHING

15  I CAN TO ATTEMPT TO GET MAPS, BILLS INTO COMMITTEE SO

16  THAT WE CAN DELIBERATE AS A DELIBERATIVE BODY.

17    Q    AND YOU -- YOUR TESTIMONY TO THIS COURT IS

18  THAT YOU WERE TRYING TO PASS A CONGRESSIONAL MAP THAT

19  COMPLIES WITH THE VOTING RIGHTS ACT?

20    A    THAT'S CORRECT.

21    Q    OKAY.  NOW, YOU AND SPEAKER SCHEXNAYDER

22  ISSUED A STATEMENT ON JUNE 10.  CORRECT?

23    A    CAN YOU --

24    Q    YOU ISSUED A STATEMENT ON JUNE 10.  CORRECT?

25    A    I DON'T KNOW.  TELL ME WHAT STATEMENT IT

1  WAS.

2      **Q**    YOU DON'T REMEMBER IF YOU ISSUED A

3  STATEMENT?

4      **A**    I DO NOT AT THIS POINT.  IF YOU CAN SHARE IT

5  WITH ME, I CAN --

6      **Q**    TELL ME IF THIS IS YOUR RECOLLECTION OF WHAT

7  THE STATEMENT SAID.  QUOTE, UNTIL THE COURTS HAVE

8  MADE A FINAL DETERMINATION ON THE CONGRESSIONAL MAPS

9  AS THEY WERE PASSED BY A SUPER MAJORITY OF THE

10 LEGISLATURE, WE ARE ASKING THE GOVERNOR TO RESCIND

11 THIS SPECIAL SESSION CALL.  DO YOU REMEMBER SAYING

12 THAT?

13     **A**    YES.

14        **MS. MCKNIGHT:**  YOUR HONOR, I'D LIKE TO LODGE

15 AN OBJECTION.  THIS IS NOT THE PROPER WAY TO REFRESH

16 A WITNESS'S RECOLLECTION.  THE WITNESS IS ENTITLED TO

17 SEE THE STATEMENT IN FRONT OF HIM AND REVIEW IT.

18        **MR. ADCOCK:**  I'LL MOVE ON, JUDGE.

19        **THE COURT:**  LET ME JUST RULE ON THE

20 OBJECTION.  IT'S OVERRULED.  PLEASE MOVE ON.

21 **BY MR. ADCOCK:**

22     **Q**    DO YOU REMEMBER ALSO SAYING THIS IN YOUR

23 STATEMENT:  *BEFORE THE JUDICIAL REDISTRICTING PROCESS*

24 *IS COMPLETE, ANY SPECIAL SESSION WOULD BE PREMATURE*

25 *AND A WASTE OF TAXPAYER MONEY*?

1    **A**    I THINK IT WAS PART OF THAT SAME STATEMENT,

2   YES.

3    **Q**    AND YOU -- AND YOU STAND BY THOSE STATEMENTS

4   IN FRONT OF THIS COURT?

5    **A**    YES.  I DO THINK THAT IT'S GOING TO BE VERY

6   DIFFICULT TO PASS A REDISTRICTING PLAN CALL VERY

7   QUICKLY WITH NOT A LOT OF OPPORTUNITY TO GET BILLS IN

8   FRONT OF OUR COMMITTEE MEMBERS.

9    **Q**    UNTIL THE COURTS --

10    **A**    AND A SHORT ENDING TO IT.

11    **Q**    BUT UNTIL THE COURT -- YOU WANT THE COURTS

12   TO MAKE A FINAL DETERMINATION BEFORE YOU TRY.  IS

13   THAT WHAT YOU'RE SAYING?

14    **A**    NO.

15    **Q**    YOU DIDN'T SAY THAT?

16    **A**    NO.

17        **MR. ADCOCK:**  NO MORE QUESTIONS AT THIS TIME,

18   JUDGE.

19        **THE COURT:**  IT WAS THE COURT'S INTENT TO

20   HAVE THE PLAINTIFFS KIND OF NOT TAG-TEAM, BUT I DID

21   NOT SAY THAT.  SO DO THE GALMON PLAINTIFFS HAVE ANY

22   CROSS?

23        **MR. PAPILLION:**  YOUR HONOR, THANK YOU.  I

24   WOULD VERY BRIEFLY.  VERY BRIEFLY.

25        **THE COURT:**  GO AHEAD.

1    **MR. PAPILLION:**  THANK YOU FOR THAT.  DARREL

2  PAPILLION ON BEHALF OF THE GALMON PLAINTIFFS, YOUR

3  HONOR.

4          WHAT I WAS HOPING TO DO WAS AT LEAST TO

5  RESERVE THE OPPORTUNITY TO ARGUE ON THE TESTIMONY.

6  BUT I DO HAVE A FEW QUESTIONS.

7                    **CROSS-EXAMINATION**

8  BY MR. PAPILLION:

9    **Q**   MR. CORTEZ, YOU WERE IN THE LEGISLATURE IN

10  2017?

11    **A**   YES.  OH, YES.

12    **Q**   WHAT WAS YOUR CAPACITY AT THAT POINT?

13    **A**   I WAS -- I WAS IN THE SENATE.  I WAS THE

14  CHAIRMAN OF THE SENATE COMMITTEE ON TRANSPORTATION, I

15  WAS ON THE SENATE COMMERCE COMMITTEE, AND I WAS ON

16  THE SENATE RETIREMENT COMMITTEE.

17    **Q**   DO YOU RECALL THAT WE HAD AN EXTRAORDINARY

18  SESSION IN 2017 IN THE STATE OF LOUISIANA?

19    **A**   I CAN'T RECALL, BUT I'M SURE WE DID.  THERE

20  WERE MULTIPLE -- WE'VE HAD MULTIPLE SPECIAL SESSIONS

21  IN MY TENURE.

22    **Q**   WOULD IT SURPRISE YOU THAT IN 2017 WE HAD AN

23  EXTRAORDINARY SESSION RELATIVE TO THE STATE BUDGET,

24  OR THAT THAT WAS ONE OF THE ISSUES UNDER

25  CONSIDERATION?

1    **A**    THAT WOULD NOT -- THAT WOULD NOT SHOCK ME TO

2  KNOW THAT.  BUT YOU CAN -- BUT MY MEMORY IS -- IF I

3  SAW IT, MAYBE I WOULD BE RECALLED.  BUT RIGHT NOW I

4  CAN'T RECALL EXACTLY, BUT I'M ASSUMING WHAT YOU'RE

5  TELLING ME IS TRUTHFUL.

6    **Q**    WOULD IT SURPRISE YOU THAT IN 2017 IN AN

7  EXTRAORDINARY SESSION IN A MATTER OF FOUR DAYS WE

8  PASSED A STATE BUDGET AT THE STATE; THE LEGISLATURE

9  DID?

10    **A**    IN FOUR DAYS FROM THE TIME IT WAS

11  INTRODUCED?

12    **Q**    YES.

13    **A**    UNTIL -- I CAN'T RECALL THAT, BUT -- THAT

14  WASN'T DURING THE PANDEMIC, SO IT WAS PRE-PANDEMIC.

15  I'M TRYING TO RECALL, BUT I CAN'T REALLY RECALL THAT.

16  BUT --

17    **Q**    THERE IS A RECORD OF IT.  AND THE COURT CAN

18  TAKE JUDICIAL NOTICE OF IT.

19         I'M ASKING YOU AS THE PRESIDENT OF THE

20  SENATE:  WOULD IT SURPRISE YOU THAT THE SENATE AND

21  THE HOUSE, OUR LEGISLATURE, COULD PASS AN IMPORTANT

22  LEGISLATIVE MEASURE IN FOUR DAYS?  YOU CAN'T, CAN

23  YOU?

24    **A**    IT SEEMS UNREASONABLE IN FOUR DAYS THAT YOU

25  WOULD PASS ANY BILL.

1    Q    *IT SEEMS UNREASONABLE.*  YOU'RE HERE TODAY IN

2  COURT.  YOU UNDERSTAND YOU'RE A PARTY TO THIS

3  LITIGATION?

4    A    I DO.

5    Q    IS IT -- AND YOU UNDERSTAND YOU'RE UNDER

6  OATH?

7    A    I'M SORRY?

8    Q    YOU UNDERSTAND YOU'RE UNDER OATH?

9    A    YES, SIR.

10    Q    ARE YOU A LAWYER?

11    A    NO, SIR.

12    Q    YOU'VE REFERENCED THE STATE CONSTITUTION A

13  NUMBER OF TIMES.  LET ME ASK YOU THIS, SENATOR

14  CORTEZ.  DO YOU INTEND TO FOLLOW THE CONSTITUTION?

15    A    YES, SIR.

16    Q    IS IT YOUR UNDERSTANDING THAT THIS COURT

17  ISSUED AN ORDER DIRECTING THE LEGISLATURE TO COMPLY

18  WITH SECTION 2 OF THE VOTING RIGHTS ACT OF THE UNITED

19  STATES CONSTITUTION?

20         **MS. MCKNIGHT:**  OBJECTION, YOUR HONOR, TO THE

21  EXTENT IT ASKS FOR A LEGAL CONCLUSION.

22         **MR. PAPILLION:**  I'M NOT ASKING FOR A LEGAL

23  CONCLUSION.

24         **THE COURT:**  OVERRULED.

25  **BY THE WITNESS:**

1    **A**    MY UNDERSTANDING WAS THE ORDER, AS I READ IT

2    AS A NON-LAWYER, WAS TO ATTEMPT TO REMEDIATE.  AND IT

3    GOES ON TO SAY IN THE ORDER THAT IF YOU FAIL TO

4    REMEDIATE, THEN THE COURT WOULD REMEDIATE, I THINK

5    IS -- I'M PARAPHRASING BECAUSE I DON'T HAVE IT IN

6    FRONT OF ME.  BUT IT WAS TO GIVE THE OPPORTUNITY FOR

7    THE LEGISLATURE TO PRODUCE A REMEDIAL PLAN, I THINK

8    IS THE VERBIAGE, BUT -- I READ IT OVER AND OVER.

9         BUT AGAIN, I WANT TO SAY ON THE RECORD I'M

10   NOT A LAWYER AND I DON'T KNOW ALL OF WHAT THAT MEANS,

11   EXCEPT THAT IN MY WORLD IT SAYS *YOU OUGHT TO GO BACK*

12   *INTO SESSION AND TRY TO FIX THIS AND DO SOMETHING*

13   *DIFFERENT.*

14   **Q**    YOU WOULD AGREE WITH ME THAT IF THE

15   LEGISLATURE, THE SENATE AND THE HOUSE WERE HIGHLY

16   MOTIVATED TO FOLLOW THIS COURT'S ORDER -- TEN DAYS

17   HAVE GONE BY SINCE THAT ORDER WAS ISSUED -- THAT IT

18   WOULD BE ABLE TO ACT, WHETHER IT IS THROUGH GOING

19   OVER THE PUBLIC COMMENTS, BY PREFILING BILLS AFTER

20   THE GOVERNOR'S CALL, THAT THAT WORK COULD BE IN

21   PROGRESS.  RIGHT?

22   **A**    IT COULD, EXCEPT FOR ONE THING.  THAT DURING

23   THAT -- THOSE DAYS THAT YOU'RE REFERENCING, THERE WAS

24   A STAY THAT WAS ISSUED AT THE FIFTH CIRCUIT, AT WHICH

25   TIME MANY OF THE MEMBERS IN THE SENATE -- I WON'T

1  SPEAK FOR THE HOUSE -- SAID *I'M GOING ON VACATION.*

2  *THIS IS NOT GOING TO HAPPEN.*

3         AND THEN A FEW DAYS LATER, WHICH I THINK WAS

4  A SUNDAY, THAT STAY WAS REVERSED.  AND THAT WAS

5  EFFECTIVELY TWO DAYS BEFORE WE STARTED THE SESSION,

6  AT WHICH TIME -- AND I DON'T WANT TO GO OVER.  IF YOU

7  WANT ME TO STOP ANSWERING --

8     **Q**   NO, GO AHEAD.  I'M LISTENING.

9     **A**   -- I'M JUST TRYING TO GIVE YOU CONTEXT.  I

10 HAD A NUMBER OF SENATORS CALL ME AND SAY THEY WERE IN

11 THE BRITISH VIRGIN ISLANDS; DESTIN, FLORIDA, THE

12 MOUNTAINS AND WHEN DO THEY NEED TO BE BACK.  AND MY

13 ANSWER WAS TO THEM:  *AS QUICKLY AS POSSIBLE.  WE'RE*

14 *CONVENING AT NOON ON WEDNESDAY.*  AND SOME OF THEM

15 HAVE NOT RETURNED YET, BUT THEY ARE ON THEIR WAY

16 BACK.

17    **Q**   LET ME MAKE SURE.  THE NEXT COUPLE OF

18 QUESTIONS I ASK YOU, OR ANY QUESTIONS, I DON'T WANT

19 TO ASK YOU FOR A LEGAL CONCLUSION, I DON'T WANT TO

20 ASK YOU FOR ANY ADVICE THAT YOU GOT FROM A LAWYER.

21        BUT WHAT YOU'RE TELLING ME -- OR WHAT IT

22 SOUNDS LIKE TO ME IS YOU HEARD OR LEARNED SOMEHOW

23 THAT THE U.S. FIFTH CIRCUIT HAD ISSUED AN

24 ADMINISTRATIVE STAY AND THAT YOU SORT OF THOUGHT,

25 WELL, THAT MEANT THAT YOU COULD GO ON, AND THIS

1  COURT'S ORDER OF JUST A COUPLE OF DAYS EARLIER, IT

2  HAD NO EFFECT ANYMORE.  RIGHT?  IS THAT WHAT YOU'RE

3  SAYING?

4      A    THAT WAS MY UNDERSTANDING, IS THAT -- THAT

5  IT WAS STOPPED, YES.

6      Q    AND AS THE -- AS THE PRESIDENT OF THE

7  SENATE -- AGAIN, I DON'T -- I'M NOT ASKING YOU FOR A

8  LEGAL OPINION, I'M NOT ASKING YOU FOR ANY ADVICE OF

9  COUNSEL, ANYTHING OF THAT NATURE.  DID YOU TRY TO

10 MAKE A DETERMINATION AS TO WHETHER AN ADMINISTRATIVE

11 STAY MIGHT BE QUICKLY LIFTED?  YOU DIDN'T?

12     A    I DID NOT.  I WAS ASKED BY MEMBERS *WHAT DO*

13 *YOU THINK?*  AND I SAID, *I HAVE NO IDEA.*  AND THEN IF

14 THEY'D SAY, *WELL, CAN I GO ON MY VACATION?* I'D SAY,

15 *THAT'S YOUR DECISION.*  BUT I DID TELL MANY OF THEM, *I*

16 *WOULD GET INSURANCE IF YOU'RE TAKING A FLIGHT SO THAT*

17 *YOU DON'T LOSE YOUR MONEY.*

18     Q    DIDN'T YOU TELL THE LEGISLATURE YESTERDAY

19 NOT TO GO ON VACATION?

20     A    YESTERDAY?

21     Q    YEAH.  DID YOU MAKE A STATEMENT SAYING THAT

22 NO ONE SHOULD GO ON VACATION?

23     A    I'M SORRY?

24     Q    DID YOU MAKE A STATEMENT YESTERDAY THAT NO

25 ONE SHOULD GO ON VACATION?

1    **A**    I DON'T RECALL I DID.

2    **Q**    LET ME ASK YOU THIS.

3    **A**    I DON'T RECALL IT.  I DON'T KNOW WHAT

4    CONTEXT IT MAY HAVE BEEN IN.

5    **Q**    I DON'T WANT TO -- YOU HAVE TO GO AND DO

6    SOME WORK, AND SO I DON'T WANT TO HAGGLE WITH YOU

7    ABOUT TOO MANY THINGS.  I WANT TO LET THE COURT DEAL

8    WITH THE ISSUES THAT WE HAVE TO DEAL WITH.

9           BUT IT IS A FAIR POINT, IS IT NOT, THAT IF A

10   MAJORITY OR A TWO-THIRDS MAJORITY OF OUR LEGISLATURE

11   IS OF MIND TO FOLLOW THIS COURT'S ORDER, THAT THAT

12   CAN ABSOLUTELY BE DONE IN THE TIME THAT'S ALLOTTED IN

13   THE PRESENT SESSION.  CORRECT?

14   **A**    ONLY IF YOU SUSPEND THE RULES AT EVERY STEP,

15   NO. 1; AND, NO. 2, REDUCE THE TRANSPARENCY OF

16   AMENDMENTS BEING PRESENTED TO THE PUBLIC.  IF YOU'RE

17   WILLING TO REDUCE THE TRANSPARENCY IN THE PROCESS AND

18   YOU'RE WILLING TO SUSPEND EVERY RULE, IT CAN BE DONE.

19   I WOULD NOT SIT HERE AND TELL YOU IT CANNOT BE DONE.

20          WHAT I WOULD TELL YOU IS THAT I PERSONALLY

21   WOULD NEVER ASK ANY LEGISLATOR TO SUSPEND A RULE IF

22   THEY THOUGHT IT WOULD BRING LESS -- SHINE LESS LIGHT

23   ON A SUBJECT MATTER BUT, MORE SPECIFICALLY, ON A

24   SUBJECT MATTER OF SUCH IMPORTANCE AS CONGRESSIONAL

25   REDISTRICTING.

1      Q    SO IN FAIRNESS, YOUR ANSWER TO MY LAST

2   QUESTION IS:  *YES, BUT* AND EVERYTHING YOU JUST SAID.

3   CORRECT?

4      A    THANK YOU.  YES.  I BELIEVE THAT'S CORRECT.

5      Q    ALL RIGHT.  AND, SENATOR, I THINK THOSE ARE

6   ALL THE QUESTIONS I HAVE.

7      A    THANK YOU.

8           THE COURT:  DO YOU HAVE ANY REDIRECT?

9           MS. MCKNIGHT:  BRIEFLY, YOUR HONOR.

10                    REDIRECT EXAMINATION

11  BY MS. MCKNIGHT:

12     Q    MR. PRESIDENT, I HEARD PLAINTIFFS' COUNSEL

13  ASK YOU A NUMBER OF QUESTIONS RELATED TO THE TIMING

14  OF WORK AND WHAT YOU COULD HAVE DONE AND WHEN, SO I'D

15  LIKE TO ASK YOU A FEW QUESTIONS RELATED TO THAT.

16          WHAT IS YOUR -- WHEN DID YOU FIRST LEARN

17  THAT THIS COURT HAD ISSUED ITS PRELIMINARY INJUNCTION

18  AS RELATES TO THE SESSION THAT YOU WERE IN ON JUNE 6?

19     A    IT WAS, THE BEST I CAN RECALL, AT THE END OF

20  THE SESSION SOMEONE -- THE GOVERNOR CALLED ME AND

21  SAID, *I'D LIKE TO TALK TO YOU.  I DON'T KNOW IF*

22  *YOU'RE AWARE THAT THE DISTRICT COURT HAS MADE A*

23  *RULING.  CAN YOU COME UP TO MY OFFICE?* AND I SAID,

24  *YES, AS SOON AS WE ADJOURN, I WILL COME ON UP.*

25     Q    AND WE ON YOUR BEHALF IN THIS CASE FILED A

1    MOTION TO STAY THAT ORDER THAT NIGHT.  IS THAT RIGHT?

2        A    THAT'S CORRECT.

3        Q    AND IS IT MY UNDERSTANDING THAT YOU

4    UNDERSTOOD THIS COURT'S ORDER WAS STAYED UNTIL SUNDAY

5    EVENING, FOUR DAYS AGO?

6        A    THAT'S CORRECT.

7            MS. MCKNIGHT:  THANK YOU, YOUR HONOR.  THOSE

8    ARE ALL THE QUESTIONS I HAVE.

9            THE COURT:  THE COURT HAS JUST A COUPLE,

10   SIR, JUST SO THAT THE COURT CAN BETTER UNDERSTAND THE

11   PROCESS THAT YOU'RE FACING.

12           COUNSEL ASKED YOU IS THERE ENOUGH TIME

13   TO PASS THE MAPS UNDER THE CURRENT SESSION AND THE

14   EXPIRATION OF THE CURRENT SESSION, WHICH IS MONDAY,

15   JUNE 20TH.  AND YOU SAID, *YES, IF -- SUSPEND THE*

16   *RULES* AND *YES, IF REDUCED TRANSPARENCY CAN BE DONE.*

17           SO WITH RESPECT TO SUSPENDING THE

18   RULES, THAT'S SOMETHING THAT THE HOUSE AND THE SENATE

19   LEADERSHIP UNDERTAKE.  IS THAT CORRECT?

20           THE WITNESS:  ANY MEMBER CAN MOVE -- MAKE A

21   MOTION TO SUSPEND.  THE HOUSE IS DIFFERENT FROM THE

22   SENATE ONLY BECAUSE I SERVE THERE.  THE SENATE, WE

23   SUSPEND RULES WITH A MAJORITY VOTE.  THE HOUSE

24   SUSPENDS RULES WITH A TWO-THIRDS MAJORITY VOTE, SO

25   THERE IS A LITTLE NUANCE THERE.

1    THE COURT:  SO EITHER YOU AS THE PRESIDING

2  OFFICER OF THE SENATE OR ANY SENATOR CAN MOVE TO

3  SUSPEND THE RULES?

4    THE WITNESS:  ANY SENATOR, YES.

5    THE COURT:  YOU'VE ALREADY SUSPENDED THE

6  READING REQUIREMENT AND REFERRED AT LEAST -- AND I

7  JUST WANT TO -- I'M NOT -- I'M ASKING JUST ABOUT THE

8  SENATE SIDE.  YOU'VE ALREADY DONE THAT WITH RESPECT

9  TO THE READING OF THE BILLS THAT ARE IN THE SENATE

10  AND REFERRED BACK TO COMMITTEE.  SO SOME OF THOSE

11  RULES HAVE BEEN SUSPENDED?

12    THE WITNESS:  THAT'S CORRECT.

13    THE COURT:  DO I HAVE YOUR COMMITMENT THAT

14  YOU WILL MOVE TO SUSPEND THE RULES NECESSARY TO

15  ACCOMPLISH THE TASK BEFORE YOU?

16    THE WITNESS:  I AM COMMITTED TO ATTEMPTING

17  TO DO THIS.  WHAT I HAVE TO TELL YOU IS I AM ONE OF

18  38 MEMBERS OF THE SENATE.

19    THE COURT:  I UNDERSTAND YOU HAVE TO HAVE --

20    THE WITNESS:  AND THE MAJORITY -- IT'S A

21  DELIBERATIVE BODY.  AND THE MAJORITY WILL DETERMINE

22  HOW QUICKLY WE MOVE.  UNLIKE THE HOUSE, THE MAJORITY

23  OF THE SENATE WILL DETERMINE HOW QUICKLY WE MOVE.

24        AND IN FAIRNESS TO YOU -- AND I WANT TO

25  BE HONEST -- I DON'T THINK THERE IS A WILL BY MANY OF

1  THE MEMBERS TO REDUCE THE TRANSPARENCY.  AND

2  SUSPENDING THE RULES WOULD REDUCE THE TRANSPARENCY TO

3  THE PUBLIC.

4       THE COURT:  OKAY.  SO MY QUESTION, THOUGH --

5  AND I DON'T WANT YOU TO TELL ME WHAT YOU -- I MEAN,

6  YOU DON'T KNOW WHAT YOUR COLLEAGUES ARE GOING TO DO

7  OR NOT DO; YOUR COLLEAGUES IN THE SENATE.  I

8  UNDERSTAND THAT AND I APPRECIATE THAT.  AND I'M NOT

9  ASKING YOU TO MAKE A COMMITMENT ON THEIR BEHALF.

10       I'M ASKING YOU IF I HAVE YOUR

11  COMMITMENT AS THE PRESIDENT OF THE SENATE TO DO WHAT

12  YOU CAN TO MOVE TO SUSPEND THE RULE SO THAT THIS CAN

13  BE ACCOMPLISHED.

14       THE WITNESS:  I'M DOING EVERYTHING I CAN.

15       THE COURT:  NOW, WITH RESPECT TO REDUCING

16  TRANSPARENCY, MY UNDERSTANDING IS, IS THAT WHAT THE

17  PROCESS IS LOOKING TO ACCOMPLISH IS TO ALLOW MEMBERS

18  OF THE PUBLIC AND CONSTITUENTS OF YOURS AND YOUR

19  COLLEAGUES TO COMMENT AND GIVE YOU FEEDBACK ON

20  PENDING LEGISLATION.  THAT'S THE TRANSPARENCY WE'RE

21  TALKING ABOUT?

22       THE WITNESS:  THAT'S CORRECT.

23       THE COURT:  SO THAT'S THAT PUBLIC COMMENT

24  TRANSPARENCY.  RIGHT?

25       THE WITNESS:  THAT'S CORRECT, YES.

1    **THE COURT:**  SO WHAT ARE YOU DOING RIGHT NOW?

2   MY UNDERSTANDING IS YOU MET YESTERDAY.  YOU'RE NOT IN

3   SESSION, OBVIOUSLY, NOW.  YOU'VE REFERRED TWO SENATE

4   BILLS TO COMMITTEE.

5            SO WHAT IS HAPPENING RIGHT NOW THAT IS

6   ENABLING THIS PUBLIC PROCESS?

7    **THE WITNESS:**  THE SENATE & GOVERNMENTAL

8   AFFAIRS CONVENED A MEETING AT NINE A.M. THIS MORNING.

9   THEY ARE DELIBERATING ON THE TWO BILLS AS WE SPEAK.

10   **THE COURT:**  SO THE PUBLIC CAN COMMENT?

11   **THE WITNESS:**  THE PUBLIC IS THERE.  I'VE HAD

12  A NUMBER OF MAYORS CONTACT ME SAYING THEY WERE

13  PLANNING ON ATTENDING TO GIVE THEIR PUBLIC TESTIMONY.

14  SO WE HAVE NINE MEMBERS OF THE SENATE & GOVERNMENTAL

15  AFFAIRS COMMITTEE OF THE SENATE.  SO WHILE I'M EX

16  OFFICIO, I'M NOT THERE SITTING AT THE DAIS.  I WOULD

17  BE IF I WEREN'T HERE.  BUT I CAN ASK QUESTIONS, I

18  CAN'T VOTE OR MAKE MOTIONS.

19   **THE COURT:**  SO THAT PROCESS IS CONTINUING

20  AND THE PUBLIC IS ENGAGED AND THERE IS

21  SOME TRANSPAREN- -- OR THERE IS TRANSPARENCY IN THAT

22  PROCESS?

23   **THE WITNESS:**  THAT'S CORRECT.  HERE'S THE --

24  WHAT I'M -- IF I COULD ELABORATE ON WHAT I MEAN BY

25  *TRANSPARENCY*.  I SAID THIS EARLIER.  THERE IS I THINK

1  3700 -- ROUGHLY 3700 PRECINCTS.  THE BILLS THAT ARE

2  FILED HAVE GONE TO COMMITTEE.  THEY CAN OFFER

3  AMENDMENTS IN COMMITTEE TO CHANGE THAT BILL TO FIX --

4  I'M JUST GOING TO USE MY LITTLE CITY, LAFAYETTE.  AND

5  ONE OF THE BILLS IS COMPLETELY SPLIT IN TWO:  THE

6  CITY OF LAFAYETTE AND THE PARISH OF LAFAYETTE.

7            THERE IS A CONCERN THAT THE PARISH OF

8  LAFAYETTE SHOULD BE IN THE SAME CONGRESSIONAL

9  DISTRICT.  SO I'VE GOT A LOT OF PHONE CALLS ABOUT NOT

10 WANTING THAT TO BE SPLIT UP.  IF SOMEONE ON THE

11 COMMITTEE WERE TO OFFER AN AMENDMENT TO FIX THAT,

12 THAT WOULD HAVE A RIPPLE EFFECT THROUGHOUT, BECAUSE

13 THE CONGRESSIONAL DISTRICTS HAVE TO BE ALL EQUAL IN

14 POPULATION.  IT WOULD CHANGE PRECINCTS IN EVERY OTHER

15 CORNER OF THE STATE.

16            WHEN THAT HAPPENS, IT'S INCUMBENT UPON

17 US TO THEN ALLOW THE REST OF THE STATE TO COME LOOK

18 AND SEE WHAT IT AFFECTED IN THEIR DISTRICTS.  IT'S A

19 COMPLICATED PROCESS.  AND IT'S NOT AS SIMPLE AS

20 PASSING -- MEMORIALIZING MOTHER'S DAY OR SOMETHING

21 LIKE THAT WHERE IT DOESN'T CHANGE WITH A LOT OF

22 AMENDMENTS.  THIS ONE LITTLE AMENDMENT LITERALLY

23 RIPPLES THE WHOLE STATE.

24            **THE COURT:**  WITH RESPECT TO -- YOU SAID --

25 IN ONE OF YOUR EARLIER STATEMENTS YOU TALKED ABOUT

1   WASTE OF TAXPAYER DOLLARS ON A SPECIAL SESSION, AND

2   THEN YOU ALSO MENTIONED -- I WANT TO GET AT SOME --

3   WELL, YOU ALSO MENTIONED THAT YOU CAN HAVE INTERIM

4   MEETINGS OF COMMITTEES WITH THE PRESIDING OFFICERS'

5   AUTHORITY AND THAT ONE OF THE THINGS THAT YOU LOOK AT

6   WHEN YOU'RE DECIDING WHETHER OR NOT TO GIVE

7   PERMISSION TO HAVE THESE INTERIM MEETINGS, THESE KIND

8   OF PREFILING MEETINGS OF COMMITTEES, THAT YOU LOOK AT

9   WHAT IS THE COST TO TAXPAYERS OF THAT.

10              HAVE YOU LOOKED AT -- WELL, LET ME JUST

11  PAUSE THERE.  OBVIOUSLY AS ONE OF THE LEADERS OF THE

12  TWO BODIES OF GOVERNMENT, YOU'RE KEENLY AWARE OF THE

13  PUBLIC FISK AND THE COST TO TAXPAYERS.  WOULD YOU

14  AGREE WITH THAT?

15          **THE WITNESS:**  ABSOLUTELY.

16          **THE COURT:**  SO HAVE YOU CONSIDERED AND CAN

17  YOU OFFER WHAT IS IT GOING TO COST THE TAXPAYERS OF

18  THIS STATE IF YOUR EXTENSION IS GRANTED?  WHAT DOES

19  IT COST FOR ANOTHER FIVE DAYS?  HAVE YOU CONSIDERED

20  THAT?

21          **THE WITNESS:**  I HAVE NOT.  I USED TO KNOW

22  THIS, YOUR HONOR.  I APOLOGIZE.  BUT THERE IS A

23  CERTAIN AMOUNT THAT IT COST FOR EACH DAY THAT WE'RE

24  IN SESSION.  BUT I JUST DON'T HAPPEN TO HAVE THAT IN

25  ONE OF MY HARD DRIVES.

1          THE COURT:  IT'S NOT ONE OF YOUR

2  CONSIDERATIONS IN ASKING FOR THE EXTENSION?

3          THE WITNESS:  MY CONSIDERATION WAS NOT SO

4  MUCH ABOUT THE ADDITIONAL DOLLARS THAT IT WOULD COST.

5  IT WAS THE FACT THAT WE ARE SPENDING MONEY RIGHT NOW,

6  AND I DON'T BELIEVE WE'RE GOING TO ACHIEVE THE GOAL

7  BECAUSE OF THE TIME IT REQUIRES TO ACHIEVE THE GOAL.

8          THE COURT:  ALL RIGHT.  AND THEN LASTLY, I

9  READ -- AND THANK YOU FOR YOUR DECLARATION THAT YOU

10  FILED.  I READ -- IN YOUR DECLARATION YOU STATE:  *I*

11  *UNDERSTAND THAT THE COURT HAS ORDERED THE LEGISLATURE*

12  *TO DRAW A NEW CONGRESSIONAL PLAN WITH TWO MAJORITY*

13  *BLACK DISTRICTS.*  IS THAT YOUR UNDERSTANDING OF THIS

14  COURT'S RULING?

15          THE WITNESS:  ABSOLUTELY.

16          THE COURT:  AND HAVE YOU COMMUNICATED YOUR

17  UNDERSTANDING OF THE COURT'S RULING WITH YOUR

18  COLLEAGUES?

19          THE WITNESS:  I HAVE.

20          THE COURT:  AND HAVE YOU DISCUSSED YOUR

21  UNDERSTANDING OF THE COURT'S RULING WITH HOUSE

22  SPEAKER SCHEXNAYDER?

23          THE WITNESS:  WE HAVE DISCUSSED THE CALL,

24  WHICH IS EFFECTIVELY YOUR ORDER.  THE CALL IS THE

25  ORDER.

1          THE COURT:  OKAY.  THAT S ALL THAT I HAVE.

2    THANK YOU VERY MUCH.

3          THE WITNESS:  THANK YOU.

4          THE COURT:  YOU MAY STEP DOWN.

5              AND MISTER -- PRESIDENT CORTEZ IS

6    RELEASED.  IF HE WANTS TO RETURN -- YOU MAY CERTAINLY

7    REMAIN.  I DON'T THINK WE'LL BE HERE A LOT LONGER,

8    SIR.  BUT IF YOU NEED TO GET BACK TO WORK, THE COURT

9    UNDERSTANDS.

10              NEXT WITNESS, PLEASE.

11          MS. MCKNIGHT:  YOUR HONOR ASKED SPEAKER

12   SCHEXNAYDER TO BE AVAILABLE, AND WE CAN CALL HIM IF

13   THE COURT WOULD LIKE TO HEAR FROM HIM.  BUT WE

14   BELIEVE THE COURT HAS SUFFICIENT INFORMATION ON THE

15   MOTION AND IN THE DECLARATION AND FROM MR. CORTEZ'S

16   TESTIMONY THIS MORNING.

17          THE COURT:  I THINK IT'S IMPORTANT FOR THE

18   COURT TO UNDERSTAND WHAT'S HAPPENING ON THE HOUSE

19   SIDE, GIVEN THAT THERE HAS BEEN A REQUEST FOR

20   EXTENSION OF TIME.  SO THE COURT WOULD LIKE TO HEAR

21   TESTIMONY.

22          MS. MCKNIGHT:  THANK YOU, YOUR HONOR.  WE

23   WOULD LIKE TO CALL THE SPEAKER, MR. CLAY SCHEXNAYDER.

24          (WHEREUPON, SPEAKER CLAY SCHEXNAYDER, BEING

25   DULY SWORN, TESTIFIED AS FOLLOWS.)

1    **THE COURT:**  GOOD MORNING, MR. SPEAKER.

2    **THE WITNESS:**  GOOD MORNING.

3    **THE COURT:**  YOU MAY PROCEED, MS. MCKNIGHT.

4    **MS. MCKNIGHT:**  THANK YOU.

5                 **DIRECT EXAMINATION**

6  BY MS. MCKNIGHT:

7    **Q**    GOOD MORNING, MR. SPEAKER.  COULD YOU

8  DESCRIBE YOUR ROLE IN THE LEGISLATURE.

9    **A**    I AM THE STATE REPRESENTATIVE FOR HOUSE

10  DISTRICT 81, AND I WAS ELECTED BY MY COLLEAGUES TO BE

11  SPEAKER OF THE HOUSE.

12    **Q**    AND HAVE YOU -- HAVE YOU READ A DECLARATION

13  SUBMITTED IN THIS MATTER BY MISTER -- BY THE

14  PRESIDENT CORTEZ?

15    **A**    I HAVE.

16    **Q**    AND DO YOU AGREE WITH HOW HE DESCRIBED THE

17  LEGISLATIVE PROCESS IN THAT DECLARATION?

18    **A**    YES, MA'AM.

19    **Q**    DID YOU DISAGREE WITH ANYTHING IN THAT

20  DECLARATION?

21    **A**    NO, MA'AM.

22    **Q**    NOW, SINCE MONDAY, THE DATE THAT DECLARATION

23  WAS FILED, HAS THE HOUSE GONE INTO EXTRAORDINARY

24  SESSION?

25    **A**    WE HAVE.

1    **Q**    NOW, AS YOU'RE SITTING HERE TODAY, CAN YOU

2    SPEAK FOR ANY OTHER LEGISLATORS?

3    **A**    I CANNOT.

4    **Q**    AND AS YOU SIT HERE TODAY, CAN YOU PROMISE

5    THE COURT ANY CERTAIN OUTCOME FROM THE HOUSE'S

6    DELIBERATIVE PROCESS?

7    **A**    I CANNOT.

8    **Q**    FINALLY, CAN YOU SPEAK FOR THE SECRETARY OF

9    STATE OR ANY OF THE ELECTION ADMINISTRATIVE ISSUES HE

10   HANDLES HERE TODAY?

11   **A**    NO, MA'AM.

12       **MS. MCKNIGHT:**  THANK YOU.  NO FURTHER

13   QUESTIONS.

14       **THE COURT:**  CROSS.

15                    **CROSS-EXAMINATION**

16   BY MR. ADCOCK:

17   **Q**    MR. SPEAKER, JOHN ADCOCK ON BEHALF OF THE

18   ROBINSON PLAINTIFFS AGAIN.

19       MR. SPEAKER, WE TALKED A LOT ABOUT TIMING

20   THIS MORNING, HOW MUCH TIME TO PASS THE BILL.  DO YOU

21   RECALL OR DO YOU KNOW THAT IN 1994 THE LOUISIANA

22   LEGISLATURE PASSED A REDISTRICTING BILL IN SIX DAYS?

23   **A**    I DO NOT.  THAT WAS BEFORE MY TIME.

24   **Q**    OKAY.  NOW, IS THE HOUSE HOLDING ANY -- THE

25   HOUSE OF REPRESENTATIVES HOLDING ANY COMMITTEE

1  HEARINGS TODAY?

2      A    THEY ARE NOT.

3      Q    THEY ARE HOLDING COMMITTEE HEARINGS

4  TOMORROW?

5      A    YES, SIR.

6      Q    WHICH COMMITTEE IS THAT?

7      A    HOUSE & GOVERNMENTAL.

8      Q    AND IT WENT INTO SESSION YESTERDAY?

9      A    YES, SIR.

10     Q    YOU'RE NOT HOLDING HEARINGS TODAY?

11     A    WE ARE NOT.

12     Q    NOW, YOU INTRODUCED A BILL FOR THIS SESSION.

13 CORRECT?

14     A    YES, SIR.

15     Q    NOW, FORGIVE ME FOR THE QUALITY OF THESE

16 COPIES, BUT I'M NOT TRYING TO TRICK YOU HERE.  THIS

17 IS --

18         MR. ADCOCK:  MAY I HAND THIS TO THE WITNESS,

19 JUDGE?

20         THE COURT:  YOU MAY APPROACH.

21         MR. ADCOCK:  THANK YOU, JUDGE.

22         THE COURT:  GIVE ONE TO YOUR OPPOSING

23 COUNSEL.  HAVE YOU GOT ONE?

24         MR. ADCOCK:  I'VE GIVEN A COPY TO OPPOSING

25 COUNSEL BEFORE THIS HEARING THIS MORNING, SO...

1    THE COURT:  OKAY.  YOU CAN USE THE ELMO IF

2 YOU NEED TO.

3    MR. ADCOCK:  THANK YOU, JUDGE.

4 BY MR. ADCOCK:

5    Q    NOW, MR. SPEAKER, DO YOU RECOGNIZE THAT

6 DOCUMENT?

7    A    I DO.

8    Q    NOW, I'M SHOWING YOU WHAT I'M GOING TO MARK

9 AS EXHIBIT 1; ROBINSON EXHIBIT 1.  CAN YOU DESCRIBE

10 WHAT THAT DOCUMENT IS?

11    A    IT IS HOUSE BILL 2.  IT IS A CONGRESSIONAL

12 REDISTRICTING MAP OF BILL.

13    Q    AND WHICH SESSION WAS THAT BILL INTRODUCED

14 FOR?

15    A    THIS WAS A BILL THAT WAS FILED IN OUR FIRST

16 REDISTRICTING SESSION AND IN THIS ONE.

17    Q    SO IT'S THE BILL FILED ON TUESDAY OF THIS

18 WEEK?

19    A    YES.

20    Q    AND IT WAS THE BILL FILED IN THE FIRST

21 EXTRAORDINARY SESSION.  CORRECT?

22    A    IT IS.

23    Q    SO THEY'RE BASICALLY THE SAME BILL?

24    A    YES, SIR.

25    Q    OKAY.  BASICALLY THE SAME MAP?

1    **A**    YES, SIR.

2    **Q**    OKAY.  NOW, I'M GOING TO --

3         **MR. ADCOCK:**  MAY I APPROACH THE WITNESS,

4    JUDGE?

5         **THE COURT:**  YOU MAY.

6         **MR. ADCOCK:**  I'M GOING TO SHOW THE WITNESS

7    WHAT I'M MARKING AS ROBINSON EXHIBIT 2 THAT I'VE

8    PREVIOUSLY GIVEN TO COUNSEL.

9         **MS. MCKNIGHT:**  MR. ADCOCK, PARDON ME.  COULD

10   YOU JUST BE CLEAR WHICH ONE, WHETHER IT'S HOUSE BILL

11   NO. 2 OR HOUSE BILL NO. 1?

12        **MR. ADCOCK:**  SURE.

13   BY MR. ADCOCK:

14   **Q**    CAN YOU IDENTIFY THAT DOCUMENT?

15   **A**    IT'S THE -- LOOKS LIKE THE BILL FROM THE

16   FIRST REDISTRICTING SESSION.

17   **Q**    SO ROBINSON 1 IS THE BILL THAT WAS

18   INTRODUCED FOR THIS SESSION?

19   **A**    ROBINSON 2 WAS THE ONE.

20   **Q**    NO, NO.  I'M SORRY.  I'M CONFUSING.  I

21   APOLOGIZE.

22        THE FIRST THING I SHOWED YOU IS ROBINSON 1.

23   THAT WAS THE BILL THAT WAS INTRODUCED ON TUESDAY.

24   **A**    YOU HANDED ME 2 FIRST.  AND THAT'S THE ONE

25   THAT IS FILED FOR THIS SESSION.

1      Q    CORRECT.

2      A    YES.

3      Q    AND THE ONE I JUST HANDED YOU, WHICH IS

4   EXHIBIT -- ROBINSON EXHIBIT 2, WAS THE BILL THAT WAS

5   FILED AND PASSED IN THE FIRST EXTRAORDINARY SESSION?

6      A    YES, SIR.

7           MR. ADCOCK:  IS THAT GOOD, COUNSEL?

8           MS. MCKNIGHT:  MR. ADCOCK, BRIEFLY COULD YOU

9   JUST -- IS THIS ROBINSON 1 AND THIS IS ROBINSON 2?

10          MR. ADCOCK:  THIS IS ROBINSON 1.

11          MS. MCKNIGHT:  OKAY.  THAT'S 2.  THANK YOU.

12          MR. ADCOCK:  I APOLOGIZE, JUDGE.  DOING THIS

13  ON THE FLY.  YOU CAN TELL I HAVE YOUNG KIDS.  I'M

14  JOKING.

15  BY MR. ADCOCK:

16     Q    SO BASED ON YOUR TESTIMONY, THESE ARE

17  ESSENTIALLY THE SAME MAP, SO -- AND THEY'RE THE SAME

18  DEMOGRAPHIC TOTALS, BASICALLY THE SAME BILL.

19  CORRECT?

20     A    YES.

21     Q    NOW, MY QUESTION IS:  WHAT ANALYSIS, IF ANY,

22  DID YOU DO PRIOR TO INTRODUCING THESE BILLS, WRITING

23  THESE BILLS -- DID YOU DO WITH THESE BILLS TO SEE HOW

24  THEY WOULD PERFORM?

25     A    SO THE ONE WE DID IN THE FIRST EXTRAORDINARY

1    SESSION WE HAD PUBLIC TESTIMONY, WE HAD PUBLIC INPUT,

2    WE HAD EVERYTHING THAT TRAVELING THE STATE THAT THE

3    COMMITTEES HAD DONE.  SO WE HAD INPUT FROM MULTIPLE

4    SOURCES.

5        Q    OKAY.  DID YOU DO ANY -- DID YOU HAVE ANYONE

6    ANALYZE ROBINSON 1 OR ROBINSON 2 FOR COMPLIANCE WITH

7    THE VOTING RIGHTS ACT?

8        A    I THINK THE FIRST ONE THAT WE PASSED IN THE

9    FIRST SESSION, REDISTRICTING SESSION, OUR STAFF AND

10   OUR LEGAL STAFF IS THE ONES WHO PUT IT IN THE POSTURE

11   THAT IT NEEDS TO BE IN TO BE LEGAL.

12       Q    OKAY.  I UNDERSTAND.  WHEN YOU MEAN YOUR

13   LEGAL STAFF, WHO ARE YOU TALKING ABOUT?

14       A    OUR STAFF.

15       Q    YOUR STAFF?

16       A    WE HAVE STAFF AT THE CAPITOL THAT WORK ON

17   OUR BILLS AND SO FORTH.

18       Q    OKAY.  AND WHO ARE WE TALKING ABOUT?  ARE WE

19   TALKING ABOUT LAWYERS?  WE'RE TALKING ABOUT YOUR

20   OFFICE STAFF?  WE'RE TALKING ABOUT --

21       A    SOME ARE LAWYERS, SOME ARE OFFICE STAFF,

22   DEMOGRAPHERS, SO FORTH.

23       Q    OKAY.  WHAT WERE THE NAMES OF THE

24   DEMOGRAPHERS THAT YOU HAD ANALYZE THIS BILL?

25       A    THE HOUSE STAFF WAS TRISH LOWREY.  SHE'S

1   DONE BILLS IN THE HOUSE FOR FOUR REDISTRICTING

2   SESSIONS.  SHE'S BEEN THERE 30-SOMETHING YEARS, I

3   WOULD THINK.

4        Q    IS SHE A DEMOGRAPHER?

5        A    I'M NOT SURE.

6        Q    OKAY.  FORGIVE ME.  I THOUGHT I HEARD IN

7   YOUR TESTIMONY YOU SAID YOU HAD A DEMOGRAPHER LOOK AT

8   THIS BILL.

9        A    WELL -- AND HER -- I WOULD THINK SHE WOULD

10  BE.  BUT TO SAY THAT SHE IS A CERTIFIED DEMOGRAPHER,

11  I COULD NOT TESTIFY TO THAT.

12       Q    BUT WHAT YOU'RE SAYING IS SHE HAS EXPERIENCE

13  IN LOOKING AT --

14       A    ABSOLUTELY.

15       Q    -- AND ANALYZING REDISTRICTING BILLS?

16       A    ABSOLUTELY.

17       Q    FOR HOW LONG HAS SHE DONE THAT,

18  APPROXIMATELY?

19       A    ROUGH 30 YEARS.

20       Q    ROUGHLY 30 YEARS, OKAY.

21            DID YOU HAVE AN OFFICIAL DEMOGRAPHER OR AN

22  ACADEMIC OR ANYONE LOOK AT THE BILL YOU SUBMITTED IN

23  THE FIRST SESSION OR THE ONE YOU SUBMITTED ON TUESDAY

24  TO SEE IF IT COMPLIES WITH THE VOTING RIGHTS ACT?

25       A    I HAVE NOT.

1      **Q**    OTHER THAN THIS PERSON YOU JUST MENTIONED?

2      **A**    THAT'S RIGHT.

3      **Q**    AND YOUR OFFICE STAFF.  CORRECT?

4      **A**    THE OFFICE STAFF REALLY DOESN'T -- MY OFFICE

5  STAFF DOESN'T REALLY LOOK AT BILLS IN LEGISLATION.

6      **Q**    I'M JUST TRYING TO GET AT WHAT STAFF WE'RE

7  TALKING ABOUT.  ARE WE TALKING ABOUT COMMITTEE STAFF,

8  OR --

9      **A**    WE'RE TALKING ABOUT HOUSE STAFF.

10     **Q**    HOUSE STAFF.

11     **A**    HOUSE AND COMMITTEE STAFF ARE THE SAME.

12     **Q**    OKAY.  NOW, DID YOU GET ANY INPUT FROM

13 ANYONE THAT ANALYZED YOUR BILL IN THE FIRST SESSION,

14 OR YOUR BILL THAT WAS INTRODUCED ON TUESDAY, ABOUT

15 WHETHER THE MAPS THAT WOULD BE GENERATED FROM THOSE

16 BILLS WOULD ELECT OR COULD ELECT TWO AFRICAN

17 AMERICAN -- HAVE TWO DISTRICTS TO ELECT TWO AFRICAN-

18 AMERICAN CONGRESSPERSONS?

19     **A**    ON THE BILL I FILED YESTERDAY?

20     **Q**    YES.

21     **A**    YES.  NO, I DID NOT.

22     **Q**    WHAT ABOUT ON THE BILL YOU FILED AND PASSED

23 IN THE FIRST SESSION?

24     **A**    I DID NOT.

25     **Q**    YOU DID NOT HAVE ANYONE GIVE YOU INPUT THAT

1   IT WOULD RESULT IN THE ELECTION OF TWO AFRICAN-

2   AMERICAN CONGRESSPEOPLE?

3       **A**    I DID NOT.

4       **Q**    OKAY.  NOW, DO YOU KNOW IF THE -- I'LL MOVE

5   ON.

6           SO -- BUT YOUR TESTIMONY TO THIS JUDGE IS

7   THAT IN -- THE MAP THAT YOU PASSED IN THE FIRST

8   SESSION IS THE ONE THAT WAS STRUCK DOWN BY THIS

9   COURT.  CORRECT?

10      **A**    YES, SIR.

11      **Q**    AND THAT YOU SUBMITTED SUBSTANTIALLY THE

12  SAME ONE FOR THIS SESSION.  CORRECT?

13      **A**    YES, SIR.

14          **MR. ADCOCK:**  ALL RIGHT.  NO MORE QUESTIONS,

15  JUDGE.

16          **THE COURT:**  MR. PAPILLION, DO YOU HAVE

17  ANYTHING?

18          **MR. PAPILLION:**  NO, YOUR HONOR.  THANK YOU.

19          **THE COURT:**  MR. SCHEXNAYDER, I HAVE A FEW --

20  OR -- I'M SORRY -- SPEAKER SCHEXNAYDER.  MY

21  APOLOGIES.

22          PUBLIC OPINION, YOU INDICATED -- OR

23  PUBLIC DEBATE AND COMMENT ON THE BILLS IS SOMETHING

24  THAT YOU AND YOUR COLLEAGUE, PRESIDENT CORTEZ, FIND

25  MEANINGFUL AND, IN FACT, IT'S REQUIRED AS PART OF THE

1  PROCESS?

2          THE WITNESS:  YES, MA'AM.

3          THE COURT:  WHAT HAVE YOU DONE TO ENSURE OR

4  TO ENABLE THE PUBLIC TO MAKE COMMENTS SINCE CONVENING

5  THE HOUSE OF REPRESENTATIVES YESTERDAY?

6          THE WITNESS:  SO WHAT WE HAVE DONE NOW, ALL

7  OF THE LEGISLATION IS UPLOADED ON TO OUR WEBSITE.

8  THE PUBLIC CAN OBTAIN THOSE COPIES AND THOSE MAPS AND

9  GO THROUGH THEM AND THEN BE PREPARED TO COME TO

10 COMMITTEE TOMORROW TO BE ABLE TO DISCUSS THEM.

11         THE COURT:  YOU -- AM I CORRECT THAT YOU ALL

12 WERE IN SESSION YESTERDAY -- THE HOUSE SIDE WAS IN

13 SESSION YESTERDAY ABOUT 90 MINUTES?

14         THE WITNESS:  ROUGHLY, I WOULD GUESS, YES,

15 MA'AM.

16         THE COURT:  AND SO YOU ADJOURNED AT

17 AROUND -- I DON'T KNOW -- ONE OR TWO O'CLOCK --

18         THE WITNESS:  YES, MA'AM.

19         THE COURT:  -- EARLY AFTERNOON YESTERDAY?

20             WAS THERE ANY MEANS MADE AVAILABLE TO

21 THE PUBLIC AFTER ONE O'CLOCK YESTERDAY TO MAKE PUBLIC

22 COMMENT ON THE BILLS THAT YOU ADVANCED TO COMMITTEE?

23         THE WITNESS:  ANY MEETINGS?

24         THE COURT:  WAS THERE ANY MEETINGS ADVANCED?

25         THE WITNESS:  NO, MA'AM.

1    THE COURT:  WAS THERE ANY PROCESS PUT IN

2  PLACE TO ALLOW THE PUBLIC TO ENGAGE, AS YOU'VE

3  INDICATED THAT YOU WISHED FOR THEM TO ENGAGE?

4    THE WITNESS:  SO PUTTING THEM UP ON THE

5  WEBSITE AND HAVING THEM THERE WOULD BE OUR NORMAL

6  PROCEDURE AT THAT TIME FOR PUBLIC TO LOOK AT THEM AND

7  BE PREPARED TO COME TO COMMITTEE, SO...

8    THE COURT:  YOU COULD HAVE REFERRED THOSE

9  OUT TO COMMITTEE AND COMMITTEE COULD HAVE MET

10 YESTERDAY.  CORRECT?

11    THE WITNESS:  YES, MA'AM.

12    THE COURT:  AND THE COMMITTEE COULD HAVE MET

13 ANY TIME TODAY AND, IN FACT, ALL DAY TODAY?

14    THE WITNESS:  YES, MA'AM.

15    THE COURT:  AND WHAT YOU'VE CALLED FOR IS

16 FOR THE COMMITTEE TO CONVENE TOMORROW, I THINK AT

17 ELEVEN?

18    THE WITNESS:  YES, MA'AM.

19    THE COURT:  AND SO WHAT ARE YOU DOING TO

20 ENABLE THE PUBLIC TO BECOME ENGAGED FROM TWO O'CLOCK

21 YESTERDAY UNTIL ELEVEN TOMORROW?

22    THE WITNESS:  SO ALLOWING THEM TO ACCESS THE

23 COMPUTER WEBSITE -- THE WEBSITE THAT WE HAVE, TO

24 ACCESS THE MAPS AND TO DISSECT THEM, I GUESS YOU

25 WOULD SAY.  THAT WOULD GET THEM PREPARED TO BE ABLE

1   TO COME AND GIVE TESTIMONY ON -- BASICALLY I THINK

2   THERE WAS FOUR MAPS FILED ON THE HOUSE SIDE.  THREE

3   OF THEM ARE TOTALLY DIFFERENT MAPS THAN ANY THAT WE

4   HAD DURING REGULAR SESSION.  THE ONLY ONE THAT'S THE

5   SAME WOULD BE MINE.  SO THEY WOULD NEED TO HAVE TIME

6   TO LOOK AT THESE MAPS AND ANALYZE THEM.

7           THE COURT:  AND THAT BRINGS ME TO YOUR MAP;

8   AND THAT'S HOUSE BILL 2 THAT YOU ADVANCED.  IS THAT

9   CORRECT?

10          THE WITNESS:  YES, MA'AM.

11          THE COURT:  AND THAT'S NOW IN EVIDENCE AS

12  ROBINSON EXHIBIT 1.

13          MS. MCKNIGHT ASKED YOU IF YOU DISAGREE

14  WITH ANYTHING IN PRESIDENT CORTEZ'S DECLARATION THAT

15  WAS FILED IN SUPPORT OF THE MOTION FOR EXTENSION, AND

16  YOU SAID YOU DID NOT.

17          THE WITNESS:  I DO NOT.

18          THE COURT:  ONE OF THE THINGS THAT PRESIDENT

19  CORTEZ -- AND I ASKED HIM ABOUT AND YOU WERE HERE.

20  HE STATED IN HIS DECLARATION HIS UNDERSTANDING OF

21  THIS COURT'S RULING; AND HIS UNDERSTANDING WAS -- AND

22  I QUOTE -- I UNDERSTAND THE COURT HAS ORDERED THE

23  LEGISLATURE TO DRAW A NEW CONGRESSIONAL PLAN WITH TWO

24  MAJORITY-BLACK DISTRICTS, CLOSE QUOTES.

25          IS THAT YOUR UNDERSTANDING AS WELL OF

1  THE COURT'S ORDER?

2          **THE WITNESS:**  YES, MA'AM.

3          **THE COURT:**  AND YOU'VE HAD THAT

4  UNDERSTANDING OF THE COURT'S ORDER ALL ALONG; THAT

5  THAT'S WHAT THE COURT ORDERED THE LEGISLATURE TO DO?

6          **THE WITNESS:**  YES, MA'AM.

7          **THE COURT:**  HOUSE BILL 2, THE MAP THAT YOU

8  OFFERED YESTERDAY, DOES IT CONTAIN TWO MAJORITY-BLACK

9  DISTRICTS?

10          **THE WITNESS:**  IT DOES NOT.  BUT I WOULD LIKE

11  TO RESPOND TO --

12          **THE COURT:**  WELL, HOW MANY MAJORITY-BLACK

13  DISTRICTS DOES THE MAP THAT YOU OFFERED HAVE?

14          **THE WITNESS:**  IT HAS ONE.

15          **THE COURT:**  I'M GOING TO -- I WANT TO GIVE

16  YOU -- WELL, LET ME SAY THIS.  SECTION 401 OF THE

17  UNITED STATES CODE -- TITLE 18 OF THE UNITED STATES

18  CODE PROVIDES THAT A COURT OF THE UNITED STATES SHALL

19  HAVE THE POWER TO PUNISH, BY FINE OR IMPRISONMENT OR

20  BOTH, ANY PERSON WHO IS IN CONTEMPT OF COURT BY

21  DISOBEDIENCE OR LAWFUL RESISTANCE -- OR UNLAWFUL

22  RESISTANCE TO A LAWFUL COURT ORDER.

23          WHY, SIR, ARE YOU NOT IN DISOBEDIENCE

24  OR IN RESISTANCE TO A LAWFUL ORDER OF THIS COURT?

25          **THE WITNESS:**  WHY AM I NOT?

1    THE COURT:  YES, SIR.

2         THE WITNESS:  SO HAVING DISCUSSIONS

3    YESTERDAY WITH LEADERSHIP AND THE LEADERSHIP OF THE

4    DEMOCRATIC CAUCUS, I EXPLAINED TO THEM THAT IN THE

5    PROCESS THAT WE NORMALLY HAVE, WE ALSO FILE BILLS

6    THAT ARE PLACEHOLDER BILLS.  THIS BILL WAS FILED AS A

7    PLACEHOLDER BILL; IN CASE SOMETHING WERE TO HAPPEN

8    WITH ANY OF THE OTHER BILLS THAT WE HAVE OUT THERE,

9    WE COULD GO IN AND WE COULD AMEND THIS TO HAVE TWO

10   BLACK-MAJORITY DISTRICTS, ONLY TO HAVE IT SITTING

11   THERE AS A PLACEHOLDER.  THAT WAY IT'S ALREADY MOVING

12   THROUGH THE PROCESS, IT'S SITTING THERE IN COMMITTEE,

13   AND WE CAN GO IN AND ADD AN AMENDMENT TO IT AND WORK

14   ON IT.  THEY DID AGREE TO THAT.

15        THE COURT:  DOES ANYBODY HAVE ANY FURTHER

16   QUESTIONS FOR HOUSE SPEAKER SCHEXNAYDER?

17        MS. MCKNIGHT:  THANK YOU, YOUR HONOR.  I

18   HAVE A BRIEF REDIRECT.

19        THE COURT:  YOU MAY.

20             REDIRECT EXAMINATION

21   BY MS. MCKNIGHT:

22     Q    MR. SPEAKER, I HEARD PLAINTIFFS' COUNSEL ASK

23   YOU A SERIES OF QUESTIONS ABOUT WHAT AND WHETHER YOU

24   HAVE CONSIDERED COMPLIANCE WITH THE LAW WHEN

25   PREPARING THE TWO BILLS BEFORE YOU.  DO YOU RECALL

1  THAT LINE OF QUESTIONING?

2      A    I DO.

3      Q    OKAY.  MR. SPEAKER, ARE YOU A LAWYER?

4      A    NO, MA'AM.

5      Q    HAVE YOU RELIED ON LEGAL COUNSEL TO ANALYZE

6  COMPLIANCE WITH THE VOTING RIGHTS ACT AND THE

7  CONSTITUTION AS FAR AS THOSE TWO BILLS ARE

8  CONSIDERED?

9      A    I HAVE.

10     Q    IS IT YOUR POSITION THAT YOU HAVE NOT

11 CONSIDERED COMPLIANCE WITH THE VOTING RIGHTS ACT OR

12 THE CONSTITUTION AT ALL WITH REGARDS TO THOSE TWO

13 BILLS?

14     A    NO, MA'AM.

15     Q    I HEARD SOME QUESTIONS ABOUT PUBLIC

16 PARTICIPATION FROM YOUR HONOR.  WHAT IS THE PURPOSE

17 OF POSTING A BILL ONLINE AND ALLOWING IT TO LIE OVER?

18     A    THE REASON WE POST BILLS ONLINE AND GIVE

19 COMMITTEE NOTICES OF COMMITTEE MEETINGS IS TO ALLOW

20 THE PUBLIC TO BE ABLE TO OBTAIN THAT INFORMATION AND

21 TO BE ABLE TO BE PREPARED TO BE ABLE TO COME TO

22 COMMITTEE AND TESTIFY ON THE SUBSTANCE OF THE BILL.

23     Q    AND HAVE YOU HAD EXPERIENCE WITH PUBLIC

24 COMING AND TESTIFYING IN COMMITTEE AFTER A BILL IS

25 POSTED ONLINE?

1      A    YES.

2      Q    AND DO YOU EXPECT THAT TO HAPPEN HERE IN

3  THIS SESSION?

4      A    YES, MA'AM.

5      Q    AND ASIDE FROM JUST COMING -- YOU KNOW, THE

6  MEMBERS OF THE PUBLIC COMING TO THE CAPITOL, CAN

7  MEMBERS OF THE PUBLIC ALSO EMAIL THEIR

8  REPRESENTATIVES?

9      A    ABSOLUTELY.  YES, MA'AM.

10      Q    CAN THEY ALSO CALL THEIR REPRESENTATIVES?

11      A    YES, MA'AM.

12          MS. MCKNIGHT:  THANK YOU, YOUR HONOR.  I

13  HAVE NO FURTHER QUESTIONS.

14          MR. ADCOCK:  YOUR HONOR, MAY I?

15          THE COURT:  YOU MAY.

16              MR. ADCOCK, AS A MATTER OF

17  HOUSEKEEPING, EXHIBITS 1 AND 2 ARE NOT IN EVIDENCE.

18          MR. ADCOCK:  OKAY.  MAY I OFFER AND FILE

19  THEM INTO EVIDENCE?

20          THE COURT:  IS THERE ANY OBJECTION?

21          MS. MCKNIGHT:  NO, YOUR HONOR.

22          THE COURT:  ADMITTED.

23          MR. ADCOCK:  THANK YOU, JUDGE.

24              RECROSS-EXAMINATION

25  BY MR. ADCOCK:

1    Q   MR. SPEAKER, YOU REFERENCED THE BILLS THAT

2  YOU ENTERED INTO THIS LEGISLATIVE SESSION AS A

3  PLACEHOLDER BILL.  CORRECT?

4    A   YES.

5    Q   THEY COULD BE AMENDED TO CHANGE THE MAP TO

6  ELECT HAVE TWO MAJORITY-MINORITY DISTRICTS.  CORRECT?

7    A   YES, SIR.

8    Q   THAT COULD BE DONE IN COMMITTEE.  CORRECT?

9    A   YES, SIR.

10   Q   THAT'S NOT HAPPENING TODAY.  CORRECT?

11   A   YES, SIR.

12   Q   SO YOU SAY THAT YOU'RE IN COMPLIANCE WITH

13 THIS COURT'S ORDER BECAUSE THAT COULD BE AMENDED.

14 CORRECT?

15   A   YES, SIR.

16   Q   OKAY.  AND SO THAT'S YOUR POSITION IN FRONT

17 OF THIS COURT?

18   A   IT IS.

19   Q   THAT'S WHAT YOU'RE TELLING THIS COURT?  YOUR

20 INTENTION IS TO PASS A BILL WITH TWO MAJORITY-

21 MINORITY DISTRICTS?

22   A   MY INTENTION IS TO HAVE A BILL THERE; THAT

23 IF WE NEED IT TO BE ABLE TO HAVE TWO MAJOR DISTRICTS

24 IN IT, THAT I HAVE A MECHANISM, A VESSEL TO BE ABLE

25 TO MOVE FORWARD WITH THAT.

1   **Q**   WE JUST HAD A DISCUSSION ABOUT THE RIPPLE

2   EFFECTS OF AMENDING BILLS AND MESSING UP MAPS.

3   RIGHT?  AND SO ISN'T IT TRUE THAT THERE IS ALREADY A

4   MAP WITH TWO MAJORITY-MINORITY DISTRICTS FROM SENATOR

5   FIELDS IN THE LEGISLATURE?

6   **A**   THERE ARE.

7   **Q**   SENATOR DUPLESSIS -- EXCUSE ME.

8   REPRESENTATIVE DUPLESSIS?

9   **A**   THERE ARE.

10  **Q**   AND MR. IVEY.  CORRECT?

11  **A**   THERE ARE.

12  **Q**   SO YOU WOULDN'T NEED TO AMEND YOUR BILL.

13  YOU COULD JUST PASS THOSE.  CORRECT?

14  **A**   OR THOSE BILLS COULD -- DEPENDING ON THE

15  COMMITTEE AND WHAT HAPPENS IN COMMITTEE, THOSE BILLS

16  COULD DIE IN COMMITTEE, THEY COULD BE VOTED DOWN; AND

17  WE WOULD NEED ANOTHER BILL TO AMEND TO BE ABLE TO

18  MOVE.  THAT'S WHY THIS BILL IS THERE.

19  **Q**   OR YOU COULD TRY TO PASS A BILL THAT WAS

20  PREVIOUSLY STRUCK DOWN BY THIS COURT, COULDN'T YOU?

21      **MS. MCKNIGHT:**  OBJECTION, YOUR HONOR, TO THE

22  EXTENT HE'S EXTRACTING TESTIMONY ABOUT OTHER

23  LEGISLATORS.  WE'VE ALREADY NOTED THE LEGISLATIVE

24  PRIVILEGE.  OBJECTION.

25      **MR. ADCOCK:**  I'VE MOVED ON FROM THAT.

1    **THE COURT:**  OVERRULED.

2  BY MR. ADCOCK:

3    **Q**    OR YOU COULD DO THAT.  RIGHT?

4    **A**    COULD YOU REPEAT THAT?

5    **Q**    YOU COULD ALSO TRY TO PASS A BILL THAT'S

6  BEEN PREVIOUSLY STRUCK DOWN BY THIS COURT.  RIGHT?

7    **A**    COULD WE MOVE A BILL, THIS BILL?

8    **Q**    YES.

9    **A**    YOU'RE TALKING ABOUT THIS ONE?

10   **Q**    YES.  YOU COULD TRY TO DO THAT?

11   **A**    COULD WE MOVE IT?  ABSOLUTELY WE COULD MOVE

12 IT.  BUT -- BUT THAT BILL WAS NOT PUT THERE TO BE

13 MOVED.  IT WAS PUT THERE TO BE A PLACEHOLDER TO BE

14 ABLE TO HAVE IT AS A VESSEL IN CASE WE NEEDED IT.

15 THAT'S WHAT THAT BILL WAS FOR.  WE DO THAT IN REGULAR

16 SESSION AND IN OTHER SESSION TO BE ABLE TO HAVE A

17 VESSEL THAT IS ALREADY MOVING THROUGH THE PROCESS

18 SITTING THERE.  THIS BILL WAS SITTING IN COMMITTEE.

19 AND IF WE DON'T NEED IT, IT DOESN'T MOVE.

20   **Q**    AND SO LET ME ASK YOU THIS.  ON THE HOUSE

21 FLOOR YESTERDAY, DID YOU SAY -- AND I QUOTE -- *AS

22 I'VE SAID, THIS SPECIAL SESSION IS UNNECESSARY AND

23 PREMATURE UNTIL THE LEGAL PROCESS IS PLAYED OUT IN

24 THE COURT SYSTEMS*?

25   **A**    YES.

1    Q    YOU DID SAY THAT?

2    A    I DID.

3    Q    YOU'RE FINE SAYING THAT TO THIS COURT?

4    A    I THINK -- I THINK WE HAVE THREE BRANCHES OF

5  GOVERNMENT FOR A REASON, AND I THINK THE COURT HAS

6  ITS PLACE TO BE ABLE TO DO WHAT IT NEEDS TO DO.

7    Q    AND YOU'RE ASKING THIS COURT FOR MORE TIME

8  TO PASS A VOTING RIGHTS ACT COMPLIANT MAP.  CORRECT?

9    A    I AM.

10   Q    AND YOU ALSO SAID MEMBERS -- ON THE HOUSE

11 FLOOR MEMBERS, *THE MAPS WE PASSED AFTER ALL THE HARD*

12 *WORK ARE FAIR AND CONSTITUTIONAL.  IT CONCERNS ME*

13 *THAT WE ARE NOW BEING ASKED TO REDO THESE MAPS IN*

14 *FIVE DAYS.*  IS THAT WHAT YOU SAID?

15   A    I DID.

16   Q    *SOMETHING THAT WAS PASSED OVERWHELMINGLY BY*

17 *2/3 OF BOTH BODIES AFTER A LONG YEAR'S WORK.*  DID YOU

18 SAY THAT?

19   A    I DID.

20       MR. ADCOCK:  NO MORE QUESTIONS, JUDGE.

21       THE COURT:  OKAY.  IF THERE IS NOTHING

22 FURTHER --

23       MS. MCKNIGHT:  NOTHING FURTHER, YOUR HONOR.

24       THE COURT:  -- YOU MAY STEP DOWN.

25

OKAY. THE COURT IS GOING TO RULE FROM THE BENCH. I'LL ENTERTAIN BRIEF ORAL ARGUMENTS IF YOU ALL WISH TO DO THAT, BUT THEY CAN BE BRIEF. I'VE HEARD A LOT, AND SO -- MS. MCKNIGHT, DO YOU WANT TO PRESENT ARGUMENT IN SUPPORT OF YOUR MOTION? YOU DON'T HAVE TO, BUT YOU MAY.

**MS. MCKNIGHT:** YOUR HONOR, I -- I DON'T VIEW IT AS NECESSARY AT THIS TIME. WE'VE SUBMITTED A BRIEF, A DECLARATION, AND THE LEADERS SUBMITTED THEIR TESTIMONY TODAY.

THE ONLY POINT I WOULD MAKE IS THAT WE UNDERSTAND -- SHOULD I COME TO THE --

THE ONLY POINT I WOULD MAKE, BECAUSE IT'S SOMETHING THAT PLAINTIFFS ASKED A NUMBER OF QUESTIONS ABOUT, WAS SOME SUGGESTION ABOUT THE GOOD FAITH OF THE LEGISLATURE. WE BELIEVE IN WORKING THROUGH THIS PROCESS.

THE LEGISLATURE, AS YOU KNOW, YOUR HONOR, IS ENTITLED BY RIGHT TO TRY TO PASS A REMEDIAL PLAN. THEY WERE HERE TODAY TESTIFYING ABOUT THAT THEY ARE TRYING TO DO JUST THAT. THAT IS NOT INCONSISTENT WITH THE LEGAL POSITION THAT THEY ARE TAKING IN THIS CASE AS WELL THAT THEY'VE TAKEN SINCE THE DAY THAT YOUR HONOR ISSUED YOUR ORDER ON JUNE 6; THAT THAT ORDER SHOULD BE STAYED UNDER THE *PURCELL*

PRINCIPLE.  AND WE STAND BY THAT AND WE DON'T BELIEVE

ANYTHING THEY'VE TESTIFIED HERE TODAY WOULD WAIVE

THAT RIGHT TO MAINTAIN THAT LEGAL ARGUMENT.

THANK YOU, YOUR HONOR.

**THE COURT:**  THANK YOU.

COUNSEL FOR THE PLAINTIFF?

**MR. PAPILLION:**  YOUR HONOR, THANK YOU.

DARREL PAPILLION ON BEHALF OF THE GALMON PLAINTIFFS.

AND I'LL TRY TO BE VERY BRIEF.

THIS COURT, OF COURSE, CONDUCTED A

MULTI-DAY HEARING, IT HEARD A LOT OF EVIDENCE AND

TESTIMONY AND IT ISSUED A RULING.  THE COURT HAS BEEN

VERY GENEROUS IN ENTERTAINING TESTIMONY FROM THE

LEGISLATIVE LEADERSHIP OF OUR STATE.

OF PARAMOUNT CONCERN TO MY CLIENTS IS

SIMPLY THAT THERE ARE CONSTITUTIONALLY VALID

DISTRICTS IN TIME FOR THIS FALL'S ELECTION.  WE DID

NOT OPPOSE THE MOTION.  WE RESPONDED TO IT.  IN

FACT, WE WENT INTO THE ECMF AND CORRECTED A NOTICE

THAT IT WAS IN OPPOSITION AND MADE ABSOLUTELY CLEAR

THAT IT WAS A RESPONSE.

SO I TRUST THAT THE COURT IS GOING TO

DO WHAT THE COURT BELIEVES IS THE BEST THING TO DO.

BUT THE GALMON PLAINTIFFS -- AND I SUSPECT I SPEAK

FOR THE ROBINSON PLAINTIFFS AS WELL.  WE WOULD KINDLY

1 ASK THAT THE LEGISLATIVE PROCESS, WHICH IS TO BE
2 GIVEN RESPECT, THAT THE COURT NOT STOP ITS OWN
3 PROCESS IN THE EVENT THIS LEGISLATURE FAILS TO COME
4 UP WITH AND PASS CONSTITUTIONALLY VALID DISTRICTS.
5            AND SO, YOUR HONOR, WE WOULD ASK THAT
6 ANY REQUEST FOR AN EXTENSION OF TIME, WHETHER THE
7 COURT GRANTS IT OR NOT, IT SHOULD NOT BE USED AS A
8 BASIS FOR A *PURCELL* ARGUMENT IN THE FUTURE AND THAT
9 YOUR PROCESS SHOULD PROCEED CONCURRENTLY WITH ANY
10 EXTENSION OF TIME.  BECAUSE WHILE WE CAN ONLY ASSUME
11 THEY ARE IN GOOD FAITH AND THAT EVERYTHING THEY HAVE
12 SAID IS TRUE, A LOT OF IT APPEARS SUSPICIOUS AND
13 QUESTIONABLE.  AND THEY HAVE HAD A LOT OF TIME TO
14 PASS CONSTITUTIONALLY VALID DISTRICTS.  THEY HAVE
15 BEEN PUT ON NOTICE BY GUBERNATORIAL VETO AND
16 OTHERWISE, AND THEY HAVE NOT DONE SO.  AND SO, YOUR
17 HONOR, WE LOOK TO YOU, SO THANK YOU.
18        **THE COURT:**  THANK YOU.
19            MR. ADCOCK, DO YOU WISH TO ADD
20 ANYTHING?
21        **MR. ADCOCK:**  NONE, JUDGE.
22        **THE COURT:**  THE COURT IS PREPARED TO RULE.
23            THE COURT HAS HEARD TESTIMONY THIS
24 MORNING BOTH FROM PRESIDENT PAGE CORTEZ -- OR SENATE
25 PRESIDENT PAGE CORTEZ AND HOUSE LEADER

1  MR. SCHEXNAYDER AND HAS LIKEWISE CONSIDERED BOTH THE

2  BRIEFS, THE DECLARATION AND THE RESPONSE BRIEFS BY

3  BOTH THE GALMON AND THE ROBINSON PLAINTIFFS AS WELL

4  AS THE ARGUMENTS OF COUNSEL HERE TODAY.

5          THE COURT CONSIDERS THE TESTIMONY OF

6  PRESIDENT -- SENATE PRESIDENT CORTEZ.  IMPORTANTLY,

7  HE WAS VERY CANDID IN HIS TESTIMONY THAT THERE IS

8  TIME TO ENACT REMEDIAL MAPS THAT ARE COMPLIANT WITH

9  THE VOTING RIGHTS ACT, PROVIDED THAT THERE IS A

10 SUSPENSION OF RULES, WHICH HAS THUS FAR TAKEN PLACE.

11 AND THE COURT HAS AT LEAST SENATOR -- SENATE

12 PRESIDENT CORTEZ'S COMMITMENT THAT HE WILL DO WHAT HE

13 CAN TO FURTHER SUSPEND RULES TO ALLOW THIS PROCESS TO

14 MOVE EXPEDITIOUSLY.

15          THE OTHER CAVEAT TO HAVING SIGNIFICANT

16 TIME, AS PRESIDENT CORTEZ CANDIDLY TESTIFIED, WAS TO

17 ENSURE TRANSPARENCY.  THE COURT IS -- THE COURT TAKES

18 NOTICE OF PRESIDENT CORTEZ'S, AGAIN, CANDID STATEMENT

19 TO THE COURT IN HIS TESTIMONY THAT IT -- WHILE HE

20 DIDN'T SAY IT HAPPENS OFTEN, HE SAID IT DOES HAPPEN

21 WHERE COMMITTEES REFER TO PRIOR TESTIMONY AND

22 EVIDENCE FROM PRIOR SESSIONS, EVEN IN HIS WORDS,

23 DECADES BEFORE.

24          WE HAVE THE PRIVILEGE OF HAVING A VERY

25 AMPLE RECORD -- LEGISLATIVE RECORD THAT THIS COURT

CONSIDERED IN ITS PRELIMINARY INJUNCTION DECISION AND

THAT IS CERTAINLY AVAILABLE TO BOTH HOUSES, THE

SENATE AND THE HOUSE OF REPRESENTATIVES, THAT

INCLUDES A GREAT DEAL OF PUBLIC COMMENT ON THESE

MAPS.

THE MAPS THAT HAVE BEEN ADVANCED ARE

NOT DIFFERENT FROM MAPS THAT HAVE BEEN PREVIOUSLY

CONSIDERED.  THE IVEY MAPS WERE PUT FORWARD IN THE

EARLIER REDISTRICTING SESSION AS WELL AS THE BLACK

LEGISLATIVE CAUCUS MAP AND SENATOR FIELDS' MAPS.  ALL

OF THOSE MAPS HAVE BEEN DEBATED.

SO THE COURT -- WHILE THE COURT

APPRECIATES THE NEED FOR TIME FOR PUBLIC COMMENT AND

OPINION, GIVEN THE TESTIMONY THAT IT IS NOT UNUSUAL

TO REVIEW PRIOR DEBATE, THE COURT FINDS THAT THAT

PARTICULAR CONSIDERATION IS NOT AN OVERRIDING

CONSIDERATION IN THIS MOTION-FOR-EXTENSION CONTEXT.

ADDITIONALLY, THE COURT IS NOT

PERSUADED AND FINDS DISINGENUOUS THE ACTIVITY THAT'S

HAPPENED ON THE HOUSE SIDE UNDER THE LEADERSHIP OF

HOUSE SPEAKER SCHEXNAYDER.  WITH FIVE DAYS TO WORK

WITH, THEY MET FOR 90 MINUTES, HAVING SUSPENDED THE

RULES AND -- WHICH WOULD HAVE PERMITTED AN IMMEDIATE

REFERRAL TO COMMITTEE, WHICH WOULD HAVE ENABLED THE

PUBLIC TO MAKE COMMENT AND TO TESTIFY IN COMMITTEE IF

1  THEY WERE SO RECOGNIZED, INSTEAD WAITED 48 HOURS --

2  OR NOT QUITE 48 HOURS -- BUT ALMOST 48 HOURS TO REFER

3  IT TO THE COMMITTEE.

4           AND THE ONLY PROCESS THAT HAS BEEN MADE

5  AVAILABLE TO THE PUBLIC TO COMMENT SINCE DIALING IN

6  THE LEGISLATURE YESTERDAY MORNING AND FRIDAY, 48

7  HOURS LATER WHEN THE SENATE COMMITTEE IS GOING TO --

8  OR I'M SORRY -- WHEN THE HOUSE COMMITTEE IS GOING TO

9  CONVENE IS THAT THE PUBLIC CAN PULL IT UP ON THE

10 INTERNET.  THERE HAS BEEN UTTERLY NO PROCESS PROVIDED

11 FOR THE PUBLIC TO MAKE COMMENTS.

12          THE COURT FINDS THAT AT LEAST ON THE

13 HOUSE SIDE IT'S DISINGENUOUS AND INSINCERE AND

14 UNPERSUASIVE TO SUGGEST TO THIS COURT THAT ADDITIONAL

15 TIME IS NEEDED TO ENABLE THIS TRANSPARENCY OF THE

16 PROCESS.

17          THE COURT TAKES JUDICIAL NOTICE THAT IN

18 1994 THERE WAS REDISTRICTING IN SIX DAYS.  THE COURT

19 TAKES JUDICIAL NOTICE THAT IN 2017 AT A SPECIAL

20 SESSION THE LOUISIANA LEGISLATURE PASSED A BUDGET IN

21 FOUR DAYS.  THERE ARE NO COMMITTEE MEETINGS SCHEDULED

22 FOR TODAY ON THE HOUSE SIDE.

23          THE COURT FINDS THAT THE MOTION FOR

24 EXTENSION IS DENIED FOR THOSE REASONS.

25          IS THERE ANYTHING FURTHER?

1        THE COURT WILL HEAR ARGUMENT OF COUNSEL

2   WITH RESPECT TO THE REMEDIAL PROCESS, IF YOU'D LIKE

3   TO REMAIN, AND WE CAN ADDRESS AND MAYBE HAMMER OUT A

4   REMEDIAL PROCESS -- JUDICIAL PROCESS FOR REMEDIAL

5   MAPS IN THE EVENT THAT THE LEGISLATURE IS UNABLE TO

6   TAKE ADVANTAGE OF THE OPPORTUNITY THAT HAS BEEN

7   PROVIDED TO IT.

8        LET'S HEAR FROM YOU ALL.  THE COURT

9   IS -- WANTS TO HAVE -- WILL HAVE A HEARING ON THE

10  REMEDIAL MAPS IN THE EVENT THAT THERE IS A NEED TO

11  HAVE A HEARING ON REMEDIAL MAPS.

12       WHAT THE COURT PROPOSES IS THAT EACH

13  SIDE -- PLAINTIFFS COMBINED, CONSOLIDATED, AND THE

14  RESPONDENT, LEGISLATORS AND ALL THE INTERVENORS --

15  PRESENT A SINGLE MAP TO THE COURT FOR CONSIDERATION

16  SIMULTANEOUSLY, A MAP THAT IS A REMEDIAL MAP IN

17  CONFORMANCE WITH THIS COURT'S PRELIMINARY INJUNCTION

18  ORDER.  THEN THE PARTIES WILL BE GIVEN SOME REQUISITE

19  NUMBER OF DAYS -- I'M OPEN TO SUGGESTIONS FROM

20  COUNSEL -- TO RESPOND OR OPPOSE THE OTHER PARTY'S

21  MAP, AND THEN WE'LL HAVE A HEARING.

22       IS THERE ANY REASON WHY THAT PROCESS

23  CANNOT -- WILL NOT PRODUCE A MEANINGFUL DEBATE IN THE

24  COURT WITH RESPECT TO A REMEDIAL MAP?

25       MS. MCKNIGHT?

1      **MS. MCKNIGHT:**  THANK YOU, YOUR HONOR.

2          **THE COURTROOM DEPUTY:**  WOULD YOU COME

3  FORWARD. PLEASE?

4          **MS. MCKNIGHT:**  OF COURSE.

5          **THE COURT:**  FOR PURPOSES OF THE RECORD, THIS

6  AMPLIFIES, AND IT'S ALSO RECORDED SO THAT THE COURT

7  REPORTER CAN MAKE SURE SHE'S GOT IT.

8          **MS. MCKNIGHT:**  I UNDERSTAND.  THANK YOU,

9  YOUR HONOR.

10         THERE IS AT LEAST ONE ISSUE WITH THAT

11 SUGGESTION; AND THAT IS THERE IS CASE LAW ON POINT

12 THAT NOTES THAT DURING THIS REMEDIAL PHASE A DISTRICT

13 COURT MUST ALLOW SUFFICIENT TIME FOR THE PARTIES TO

14 ENGAGE IN SOME LEVEL OF DISCOVERY.

15         AND, YOUR HONOR, SO I CAN GIVE YOU A

16 SENSE OF WHAT THOSE CASES SAY, SOME OF THAT GOES TO:

17 *WELL, WHAT WAS IN THE MIND OF THE MAP DRAWER?  WHY*

18 *DID THEY DRAW IT THIS WAY?  WHY WERE THINGS DRAWN IN*

19 *THESE CERTAIN WAYS?*

20         THERE ARE OTHER ASPECTS TO IT.  BUT I

21 WANTED TO MAKE SURE THAT YOU WERE -- WE SAW

22 PLAINTIFFS' REQUEST IN THEIR RESPONSE LAST NIGHT, AND

23 WE WANTED TO MAKE SURE THAT THIS COURT WAS AWARE THAT

24 THERE IS GOVERNING CASE LAW ABOUT WHAT THIS REMEDIAL

25 PROCESS NEEDS TO LOOK LIKE.

1    THE COURT:  HOW MUCH DISCOVERY?

2    MS. MCKNIGHT:  WELL, I THINK WE'D NEED --

3  AND I DEFER TO THEM.  BUT IN PAST CASES FOR ME IT HAS

4  INVOLVED DISCOVERY AS TO A MAP DRAWER, AND THERE IS A

5  POTENTIAL FOR AN EXPERT WITNESS TO COME IN AND SAY,

6  *THIS IS WHAT THE MAP DOES.*

7    THE COURT:  SO YOU NEED TO TAKE -- IF YOU

8  SIMULTANEOUSLY EXCHANGE MAPS, THEN YOU EACH GET TO

9  TAKE THE MAP DRAWER'S DEPOSITION?

10    MS. MCKNIGHT:  A MAP DRAWER'S DEPOSITION.

11  AND IF THERE IS ANY EXPERT REPORT THAT'S PROVIDED

12  WITH THE MAP THAT SAYS, *THIS IS WHY THE MAP COMPLIES*;

13  *THIS IS WHAT IT DOES*; *THESE ARE HOW THE NUMBERS WORK*,

14  IT WOULD BE A DEPOSITION OF THAT EXPERT AS WELL.

15    THE COURT:  OKAY, TWO DEPOSITIONS.  ALL

16  RIGHT.  THANK YOU.

17        COUNSEL FOR THE PLAINTIFFS?

18    MR. PAPILLION:  YOUR HONOR --

19    MR. ADCOCK:  MR. PAPILLION, BEFORE -- SO

20  JUST SO I UNDERSTAND, JUDGE, I THINK YOU'RE SAYING

21  BASICALLY ONE MAP FROM EACH SIDE.  RIGHT?

22    THE COURT:  THAT'S WHAT I'M SAYING.

23    MR. ADCOCK:  THAT'S WHAT I THOUGHT YOU WERE

24  SAYING.

25    MR. PAPILLION:  YOUR HONOR, WE'VE OUTLINED

1 SOME DATES IN THE MEMORANDA THAT WE FILED LAST NIGHT.

2 I BELIEVE THAT THOSE DATES COULD BE ADJUSTED TO ALLOW

3 FOR THE DISCOVERY THAT THE INTERVENOR'S ASKING FOR,

4 AND THIS CAN ALL BE ACCOMPLISHED VERY QUICKLY.  I

5 DON'T THINK THERE WILL BE ANY SURPRISES AS TO WHO HAS

6 DRAWN THE MAPS, IN LIGHT OF THE HEARING THAT WE HAD

7 VERY RECENTLY.  THIS CAN BE DONE VERY QUICKLY.

8      **THE COURT:**  MS. MCKNIGHT, HOW QUICK CAN YOU

9 HAVE A MAP?

10      **MS. MCKNIGHT:**  YOUR HONOR, I BEG YOU PARDON,

11 BUT I WILL NEED TO DISCUSS THAT WITH CO-COUNSEL.  WE

12 UNDERSTAND YOU WANT ONE --

13      **THE COURT:**  ONE MAP.

14      **MS. MCKNIGHT:**  WE UNDERSTAND THAT YOU WOULD

15 LIKE ONE MAP.  AND I NEED TO DISCUSS WITH THEM HOW

16 QUICKLY WE THINK WE CAN GET IT DONE.

17      **THE COURT:**  JUST SO THAT I MAKE -- JUST SO

18 THAT I UNDERSTAND, YOU'VE BEEN -- I DON'T WANT YOUR

19 LEGAL -- I DON'T WANT TO KNOW WHAT YOU TOLD YOUR

20 CLIENTS OR I'M NOT CALLING FOR ATTORNEY-CLIENT

21 PRIVILEGE.

22      YOU HAVE BEEN ENGAGED AS GIVING COUNSEL

23 IN THIS REDISTRICTING PROCESS DURING THE ENTIRE --

24 ENTIRETY OF THIS PROCESS.  IS THAT CORRECT?

25      **MS. MCKNIGHT:**  WE HAVE BEEN ENGAGED.

1    **THE COURT:** OKAY. ALL RIGHT. I JUST WANT

2  TO MAKE SURE THAT I'M NOT ASKING YOU TO MOVE A

3  MOUNTAIN THAT YOU CAN'T MOVE. THAT'S THE PURPOSE OF

4  THE QUESTION. THESE MAPS ARE CLEARLY NOT NEW. OKAY.

5  THAT'S WHAT I WANTED TO KNOW.

6    WELL, CONFER AND TELL ME HOW QUICK YOU

7  CAN GET ME A MAP. I DON'T WANT TO GIVE YOU A

8  DEADLINE THAT YOU CAN'T COMPLY WITH.

9    **MS. MCKNIGHT:** DO YOU WANT ME TO DO IT RIGHT

10  NOW, YOUR HONOR, OR DOES IT MAKE SENSE FOR US TO FILE

11  SOMETHING THIS AFTERNOON AFTER YOUR HEARING?

12    **THE COURT:** NO. I WANT TO BE ABLE TO GIVE

13  YOU A MINUTE ENTRY TODAY ABOUT WHAT THE PLAN IS GOING

14  TO BE. HOW FAST CAN YOU ALL HAVE A MAP? YOU GO

15  CONFER. HOW FAST CAN YOU HAVE A MAP?

16    **MR. ADCOCK:** JUDGE, THIS IS MY PROBLEM, NOT

17  YOURS. I'M CONFERRING WITH CO-COUNSEL OVER TEXT

18  MESSAGE. BUT I'M NOT AWARE OF THESE CASES THAT SAYS

19  THEY REQUIRE DISCOVERY. I'D LIKE TO SEE THEM.

20    HOWEVER, IN THE EVENT OF TIME, IF THEY

21  CAN AGREE TO A LIMITED DEPOSITION JUST LIMITED TO

22  THIS MAP, NOT SOME SEVEN-HOUR THING BUT MAYBE LIKE A

23  FOUR-HOUR THING OR A THREE-HOUR THING, WE'D PROPOSE

24  THAT TO THE COURT IN THE INTEREST OF MOVING THIS

25  FORWARD.

1    AND THEY HAD A CHANCE TO DEPOSE OUR

2  EXPERTS AND THEY CHOSE NOT TO.  BECAUSE, REMEMBER, WE

3  PUT OFF THE PRELIMINARY INJUNCTION HEARING BY A FEW

4  WEEKS AND THERE WAS TIME TO DEPOSE PEOPLE.  THERE WAS

5  DISCUSSION ABOUT DEPOSING EXPERTS AND THEY CHOSE NOT

6  TO DO IT.  I JUST WANT TO ADD THAT IN FOR THE RECORD.

7    AND --

8    **THE COURTROOM DEPUTY:**  MR. ADCOCK, IF YOU

9  WOULD, PLEASE COME TO THE PODIUM.

10    **MS. MCKNIGHT:**  YOUR HONOR, I WOULD JUST

11 BRIEFLY NOTE, MR. ADCOCK IS MAKING REPRESENTATIONS TO

12 THE COURT WHILE WE ARE TRYING TO CONFER AND PROVIDE

13 THE COURT DATES AS SOON AS POSSIBLE.  WE CANNOT DO

14 BOTH, BOTH DEFEND AGAINST REPRESENTATIONS THAT WE

15 FIND INACCURATE AND ALSO CONFER TO GET YOU A DATE AS

16 EARLY AS POSSIBLE.

17    **THE COURT:**  WELL, STAND DOWN AND LISTEN TO

18 MR. ADCOCK.  I'M GOING TO GIVE YOU A MINUTE.  JUST --

19    ALL RIGHT.  GO AHEAD.

20    **MR. ADCOCK:**  THAT WAS NOT MY INTENTION,

21 JUDGE.  I THOUGHT THE COURT RECOGNIZED ME AND I WAS

22 DOING IT, BUT I APOLOGIZE.  I'LL SAY THIS AGAIN.

23    SO BASICALLY WE THINK THAT THE

24 DEFENDANTS HAVE HAD AN OPPORTUNITY TO DEPOSE ANY OF

25 OUR WITNESSES OR EXPERTS THEY WANTED TO BEFORE THE

PRELIMINARY INJUNCTION HEARING.  I'LL NOTE THAT THE

COURT SCHEDULED A PRELIMINARY INJUNCTION HEARING

POST-HASTE AND THEN WE PUT IT OFF FOR ANOTHER TWO OR

THREE WEEKS TO GIVE THEM MORE TIME TO PREPARE.  THERE

WAS DISCUSSION ABOUT DOING DEPOSITIONS THEN.  WE

CHOSE NOT TO, AND WE'RE NOT COMPLAINING ABOUT IT NOW.

NOW THEY WANT TO DO DEPOSITIONS AFTER THE FACT.

SO IF THE -- BUT IF THE COURT IS

INCLINED TO DO THAT, WE WOULD JUST PROPOSE THAT IT BE

A LIMITED DEPOSITION OF NO MORE THAN THREE HOURS JUST

DEVOTED TO THE MAPS IN QUESTION AND NOT ANYTHING

ELSE.  OF COURSE, BEFORE FINAL JUDGMENT WE'LL HAVE A

FULL DISCOVERY PERIOD AND WE CAN DO THAT.  THEY CAN

DEPOSE WHOEVER THEY WANT.

THE COURT:  THERE IS STILL A WHOLE MERITS --

WHOLE MERITS HEARING THAT WE HAVEN'T EVEN GOTTEN TO

YET.  THANK YOU.

MR. ADCOCK:  IF THEY COULD PUT THEIR

PROPOSAL FOR WHAT THEY WANT TO DO DISCOVERY ON IN

WRITING WITH THESE CASES THEY'RE TALKING ABOUT, WE'D

APPRECIATE THAT.  WE'RE FINE WITH THE DATES WE

PROPOSE IN OUR BRIEFING AND REPRESENTATIONS THAT

MR. PAPILLION MADE IN FRONT OF THE COURT JUST NOW.

THE COURT:  WELL, THEN, LET'S JUST DO THIS.

THERE HAS NOT BEEN -- THERE IS NO CONSENSUS ON THE

DISCOVERY, AND THE COURT HAS NOT LOOKED AT THE CASES

THAT MS. MCKNIGHT CONTENDS WOULD REQUIRE DISCOVERY

FOR THE REMEDIAL PHASE.

SO BY CLOSE OF BUSINESS TODAY, LET ME

HAVE YOUR PROPOSALS WITH RESPECT TO HOW YOU WANT TO

MOVE FORWARD ON REMEDIAL -- IN THE ENACTMENT OF

REMEDIAL MAPS IN THE EVENT THAT THE LEGISLATURE IS

UNABLE TO DRAW A MAP THAT'S COMPLIANT WITH THE VOTING

RIGHTS ACT AND THAT IS COMPLIANT WITH THIS COURT'S

ORDER.

SO BY FIVE O'CLOCK TODAY, LET ME HAVE

YOUR BRIEFS AND -- OR YOUR POSITIONS ON THAT AND YOUR

CITATIONS TO WHATEVER LAW THAT YOU'VE GOT THAT

REQUIRE -- THAT WOULD REQUIRE DISCOVERY, AND THE

COURT WILL GET A MINUTE ENTRY IN THE RECORD TOMORROW.

IS THERE ANYTHING FURTHER?

COURT'S IN RECESS.

**(WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)**

1          C E R T I F I C A T E

2          I CERTIFY THAT THE FOREGOING IS A CORRECT

3    TRANSCRIPT FROM THE RECORD OF THE PROCEEDINGS IN THE

4    ABOVE-ENTITLED NUMBERED MATTER.

5    S:/NATALIE W. BREAUX

6    NATALIE W. BREAUX, RPR, CRR

7    OFFICIAL COURT REPORTER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25